# EXHIBIT N

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ZACHARY GIVEN, KRISTOPHER LAWSON, VINCENT MCCLEERY, and SEAN MCMURRAN, Individually and on Behalf of Other Persons Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> LOVE'S TRAVEL STOPS & COUNTRY STORES, INC., <br><br> Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No. 1:17-CV-01266-CCC |

## PLAINTIFF SEAN MCMURRAN'S OBJECTIONS AND RESPONSES TO DEFENDANTS' FIRST SET OF REQUESTS FOR ADMISSION

Pursuant to Rule 36 of the Federal Rules of Civil Procedure, Plaintiff Sean McMurran ("Plaintiff"), by and through the undersigned attorneys, hereby objects and responds to the Defendant Love's Travel Stops & Country Stores, Inc.'s ("Love's" or "Defendant") First Set of Requests for Admission to Plaintiff Sean McMurran ("Requests").

## PRELIMINARY STATEMENT

1.      Plaintiff reserves all objections to the competence, relevance, materiality, or admissibility at trial of any information or documents requested or identified by any party.  The inadvertent disclosure of any privileged information shall not be deemed to be a waiver of any applicable privilege with respect to such information or any other information.

2.      The production of information and/or documents pursuant to these Responses is made without waiving, or intending to waive, but on the contrary reserving and intending to reserve: (a) the right to object on any grounds to the use of any information or documents produced or

identified pursuant to these Responses in this or any other action or proceeding; (b) the right to object on any and all grounds, at any time, to other Requests or other discovery mechanisms or proceedings; and (c) the right at any time to revise, correct, or supplement these Responses.

3.      The following Responses are based upon information presently within Plaintiff's possession and control and do not include those documents or information intended to be produced by Defendant to Plaintiff which may be responsive to items requested in these Requests.

4.      Plaintiff responds only on behalf of the individual on whom these Requests have been served.

5.      This Preliminary Statement is incorporated into each of the Responses set forth below.

## **GENERAL OBJECTIONS**

1.      Plaintiff objects to Defendant's Definitions and Instructions to the extent that they attempt to impose any obligations or burdens upon Plaintiff in excess of those stated in the Federal Rules of Civil Procedure or the Local Rules of the United States District Court for the Middle District of Pennsylvania.

2.      Plaintiff objects to Defendant's Requests to the extent that they may seek any information and/or documents, including witness statements, that were prepared in anticipation of litigation or for trial by or for Plaintiff or Plaintiff's representatives, on the grounds that any such information or documents are privileged from discovery and Defendant has not made the requisite showings of "substantial need" and "undue hardship."

3.      Plaintiff objects to Defendant's Requests to the extent they may seek information or documents that contain or involve attorney-client communications or attorney work product, on the ground that such information and documents are privileged from discovery.  This objection

includes, but is not limited to, information relating to mental impressions, conclusions, opinions or legal theories of Plaintiff's counsel concerning this litigation, information that was obtained or prepared in anticipation of this litigation or trial preparation, and privileged information provided, obtained, or prepared since the commencement of this litigation concerning this litigation.

4.      Plaintiff objects to Defendant's Requests to the extent that they seek information not discoverable under the Federal Rules of Civil Procedure or the Local Rules of the United States District Court for the Middle District of Pennsylvania.

5.      Plaintiff generally objects to the Requests in that they seek to impose an obligation to supplement these Responses that is inconsistent with FED. R. CIV. P. 26(e).

6.      Plaintiff generally objects to the Requests in that they seek information that is already in Defendant's possession, custody or control.

7.      To the extent that Plaintiff provides Responses to these Requests, such Responses shall not constitute a waiver of any objection to the relevancy of such information, all such objections being expressly reserved.  These Responses are based on reasonable investigation by Plaintiff and reflect only Plaintiff's current state of knowledge and belief respecting the information requested.  Accordingly, Plaintiff concedes neither the relevance nor materiality of the Requests and, regardless of any objection or answer thereto, reserves the right to object to the admissibility of the Requests, and any Response, at trial.

8.      Each of these General Objections is incorporated without further reference in each of the following specific Responses to these Requests.  In addition to the General Objections set forth above, Plaintiff also states other, specific objections where appropriate, including objections that are not generally applicable to all the Requests.  By setting forth such specific objections,

Plaintiff does not intend to limit or restrict these General Objections.  To the extent that Plaintiff

responds to a Request to which Plaintiff objects, such objections are not waived.

## SPECIFIC RESPONSES AND OBJECTIONS

1.      Love's compensated you on a salary rate of not less than $455 per week.

    **RESPONSE:**          Plaintiff objects to this Request on the grounds that it is overbroad and seeks information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence in that it seeks information not relevant to the position and claims at issue in this litigation.  Plaintiff also objects to this Request on the grounds that it seeks information already in Defendants' possession and is therefore available from a less burdensome source.  Subject to and without waiving these objections, Plaintiff admits.

2.      You had responsibility for interviewing potential employees for Love's.

    **RESPONSE:**          Plaintiff objects to this Request in that it involves both factual issues as well as legal issues. The purpose of requests for admission is to obtain admission of facts which are in no real dispute and which the adverse party can admit cleanly, without qualifications. Here, Defendant's request for admission called for either crucial facts central to the lawsuit or legal concessions.  Plaintiff objects to this Request on the grounds that it is vague and ambiguous with respect to the term "responsibility for interviewing."   Plaintiff also objects to this Interrogatory on the grounds that it is overbroad.  Subject to and without waiving these objections, Plaintiff denies being "responsible for interviewing" potential employees.

3.      You had input into selecting employees of Love's.

    **RESPONSE:**          Plaintiff objects to this Request in that it involves both factual issues as well as legal issues. The purpose of requests for admission is to obtain admission of facts which are in no real dispute and which the adverse party can admit cleanly, without qualifications. Here, Defendant's request for admission called for either crucial facts central to the lawsuit or legal concessions.  Plaintiff objects to this Request on the grounds that it is vague and ambiguous with respect to the terms "input" and "selecting employees."   Plaintiff also objects to this Request on the grounds that it is overbroad.  Subject to and without waiving these objections, Plaintiff admits that Plaintiff could give input, just as any employee could, but denies that Plaintiff's input was generally sought by supervisors or that if it was ever given, that it was given any particular weight.

4.      You directed the work of employees of Love's.

    **RESPONSE:**          Plaintiff objects to this Request in that it involves both factual issues as well as legal issues. The purpose of requests for admission is to obtain admission of facts which are in no real dispute and which the adverse party can admit cleanly, without qualifications. Here, Defendant's request for admission called for either crucial facts central to the lawsuit or legal concessions.  Plaintiff objects to this Request on the grounds that it is vague and ambiguous with respect to the term "direct the work."   Plaintiff also objects to this Request on the grounds that it

is overbroad.  Subject to and without waiving these objections, Plaintiff denies that Plaintiff directed the work of other employees.

5.      You had responsibility for training employees of Love's.

    **RESPONSE:**        Plaintiff objects to this Request in that it involves both factual issues as well as legal issues. The purpose of requests for admission is to obtain admission of facts which are in no real dispute and which the adverse party can admit cleanly, without qualifications. Here, Defendant's request for admission called for either crucial facts central to the lawsuit or legal concessions.  Plaintiff objects to this Request on the grounds that it is vague and ambiguous with respect to the term "responsibility for training."  Plaintiff also objects to this Request on the grounds that it is overbroad.  Subject to and without waiving these objections, Plaintiff denies that Plaintiff was "responsible for training" employees.

6.      You had responsibility for scheduling employees of Love's.

    **RESPONSE:**        Plaintiff objects to this Request in that it involves both factual issues as well as legal issues. The purpose of requests for admission is to obtain admission of facts which are in no real dispute and which the adverse party can admit cleanly, without qualifications. Here, Defendant's request for admission called for either crucial facts central to the lawsuit or legal concessions.  Plaintiff objects to this Request on the grounds that it is vague and ambiguous with respect to the term "responsibility for scheduling."  Plaintiff also objects to this Request on the grounds that it is overbroad.  Subject to and without waiving these objections, Plaintiff denies that Plaintiff was "responsible for scheduling" for employees.

7.      You had responsibility for disciplining employees of Love's.

    **RESPONSE:**        Plaintiff objects to this Request in that it involves both factual issues as well as legal issues. The purpose of requests for admission is to obtain admission of facts which are in no real dispute and which the adverse party can admit cleanly, without qualifications. Here, Defendant's request for admission called for either crucial facts central to the lawsuit or legal concessions.  Plaintiff objects to this Request on the grounds that it is vague and ambiguous with respect to the term "responsibility for disciplining."  Plaintiff also objects to this Request on the grounds that it is overbroad.  Subject to and without waiving these objections, Plaintiff denies that Plaintiff was "responsible for disciplining" employees.

8.      You had responsibility for terminating employees of Love's.

    **RESPONSE:**        Plaintiff objects to this Request in that it involves both factual issues as well as legal issues. The purpose of requests for admission is to obtain admission of facts which are in no real dispute and which the adverse party can admit cleanly, without qualifications. Here, Defendant's request for admission called for either crucial facts central to the lawsuit or legal concessions.  Plaintiff objects to this Request on the grounds that it is vague and ambiguous with respect to the term "responsibility for terminating."  Plaintiff also objects to this Request on the grounds that it is overbroad.  Subject to and without waiving these objections, Plaintiff denies that Plaintiff was "responsible for terminating" employees.

9.      You had responsibility for making promotion recommendations for employees of Love's.

   **RESPONSE:**          Plaintiff objects to this Request in that it involves both factual issues as well as legal issues. The purpose of requests for admission is to obtain admission of facts which are in no real dispute and which the adverse party can admit cleanly, without qualifications. Here, Defendant's request for admission called for either crucial facts central to the lawsuit or legal concessions.  Plaintiff objects to this Request on the grounds that it is vague and ambiguous with respect to the term "responsibility for making promotion recommendations."  Plaintiff also objects to this Request on the grounds that it is overbroad.   Subject to and without waiving these objections, Plaintiff denies that Plaintiff was "responsible for making promotion recommendations."

10.     You had responsibility for dealing with customer complaints at Love's.

   **RESPONSE:**          Plaintiff objects to this Request in that it involves both factual issues as well as legal issues. The purpose of requests for admission is to obtain admission of facts which are in no real dispute and which the adverse party can admit cleanly, without qualifications. Here, Defendant's request for admission called for either crucial facts central to the lawsuit or legal concessions.  Plaintiff objects to this Request on the grounds that it is vague and ambiguous with respect to the terms "dealing with" and "customer complaints."  Plaintiff also objects to this Request on the grounds that it is overbroad.   Subject to and without waiving these objections, Plaintiff denies that Plaintiff was "responsible" for dealing with customer complaints any more than any other employee in the store with the exception of the Store Manager.

11.     You exercised discretion when resolving customer complaints at Love's.

   **RESPONSE:**          Plaintiff objects to this Request in that it involves both factual issues as well as legal issues. The purpose of requests for admission is to obtain admission of facts which are in no real dispute and which the adverse party can admit cleanly, without qualifications. Here, Defendant's request for admission called for either crucial facts central to the lawsuit or legal concessions.  Plaintiff objects to this Request on the grounds that it is vague and ambiguous with respect to the terms "exercise discretion" and "resolving customer complaints."  Plaintiff also objects to this Request on the grounds that it is overbroad.   Subject to and without waiving these objections, Plaintiff denies having the authority to "resolve" customer complaints any more than any other employee in the store and thus, did not "exercise discretion" with respect to customer complaints more so than any other store employee.

12.     You attended "tailgate" meetings at Love's.

   **RESPONSE:**          Plaintiff objects to this Request on the grounds that it is vague and ambiguous with respect to the term "tailgate."  Plaintiff also objects to this Request on the grounds that it is overbroad.  Subject to and without waiving these objections, Plaintiff denies information sufficient to respond to this Request as Plaintiff is unfamiliar with the term "tailgate meeting."

13.     You attended management meetings at Love's.

**RESPONSE:**        Plaintiff objects to this Request in that it involves both factual issues as well as legal issues. The purpose of requests for admission is to obtain admission of facts which are in no real dispute and which the adverse party can admit cleanly, without qualifications. Here, Defendant's request for admission called for either crucial facts central to the lawsuit or legal concessions.  Plaintiff objects to this Request on the grounds that it is vague and ambiguous with respect to the term "management meeting."  Plaintiff also objects to this Request on the grounds that it is overbroad.  Subject to and without waiving these objections, Plaintiff denies information sufficient to respond to this Request as Plaintiff is unaware of what constitutes a "management meeting."  To the extent that this Request is asking whether Plaintiff ever had a meeting with a supervisor, Plaintiff admits.

14.    You were responsible for ordering product for Love's.

**RESPONSE:**        Plaintiff objects to this Request in that it involves both factual issues as well as legal issues. The purpose of requests for admission is to obtain admission of facts which are in no real dispute and which the adverse party can admit cleanly, without qualifications. Here, Defendant's request for admission called for either crucial facts central to the lawsuit or legal concessions.  Plaintiff objects to this Request on the grounds that it is vague and ambiguous with respect to the term "responsible for ordering products." Plaintiff also objects to this Request on the grounds that it is overbroad. Subject to and without waiving these objections, Plaintiff denies being "responsible for ordering products."

Date:  November 10, 2017
       New York, NY

s/*Marc S. Hepworth*

Marc S. Hepworth*
Charles Gershbaurn**
David A. Roth*
Rebecca S. Predovan*
**HEPWORTH, GERSHBAUM**
**& ROTH, PLLC**
192 Lexington Avenue, Suite 802
New York, New York 10016
Tel: (212) 545-1199
Fax: (212) 532-3801
mhepworth@hgrlawyers.com
cgershbaum@hgrlawyers.com
droth@hgrlawyers.com
rpredovan@hgrlawyers.com

Gregg I. Shavitz*
Paolo C. Meireles*
**SHAVITZ LAW GROUP, P.A.**
1515 South Federal Highway, Suite 404
Boca Raton, FL 33432
Tel: (561) 447-8888
Fax: (561) 447-8831

gshavitz@shavitzlaw.com
pmeireles@shavitzlaw.com

David Senoff
Clayton P. Flaherty*
**ANAPOL WEISS**
One Logan Square
130 N. 18th Street
Suite 1600
Philadelphia, PA 19103
Tel: (215) 735-1130
dsenoff@anapolweiss.com
cflaherty@anapolweiss.com

*Attorneys for Plaintiffs
and the FLSA Collective*

*\*Pro hac vice* admitted
*\*\*Pro hac vice* application forthcoming

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on **November 10, 2017** that the foregoing document was served on all counsel of record via electronic mail.

*s/ Marc S. Hepworth*
Marc S. Hepworth, Esq.

## SERVICE LIST

*Given, et al. v. Love's Travel Stops & Country Stores, Inc.*
*CASE NO.: 1:17-cv-01266*
*The United States District Court for the Middle District of Pennsylvania*

Matthew J. Hank, Esq.
Email: mhank@littler.com
Rachel Fendell Satinsky, Esq.
Email: rsatinsky@littler.com
**LITTLER MENDELSON, P.C.**
Three Parkway
1601 Cherry St., Suite 1400
Philadelphia, PA 19102
Telephone: (267) 402-3054

*Attorneys for Defendant*

*Served Via E-mail*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ZACHARY GIVEN, KRISTOPHER )
LAWSON, VINCENT MCCLEERY, and )
SEAN MCMURRAN, Individually and on )        Civil Action No. 1:17-CV-01266-CCC
Behalf of Other Persons Similarly Situated, )
                         )
        Plaintiff, )
                         )
      v. )
                         )
LOVE'S TRAVEL STOPS & COUNTRY )
STORES, INC., )
                         )
        Defendant. )
                         )

### PLAINTIFF SEAN MCMURRAN'S OBJECTIONS AND
### RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES

Pursuant to Rule 33(b) of the Federal Rules of Civil Procedure, Plaintiff Sean McMurran ("Plaintiff"), by and through the undersigned attorneys, hereby objects and responds to the Defendant Love's Travel Stops & Country Stores, Inc.'s ("Love's" or "Defendant") First Set of Interrogatories to Plaintiff Sean McMurran ("Interrogatories").

### PRELIMINARY STATEMENT

1.     Plaintiff reserves all objections to the competence, relevance, materiality, or admissibility at trial of any information or documents requested or identified by any party. The inadvertent disclosure of any privileged information shall not be deemed to be a waiver of any applicable privilege with respect to such information or any other information.

2.     The production of information and/or documents pursuant to these Responses is made without waiving, or intending to waive, but on the contrary reserving and intending to reserve: (a) the right to object on any grounds to the use of any information or documents produced or

identified pursuant to these Responses in this or any other action or proceeding; (b) the right to object on any and all grounds, at any time, to other Interrogatories or other discovery mechanisms or proceedings; and (c) the right at any time to revise, correct, or supplement these Responses.

3.      The following Responses are based upon information presently within Plaintiff's possession and control and do not include those documents or information intended to be produced by Defendants to Plaintiff which may be responsive to items requested in these Interrogatories.

4.      Plaintiff responds only on behalf of the individual on whom these Interrogatories have been served.

5.      This Preliminary Statement is incorporated into each of the Responses set forth below.

## GENERAL OBJECTIONS

1.      Plaintiff objects to Defendant's Definitions and Instructions to the extent that they attempt to impose any obligations or burdens upon Plaintiff in excess of those stated in the Federal Rules of Civil Procedure or the Local Rules of the United States District Court for the Middle District of Pennsylvania.

2.      Plaintiff objects to Defendant's Interrogatories to the extent that they may seek any information and/or documents, including witness statements, that were prepared in anticipation of litigation or for trial by or for Plaintiff or Plaintiff's representatives, on the grounds that any such information or documents are privileged from discovery and Defendant have not made the requisite showings of "substantial need" and "undue hardship."

3.      Plaintiff objects to Defendant's Interrogatories to the extent they may seek information or documents that contain or involve attorney-client communications or attorney work product, on the ground that such information and documents are privileged from discovery. This

objection includes, but is not limited to, information relating to mental impressions, conclusions, opinions or legal theories of Plaintiff's counsel concerning this litigation, information that was obtained or prepared in anticipation of this litigation or trial preparation, and privileged information provided, obtained, or prepared since the commencement of this litigation concerning this litigation.

4.     Plaintiff objects to Defendant's Interrogatories to the extent that they seek information not discoverable under the Federal Rules of Civil Procedure or the Local Rules of the United States District Court for the Middle District of Pennsylvania.

5.     Plaintiff generally objects to the Interrogatories in that to the extent the "Relevant Period" identified by the Interrogatories is not limited in time and scope to information that is relevant and reasonably calculated to lead to the discovery of admissible evidence.

6.     Plaintiff generally objects to the Interrogatories in that they seek to impose an obligation to supplement these Responses that is inconsistent with FED. R. CIV. P. 26(e).

7.     Plaintiff generally objects to the Interrogatories in that they seek information that is already in Defendant's possession, custody or control.

8.     To the extent that Plaintiff provides Responses to these Interrogatories, such Responses shall not constitute a waiver of any objection to the relevancy of such information, all such objections being expressly reserved.  These Responses are based on reasonable investigation by Plaintiff and reflect only Plaintiff's current state of knowledge and belief respecting the information requested.  Accordingly, Plaintiff concedes neither the relevance nor materiality of the Interrogatories and, regardless of any objection or answer thereto, reserves the right to object to the admissibility of the Interrogatories, and any Response, at trial.

Each of these General Objections is incorporated without further reference in each of the following specific Responses to these Interrogatories. In addition to the General Objections set forth above, Plaintiff also states other, specific objections where appropriate, including objections that are not generally applicable to all the Interrogatories. By setting forth such specific objections, Plaintiff does not intend to limit or restrict these General Objections. To the extent that Plaintiff responds to an Interrogatory to which Plaintiff objects, such objections are not waived.

## INTERROGATORIES

1.      If your answer to Request for Admission No. 1 is an unqualified admission, you need not respond to this Interrogatory. If your answer is other than an unqualified admission, please identify all facts supporting your assertion that you were not compensated at a rate of not less than $455 per week.

**ANSWER:** Plaintiff objects to this Interrogatory on the grounds that it is overbroad. Plaintiff also objects to this Interrogatory on the grounds that it seeks information already in Defendants' possession and is therefore available from a less burdensome source. Subject to and without waiving these objections, Plaintiff admitted Request for Admission No. 1 and therefore, need not respond to this Interrogatory.

2.      If your answer to Request for Admission No. 2 is an unqualified admission, you need not respond to this Interrogatory. If your answer is other than an unqualified admission, please identify all facts supporting your assertion that you did not have responsibility for interviewing potential employees for Love's.

**ANSWER:** Plaintiff objects to this Interrogatory on the grounds that it is vague and ambiguous with respect to the term "responsibility for interviewing." Plaintiff also objects to this Interrogatory on the grounds that it is overbroad. Subject to and without waiving these objections, Plaintiff states that Plaintiff did not have the authority to determine whether potential employees should be interviewed. Plaintiff was directed by Plaintiff's supervisor to participate in a limited number of interviews, but Plaintiff's supervisor was in fact responsible for interviewing potential employees.

3.      If your answer to Request for Admission No. 3 is an unqualified admission, you need not

respond to this Interrogatory. If your answer is other than an unqualified admission, please identify

all facts supporting your assertion that you did not have input into selecting employees of Love's.

**ANSWER:**   Plaintiff objects to this Interrogatory on the grounds that it is vague and ambiguous with respect to the terms "input" and "selecting employees." Plaintiff also objects to this Interrogatory on the grounds that it is overbroad. Subject to and without waiving these objections, Plaintiff states that while Plaintiff did not have the authority to "select" employees. Plaintiff's supervisor was in fact responsible for hiring prospective employees.

4.      If your answer to Request for Admission No. 4 is an unqualified admission, you need not

respond to this Interrogatory. If your answer is other than an unqualified admission, please identify

all facts supporting your assertion that you did not direct the work of employees of Love's.

**ANSWER:**   Plaintiff objects to this Interrogatory on the grounds that it is vague and ambiguous with respect to the term "direct the work." Plaintiff also objects to this Interrogatory on the grounds that it is overbroad. Subject to and without waiving these objections, Plaintiff states that Plaintiff's supervisor(s) and or corporate directives directed the work of Defendant's employees, not Plaintiff.

5.      If your answer to Request for Admission No. 5 is an unqualified admission, you need not

respond to this Interrogatory. If your answer is other than an unqualified admission, please identify

all facts supporting your assertion that you did not have responsibility for training employees of

Love's.

**ANSWER:**   Plaintiff objects to this Interrogatory on the grounds that it is vague and ambiguous with respect to the term "responsibility for training." Plaintiff also objects to this Interrogatory on the grounds that it is overbroad. Subject to and without waiving these objections, Plaintiff states that Plaintiff's supervisor directed Plaintiff and other more experienced employees to work alongside new employees. Plaintiff's supervisor was the individual with primary responsibility for ensuring all new employees were properly trained.

6.      If your answer to Request for Admission No. 6 is an unqualified admission, you need not

respond to this Interrogatory. If your answer is other than an unqualified admission, please identify

all facts supporting your assertion that you did not have responsibility for scheduling employees

of Love's.

**ANSWER:**   Plaintiff objects to this Interrogatory on the grounds that it is vague and ambiguous with respect to the term "responsibility for scheduling." Plaintiff also objects to this Interrogatory on the grounds that it is overbroad. Subject to and without waiving these objections, Plaintiff states that Plaintiff did not have the "responsibility for scheduling." employees. On a limited number of occasions Plaintiff's supervisor directed Plaintiff to prepare a draft of schedules, yet these had to be submitted to Plaintiff's supervisor for editing and approval before they were posted, and as such, it was Plaintiff's supervisor who was responsible for scheduling employees.

7.      If your answer to Request for Admission No. 7 is an unqualified admission, you need not

respond to this Interrogatory. If your answer is other than an unqualified admission, please identify

all facts supporting your assertion that you did not have responsibility for disciplining employees

of Love's.

**ANSWER:**   Plaintiff objects to this Interrogatory on the grounds that it is vague and ambiguous with respect to the term "responsibility for disciplining." Plaintiff also objects to this Interrogatory on the grounds that it is overbroad. Subject to and without waiving these objections, Plaintiff states that Plaintiff did not have the authority to discipline employees. Plaintiff's supervisor was responsible for disciplining employees.

8.      If your answer to Request for Admission No. 8 is an unqualified admission, you need not

respond to this Interrogatory. If your answer is other than an unqualified admission, please identify

all facts supporting your assertion that you did not have responsibility for terminating employees

of Love's.

**ANSWER:**   Plaintiff objects to this Interrogatory on the grounds that it is vague and ambiguous with respect to the term "responsibility for terminating." Plaintiff also objects to this Interrogatory on the grounds that it is overbroad. Subject to and without waiving these objections, Plaintiff did not have the authority to terminate employees rather is was the Plaintiff's supervisor(s) who had said authority.

9.      If your answer to Request for Admission No. 9 is an unqualified admission, you need not

respond to this Interrogatory. If your answer is other than an unqualified admission, please identify

all facts supporting your assertion that you did not have responsibility for making promotion

recommendations for employees of Love's.

**ANSWER:**   Plaintiff objects to this Interrogatory on the grounds that it is vague and ambiguous with respect to the term "responsibility for making promotion recommendations."

Plaintiff also objects to this Interrogatory on the grounds that it is overbroad. Subject to and without waiving these objections, Plaintiff did not have the authority to promote employees. Any opinion that Plaintiff may have had as to such actions were not given particular weight or consideration.

10.     If your answer to Request for Admission No. 10 is an unqualified admission, you need not

respond to this Interrogatory. If your answer is other than an unqualified admission, please identify

all facts supporting your assertion that you did not have responsibility for dealing with customer

complaints at Love's.

**ANSWER:**   Plaintiff objects to this Interrogatory on the grounds that it is vague and ambiguous with respect to the terms "dealing with" and "customer complaints." Plaintiff also objects to this Interrogatory on the grounds that it is. Subject to and without waiving these objections, Plaintiff did not have any additional authority to "deal with" complaints more than any other employee in the store with the exception of the Store Manager.

11.     If your answer to Request for Admission No. 11 is an unqualified admission, you need not

respond to this Interrogatory. If your answer is other than an unqualified admission, please identify

all facts supporting your assertion that you did not exercise discretion when resolving customer

complaints at Love's.

**ANSWER:**   Plaintiff objects to this Interrogatory on the grounds that it is vague and ambiguous with respect to the terms "exercise discretion" and "resolving customer complaints." Plaintiff also objects to this Interrogatory on the grounds that it is overbroad and seeks information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence in that it seeks information not relevant to the position and claims at issue in this litigation. Subject to and without waiving these objections, Plaintiff did not have the authority to resolve customer complaints beyond that of any other employee, with the exception of the store manager. Additionally, Plaintiff refers Defendant to Plaintiff's response to Interrogatory No. 10, above.

12.     If your answer to Request for Admission No. 12 is an unqualified admission, you need not

respond to this Interrogatory. If your answer is other than an unqualified admission, please identify

all facts supporting your assertion that you did not attend "tailgate" meetings at Love's.

**ANSWER:**   Plaintiff objects to this Interrogatory on the grounds that it is vague and ambiguous with respect to the term "tailgate." Plaintiff also objects to this Interrogatory on the grounds that it is overbroad. Subject to and without waiving these objections, Plaintiff is unfamiliar with the term "tailgate meeting."

13.     If your answer to Request for Admission No. 13 is an unqualified admission, you need not

respond to this Interrogatory.  If your answer is other than an unqualified admission, please identify

all facts supporting your assertion that you did not attend management meetings at Love's.

      **ANSWER:**   Plaintiff objects to this Interrogatory on the grounds that it is vague and
ambiguous with respect to the term "management meeting."  Plaintiff also objects to this
Interrogatory on the grounds that it is overbroad.  Subject to and without waiving these objections,
Plaintiff is unaware what of what constitutes a "management meeting," and thus cannot accurately
respond to this Interrogatory.  To the extent this Interrogatory is asking whether Plaintiff ever had
a meeting with a supervisor, Plaintiff responds in the affirmative.

14.     If your answer to Request for Admission No. 14 is an unqualified admission, you need not

respond to this Interrogatory.  If your answer is other than an unqualified admission, please identify

all facts supporting your assertion that you were not responsible for ordering product for Love's.

      **ANSWER:**   Plaintiff objects to this Interrogatory on the grounds that it is vague and
ambiguous with respect to the term "responsible for ordering products."  Plaintiff also objects to
this Interrogatory on the grounds that it is overbroad.  Subject to and without waiving these
objections, Plaintiff states that Plaintiff was not responsible for "ordering products." On occasion
Plaintiff's supervisor directed Plaintiff to fill out product order paperwork. Plaintiff could not do
so without Plaintiff's supervisor authority as Plaintiff's supervisor was the individual responsible
for ordering products.

15.     Identify all legal proceedings, including administrative proceedings before any federal or

state agency, in which Plaintiff has been a party or has given sworn testimony (e.g., through oral

testimony, deposition, or by affidavit). Include a description of:

      (a)     the style, case number and court (e.g., Smith v. Smith, Case No. 100-2, 191st
Judicial District);
      (b)     the legal counsel involved; and
      (c)     the type of action pursued (e.g., divorce, breach of contract, etc.).

      **ANSWER:**   Plaintiff objects to this Interrogatory on the grounds that it is overbroad.
Subject to and without waiving these objections, Plaintiff states that Plaintiff file for bankruptcy
approximately seven years ago.

16.     Please list all hours you worked for Love's, including the specific date, start times, and

ending times, as well as what work you did during those hours.

**ANSWER:**   Plaintiff objects to this Interrogatory on the grounds that it is overbroad, not limited in time and scope, and seeks information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence in that it seeks information not relevant to the position and claims at issue in this litigation, and it seeks information not related to the time period at issue in this litigation. Plaintiff also objects to this Interrogatory on the grounds that it is unduly burdensome in that Defendants are required to keep accurate records of hours that Plaintiff worked. *See Anderson v. Mt. Clemons Pottery Co.*, 328 U.S. 680, 686-88 (1946); 29 U.S.C. § 211(c). Plaintiff further objects to this Interrogatory on the grounds that it seeks information already in Defendants' possession and is therefore available from a less burdensome source.   Additionally, Plaintiff objects to this Interrogatory on the grounds that it is unduly burdensome and the information sought is not proportional to the needs of the case.   Plaintiff objects to this Interrogatory to the extent that issues regarding damages should be deferred to a later stage of discovery.   Finally, Plaintiff objects to this Interrogatory on the grounds that it contains multiple interrogatories and subparts.   Subject to and without waiving these objections Plaintiff, Plaintiff states that during each week that Plaintiff worked as an Operations Manager ("OMs") during the time period relevant to this matter, Plaintiff worked an average of approximately (55) to (60) hours per week.  Plaintiff's primary job duties as an OM consisted of employee type duties including but not limited to working the cash registers, stocking shelves, cleaning and straightening the store, assisting customers, organizing the store according to detailed corporate directives, unpacking merchandise, unloading trucks, and cleaning the bathrooms and showers.

17.     Please identify all of your supervisors, direct reports, and project team members since you began working for Love's.

**ANSWER:**   Plaintiff objects to this Interrogatory as vague and ambiguous as to the terms "direct reports" and "project team members."  Plaintiff also objects to this Interrogatory on the grounds that it is overbroad, not limited in time and scope, and seeks information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence in that it seeks information not relevant to the position and claims at issue in this litigation, and it seeks information not related to the time period at issue in this litigation. Plaintiff further objects to this Interrogatory on the grounds that it seeks information already in Defendants' possession and is therefore available from a less burdensome source.   Subject to and without waiving these objections, Plaintiff identifies Matt Gonzales, Kirk Mitchel, and Brank (last name unknown) as Plaintiff's supervisor, and identifies Aaron Able and Jonathan Price as Plaintiff's other co-workers.

18.     Please identify all current or former employees of Love's with whom you have (or anyone acting on your behalf has) had discussions or other communications regarding the individual joining or potentially opting-in to the instant case.   For each individual so identified, please state the date and place of the discussion or communication, the substance of the discussion or

communication, the identity of all witnesses to the discussion or communication, and whether the individual has expressed an interest in joining or opting-in to the case.

**ANSWER:**   Plaintiff objects to this Interrogatory on the grounds that it is overbroad and seeks information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence in that it seeks information not relevant to the position and claims at issue in this litigation.   Plaintiff also objects to this Interrogatory to the extent that it seeks information protected from disclosure by the work product doctrine and/or the attorney-client privilege. Subject to and without waiving these objections, Plaintiff states that Plaintiff will not respond to this Interrogatory.   To the extent any individual seeks to join this matter, their consent to join has been or will be filed in connection with this matter.

19.   Please state all facts supporting your contention in Paragraph 73 of your Complaint that "There are numerous similarly situated current and former OMs who have not been paid proper overtime wages."

**ANSWER:**   Plaintiff objects to this Interrogatory on the grounds that it is vague, ambiguous, and calls for a legal conclusion with respect to the term "similarly situated." Subject to and without waiving these objections, Plaintiff states that, based on Plaintiff's knowledge and what Plaintiff has experienced and witnessed while working for Defendant, Defendant's OMs are all subject to the same policies, all perform the same primary duties and have the same responsibilities—which are non-exempt, and all regularly work over forty (40) hours per week without overtime compensation due to Defendant's policy of misclassifying OMs as exempt from the overtime protections of the Fair Labor Standers Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*

20.   Do you contend that Love's acted willfully?   If yes, please state all facts supporting your contention that Love's acted willfully.

**ANSWER:**   Plaintiff objects to this Interrogatory to the extent it calls for a legal conclusion as to the term "willfully."   Plaintiff also objects to this Interrogatory to the extent that issues regarding damages should be deferred to a later stage of discovery.   Subject to and without waiving these objections, Plaintiff states that Defendant, in classifying Plaintiff and similarly situated OMs as exempt from the overtime protections of the FLSA, 29 U.S.C. § 201 *et seq.*, ignored the fact that Plaintiff's and similarly situated OMs' primary duties were non-exempt in nature and that they did not qualify for any exemption under the FLSA.   Thus, Defendant intentionally and/or willfully disregarded the requirements of the FLSA in classifying Plaintiff and similarly situated OMs as exempt employees.   Plaintiff further refers Defendant to Paragraphs 64 through 66 of the Collective Action Complaint.

Date:   November 10, 2017           s/*Marc S. Hepworth*
        New York, NY                    Marc S. Hepworth*
                                        Charles Gershbaum**

David A. Roth*
Rebecca S. Predovan*
**HEPWORTH, GERSHBAUM**
**& ROTH, PLLC**
192 Lexington Avenue, Suite 802
New York, New York 10016
Tel: (212) 545-1199
Fax: (212) 532-3801

mhepworth@hgrlawyers.com
cgershbaum@hgrlawyers.com
droth@hgrlawyers.com
rpredovan@hgrlawyers.com

Gregg I. Shavitz*
Paolo C. Meireles*
**SHAVITZ LAW GROUP, P.A.**
1515 South Federal Highway, Suite 404
Boca Raton, FL 33432
Tel: (561) 447-8888
Fax: (561) 447-8831
gshavitz@shavitzlaw.com
pmeireles@shavitzlaw.com

David Senoff
Clayton P. Flaherty*
**ANAPOL WEISS**
One Logan Square
130 N. 18th Street
Suite 1600
Philadelphia, PA 19103
(215) 735-1130
dsenoff@anapolweiss.com
cflaherty@anapolweiss.com

*Attorneys for Plaintiffs and the FLSA*
*Collective*

*Pro hac vice* admitted
**Pro hac vice* application
forthcoming

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on **November 10, 2017** that the foregoing document was served on all counsel of record via electronic mail.

*s/ Marc S. Hepworth*
Marc S. Hepworth, Esq.

## SERVICE LIST

*Given, et al. v. Love's Travel Stops & Country Stores, Inc.*
*CASE NO.: 1:17-cv-01266*
*The United States District Court for the Middle District of Pennsylvania*

Matthew J. Hank, Esq.
Email: mhank@littler.com
Rachel Fendell Satinsky, Esq.
Email: rsatinsky@littler.com
**LITTLER MENDELSON, P.C.**
Three Parkway
1601 Cherry St., Suite 1400
Philadelphia, PA 19102
Telephone: (267) 402-3054

*Attorneys for Defendant*

*Served Via E-mail*

## <u>VERIFICATION</u>

Pursuant to 28 U.S.C. Section 1746, I hereby declare under penalty of perjury that the

foregoing is true and correct.

sean (Nov 9, 2017)
_____
Signature

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

-----------------------------------------------------------------------X

| | | |
|---|---|---|
| ZACHARY GIVEN, KRISTOPHER LAWSON, | : | |
| VINCENT MCCLEERY, and SEAN MCMURRAN, | : | Civil Action No. |
| Individually and on Behalf of Other Persons | : | 1:17-cv-01266-CCC |
| Similarly Situated, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| -against- | : | |
| | : | |
| LOVE'S TRAVEL STOPS & COUNTRY STORES, | : | |
| INC., | : | |
| | : | |
| Defendant. | : | |
| | : | |

-----------------------------------------------------------------------X

**PLAINTIFF SEAN MCMURRAN'S OBJECTIONS AND RESPONSES**
**TO DEFENDANT'S FIRST SET OF DOCUMENT REQUESTS**

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiff Sean McMurran ("Plaintiff"), by and through the undersigned attorneys, hereby objects and responds to the Defendant Love's Travel Stops & Country Stores, Inc.'s ("Love's" or "Defendant") First Set of Documents Requests to Plaintiff Sean McMurran ("Requests").

This response is made by Plaintiff and is subject to, and without waiving or intending to waive, but on the contrary intending to reserve and reserving all rights under the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Middle District of Pennsylvania, including the right to object to any other discovery procedures involving or relating to the subject matter of Defendant's Requests.

**PRELIMINARY STATEMENT**

1.      Plaintiff reserves all objections to the competence, relevance, materiality, or admissibility at trial of any information or documents requested or identified by any party.  The

inadvertent disclosure of any privileged information shall not be deemed to be a waiver of any applicable privilege with respect to such information or any other information.

2.      The production of information and/or documents pursuant to this response is made without waiving, or intending to waive, but on the contrary reserving and intending to reserve: (a) the right to object on any grounds to the use of documents produced pursuant to this response in this or any other action or proceeding; (b) the right to object on any and all grounds, at any time, to other requests for production or other discovery mechanisms or proceedings; and (c) the right at any time to revise, correct, or supplement this response.

3.      The following responses are based upon information presently within this Plaintiff's possession and control and do not include those documents intended to be produced by Defendant to Plaintiff which may be responsive to items requested in these Requests, but which Defendant already has in its possession and control.  Said responses are made without prejudice to Plaintiff's right to utilize subsequently discovered facts.

4.      No incidental or implied admissions of fact by Plaintiff are made by the responses below.  The only admissions are express admissions.  The fact that Plaintiff has responded to any Request herein may not properly be taken as an admission that Plaintiff accepts or admits the existence of any fact set forth or assumed by such Request, or that such response constitutes admissible evidence.  The fact that Plaintiff has produced documents in response to part of or all of any Request is not intended to, and shall not be, construed to be a waiver by Plaintiff of all or any part of any objection to any Request made by Plaintiff.

5.      Because separate Requests have been served on each Plaintiff, Plaintiff responds on Plaintiff's behalf only and not on behalf of any other Plaintiff in this case.

6.     This Preliminary Statement is incorporated into each of the responses set forth below.

## **GENERAL OBJECTIONS**

1.     Plaintiff objects to Defendant's Definitions and Instructions to the extent that they attempt to impose any obligations or burdens upon Plaintiff in excess of those stated in the Federal Rules of Civil Procedure or the Local Rules of the United States District Court for the Middle District of Pennsylvania.

2.     Plaintiff objects to Defendant's Requests to the extent that they may seek any information and/or documents, including witness statements, that were prepared in anticipation of litigation or for trial by or for Plaintiff or Plaintiff's representatives, on the grounds that any such information or documents are privileged from discovery and Defendant has not made the requisite showings of "substantial need" and "undue hardship."

3.     Plaintiff objects to Defendant's Requests to the extent they may seek information or documents that contain or involve attorney-client communications or attorney work-product, on the ground that such information and documents are privileged from discovery.

4.     Plaintiff objects to Defendant's Requests to the extent they may seek the disclosure of mental impressions, conclusions, opinions, or legal theories of Plaintiff's counsel subject to the work product rule.

5.     Plaintiff objects to Defendant's Requests to the extent that they seek information not discoverable under the Federal Rules of Civil Procedure or the Local Rules of the United States District Court for the Middle District of Pennsylvania.

6.     Each of these General Objections is incorporated without further reference in each of the following specific Responses to these Requests.  In addition to the General Objections set

forth above, Plaintiff also states other, specific objections where appropriate, including objections

that are not generally applicable to all the Requests.  By setting forth such specific objections,

Plaintiff does not intend to limit or restrict these General Objections.  To the extent that Plaintiff

responds to a Request to which Plaintiff objects, such objections are not waived.

## RESPONSES TO REQUESTS FOR PRODUCTION

1.      If your answer to Request for Admission No. 1 is an unqualified admission, you need not

respond to this Document Request.  If your answer is other than an unqualified admission, please

produce a true and correct copy of all documents supporting your assertion that you were not

compensated at a rate of not less than $455 per week.

   **ANSWER:**  Plaintiff objects to this Request on the grounds that it is overbroad and seeks
information not relevant to the position and claims at issue in this litigation.  Plaintiff also objects
to this Request on the grounds that it seeks information already in Defendant's possession and is
therefore available from a less burdensome source.  Subject to and without waiving these
objections, Plaintiff admitted Request for Admission No. 1.

2.      If your answer to Request for Admission No. 2 is an unqualified admission, you need not

respond to this Document Request.  If your answer is other than an unqualified admission, please

produce a true and correct copy of all documents supporting your assertion that you did not have

responsibility for interviewing employees at Love's.

   **ANSWER:**  Plaintiff objects to this Request on the grounds that it is vague and ambiguous
with respect to the term "responsibility for interviewing."  Plaintiff also objects to this Request on
the grounds that it is overbroad.  Subject to and without waiving these objections, Plaintiff states
that Plaintiff has no responsive documents in Plaintiff's possession, custody or control.

3.      If your answer to Request for Admission No. 3 is an unqualified admission, you need not

respond to this Document Request.  If your answer is other than an unqualified admission, please

produce a true and correct copy of all documents supporting your assertion that you did not have

input into selecting employees of Love's.

   **ANSWER:**    Plaintiff objects to this Request on the grounds that it is vague and

ambiguous with respect to the terms "input" and "selecting employees." Plaintiff also objects to this Request on the grounds that it is overbroad. Subject to and without waiving these objections, Plaintiff states that Plaintiff has no responsive documents in Plaintiff's possession, custody or control.

4.      If your answer to Request for Admission No. 4 is an unqualified admission, you need not

respond to this Document Request. If your answer is other than an unqualified admission, please

produce a true and correct copy of all documents supporting your assertion that you did not direct

work of employees at Love's.

**ANSWER:**   Plaintiff objects to this Request on the grounds that it is vague and ambiguous with respect to the term "direct the work." Plaintiff also objects to this Request on the grounds that it is overbroad. Subject to and without waiving these objections, Plaintiff states that Plaintiff has no responsive documents in Plaintiff's possession, custody or control.

5.      If your answer to Request for Admission No. 5 is an unqualified admission, you need not

respond to this Document Request. If your answer is other than an unqualified admission, please

produce a true and correct copy of all documents supporting your assertion that you did not have

responsibility for training employees of Love's.

**ANSWER:**   Plaintiff objects to this Request on the grounds that it is vague and ambiguous with respect to the term "responsibility for training." Plaintiff also objects to this Request on the grounds that it is overbroad. Subject to and without waiving these objections, Plaintiff states that Plaintiff has no responsive documents in Plaintiff's possession, custody or control.

6.      If your answer to Request for Admission No. 6 is an unqualified admission, you need not

respond to this Document Request. If your answer is other than an unqualified admission, please

produce a true and correct copy of all documents supporting your assertion that you did not have

responsibility for scheduling employees of Love's.

**ANSWER:**   Plaintiff objects to this Request on the grounds that it is vague and ambiguous with respect to the term "responsibility for scheduling." Plaintiff also objects to this Request on the grounds that it is overbroad. Subject to and without waiving these objections, Plaintiff states that Plaintiff has no responsive documents in Plaintiff's possession, custody or control.

7.      If your answer to Request for Admission No. 7 is an unqualified admission, you need not

respond to this Document Request.  If your answer is other than an unqualified admission, please

produce a true and correct copy of all documents supporting your assertion that you did not have

responsibility for disciplining employees of Love's.

    **ANSWER:**    Plaintiff objects to this Request on the grounds that it is vague and
ambiguous with respect to the term "responsibility for disciplining."  Plaintiff also objects to this
Request on the grounds that it is overbroad.  Subject to and without waiving these objections,
Plaintiff states that Plaintiff has no responsive documents in Plaintiff's possession, custody or
control.

8.      If your answer to Request for Admission No. 8 is an unqualified admission, you need not

respond to this Document Request.  If your answer is other than an unqualified admission, please

produce a true and correct copy of all documents supporting your assertion that you did not have

responsibility for terminating employees of Love's.

    **ANSWER:**    Plaintiff objects to this Request on the grounds that it is vague and
ambiguous with respect to the term "responsibility for terminating."  Plaintiff also objects to this
Request on the grounds that it is overbroad.  Subject to and without waiving these objections,
Plaintiff states that Plaintiff has no responsive documents in Plaintiff's possession, custody or
control.

9.      If your answer to Request for Admission No. 9 is an unqualified admission, you need not

respond to this Document Request.  If your answer is other than an unqualified admission, please

produce a true and correct copy of all documents supporting your assertion that you did not have

responsibility for making promotion recommendations for employees of Love's.

    **ANSWER:**    Plaintiff objects to this Request on the grounds that it is vague and
ambiguous with respect to the term "responsibility for making promotion recommendations."
Plaintiff also objects to this Request on the grounds that it is overbroad.  Subject to and without
waiving these objections, Plaintiff states that Plaintiff has no responsive documents in Plaintiff's
possession, custody or control.

10.     If your answer to Request for Admission No. 10 is an unqualified admission, you need not

respond to this Document Request.  If your answer is other than an unqualified admission, please

produce a true and correct copy of all documents supporting your assertion that you did not have

responsibility for dealing with customer complaints at Love's.

    **ANSWER:**   Plaintiff objects to this Request on the grounds that it is vague and ambiguous with respect to the terms "dealing with" and "customer complaints."  Plaintiff also objects to this Request on the grounds that it is overbroad and seeks information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence in that it seeks information not relevant to the position and claims at issue in this litigation.  Subject to and without waiving these objections, Plaintiff states that Plaintiff has no responsive documents in Plaintiff's possession, custody or control.

11.     If your answer to Request for Admission No. 11 is an unqualified admission, you need not

respond to this Document Request.  If your answer is other than an unqualified admission, please

produce a true and correct copy of all documents supporting your assertion that you did not

exercise discretion when resolving customer complaints at Love's.

    **ANSWER:**   Plaintiff objects to this Request on the grounds that it is vague and ambiguous with respect to the terms "exercise discretion" and "resolving customer complaints." Plaintiff also objects to this Request on the grounds that it is overbroad and seeks information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence in that it seeks information not relevant to the position and claims at issue in this litigation.  Subject to and without waiving these objections, Plaintiff states that Plaintiff has no responsive documents in Plaintiff's possession, custody or control.

12.     If your answer to Request for Admission No. 12 is an unqualified admission, you need not

respond to this Document Request.  If your answer is other than an unqualified admission, please

produce a true and correct copy of all documents supporting your assertion that you did not attend

"tailgate" meetings at Love's.

    **ANSWER:**   Plaintiff objects to this Request on the grounds that it is vague and ambiguous with respect to the term "tailgate."  Plaintiff also objects to this Request on the grounds that it is overbroad and seeks information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence in that it seeks information not relevant to the position and claims at issue in this litigation.  Subject to and without waiving these objections, Plaintiff states that Plaintiff has no responsive documents in Plaintiff's possession, custody or control.

13.     If your answer to Request for Admission No. 13 is an unqualified admission, you need not

respond to this Document Request.  If your answer is other than an unqualified admission, please

produce a true and correct copy of all documents supporting your assertion that you did not attend

management meetings at Love's.

      **ANSWER:**   Plaintiff objects to this Request on the grounds that it is vague and ambiguous with respect to the term "management meeting."  Plaintiff also objects to this Request on the grounds that it is overbroad.  Subject to and without waiving these objections, Plaintiff states that Plaintiff has no responsive documents in Plaintiff's possession, custody or control.

14.     If your answer to Request for Admission No. 14 is an unqualified admission, you need not

respond to this Document Request.  If your answer is other than an unqualified admission, please

produce a true and correct copy of all documents supporting your assertion that you were not

responsible for ordering product for Love's.

      **ANSWER:**   Plaintiff objects to this Request on the grounds that it is vague and ambiguous with respect to the term "responsible for ordering products."  Plaintiff also objects to this Request on the grounds that it is overbroad and seeks information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence in that it seeks information not relevant to the position and claims at issue in this litigation.  Subject to and without waiving these objections, Plaintiff states that Plaintiff has no responsive documents in Plaintiff's possession, custody or control.

15.     Please produce all documents that reflect the number of hours that you worked each day

during your employment with Love's including but not limited to, time sheets, activity logs,

journals, calendars, and agendas.

      **ANSWER:**   Plaintiff objects to this Request on the grounds that it is overbroad and seeks information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence in that it seeks information not relevant to the position and claims at issue in this litigation.  Plaintiff also objects to this Request on the grounds that it is unduly burdensome in that Defendant is required to keep accurate records of hours that Plaintiff worked.  *See Anderson v. Mt. Clemons Pottery Co.*, 328 U.S. 680, 686-88 (1946); 29 U.S.C. § 211(c).  Plaintiff further objects to this Request on the grounds that it seeks information already in Defendant's possession and is therefore available from a less burdensome source.  Finally, Plaintiff objects to this Request to the extent that issues regarding damages should be deferred to a later stage of discovery.  Subject to and without waiving these objections, Plaintiff states that Plaintiff has no responsive documents in Plaintiff's possession, custody or control.

16.     Please produce a true and correct copy of all communications between you and Love's.

      **ANSWER:**   Plaintiff objects to this Request on the grounds that it is overbroad.  Plaintiff also objects to this Request on the grounds that it seeks information already in Defendant's

possession and is therefore available from a less burdensome source.  Plaintiff further objects to this Request on the grounds that it is unduly burdensome and the information sought is not proportional to the needs of the case.  Subject to and without waiving these objections, Plaintiff states that Plaintiff has no responsive documents in Plaintiff's possession, custody or control.

17.    Please produce a true and correct copy of all documents reflecting communications, including but not limited to emails and text messages, between you and any current or former employee or agent of Love's.

    **ANSWER:**    Plaintiff objects to this Request on the grounds that it is overbroad and. Plaintiff also objects to this Request on the grounds that it seeks information already in Defendant's possession and is therefore available from a less burdensome source.  Plaintiff further objects to this Request on the grounds that it is unduly burdensome and the information sought is not proportional to the needs of the case.  Finally, Plaintiff objects to this Request to the extent that it seeks information protected from disclosure by the work product doctrine and/or the attorney-client privilege.  Subject to and without waiving these objections, Plaintiff states that Plaintiff has no responsive documents in Plaintiff's possession, custody or control.

18.    Please produce a true and correct copy of all documents that would help a jury understand the duties you performed as an Operations Manager at Love's.

    **ANSWER:**    Plaintiff objects to this Request on the grounds that it is vague and ambiguous, and calls for speculation with respect to what "would help a jury understand the duties" Plaintiff performed as an Operations Manager.  Plaintiff also objects to this Request on the grounds that it is overbroad, not limited in time and scope, and.  Plaintiff further objects to this Request on the grounds that it seeks information already in Defendant's possession and is therefore available from a less burdensome source.  Additionally, Plaintiff objects to this Request to the extent it calls for a legal conclusion.  Finally, Plaintiff objects to this Request to the extent that it calls for the production of documents that are protected from disclosure by the attorney-client privilege and/or work product doctrine.  Subject to and without waiving these objections, Plaintiff states that Plaintiff has not yet determined which exhibits(s), if any, Plaintiff intends to utilize at trial and will make such disclosures at the time and in the manner required by applicable rules and orders of the Court.  Beyond this, Plaintiff is unsure how to further respond to this Request other than to refer Defendant to the responsive, non-privileged documents already produced herein.

19.    Please produce a true and correct copy of all your resumes you have prepared for yourself, or someone else has prepared for you, during the last eight years.

    **ANSWER:**    Plaintiff objects to this Request on the grounds that it is overbroad, not limited in time and scope, is harassing and seeks information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence in that it seeks information not related to the time period at issue in this litigation.  Subject to and without waiving these objections, Plaintiff will not respond to this Request.

20.     Please produce a true and correct copy of all paychecks or pay stubs that you have received

from Love's.

**ANSWER:**     Plaintiff objects to this Request on the grounds that it is overbroad.  Plaintiff
also objects to this Request on the grounds that it is Defendant's burden to maintain records of
wages paid to Plaintiff.  Plaintiff further objects to this Request on the grounds that it seeks
information already in Defendant's possession and is therefore available from a less burdensome
source.  Finally, Plaintiff objects to this Request to the extent that issues regarding damages should
be deferred to a later stage of discovery.  Subject to and without waiving these objections, , Plaintiff
states that Plaintiff has no responsive documents in Plaintiff's possession, custody or control.

21.     Please produce a true and correct copy of all itemized wage statements that you have

received from Love's.

**ANSWER:**     Plaintiff objects to this Request on the grounds that it is overbroad.  Plaintiff
also objects to this Request on the grounds that it is Defendant's burden to maintain records of
wages paid to Plaintiff.  Plaintiff further objects to this Request on the grounds that it seeks
information already in Defendant's possession and is therefore available from a less burdensome
source.  Finally, Plaintiff objects to this Request to the extent that issues regarding damages should
be deferred to a later stage of discovery.  Subject to and without waiving these objections, Plaintiff
states that Plaintiff has no responsive documents in Plaintiff's possession, custody or control.

22.     Please produce a true and correct copy of all documents produced by you to any municipal,

county, state, or federal agency in connection with any claims allegedly arising out of your

employment with Love's, including claims for unpaid overtime wages.

**ANSWER:**     Plaintiff objects to this Request on the grounds that it is overbroad.  Subject
to and without waiving these objections, Plaintiff states that Plaintiff has no responsive documents
in Plaintiff's possession, custody or control.

23.     Please produce a true and correct copy of all employee handbooks, personnel manuals,

personnel policies or procedures, work rules, standards of employee conduct, disciplinary

procedures, termination procedures, and grievance procedures provided to you by Love's.

**ANSWER:**     Plaintiff objects to this Request on the grounds that it is overbroad.  Plaintiff
also objects to this Request on the grounds that it seeks information already in Defendant's
possession and is therefore available from a less burdensome source.  Subject to and without
waiving these objections, Plaintiff states that Plaintiff has no responsive documents in Plaintiff's
possession, custody or control.

24.     Please produce a true and correct copy of all documents that support your allegation in Paragraph 42 of your Complaint that "Plaintiffs and the Collective Members regularly worked in excess of forty (40) hours per workweek."

**ANSWER:**     Plaintiff objects to this Request on the grounds that it is unduly burdensome in that Defendant is required to keep accurate records of hours that Plaintiff and Collective Members worked.  *See Anderson v. Mt. Clemons Pottery Co.*, 328 U.S. 680, 686-88 (1946); 29 U.S.C. § 211(c).  Plaintiff further objects to this Request on the grounds that it seeks information already in Defendant's possession and is therefore available from a less burdensome source. Finally, Plaintiff objects to this Request to the extent that issues regarding damages should be deferred to a later stage of discovery.  Subject to and without waiving these objections, Plaintiff states that Plaintiff has no responsive documents in Plaintiff's possession, custody or control.

25.     Please produce a true and correct copy of all documents that support your allegation in Paragraph 46 of your Complaint that "Plaintiff McMurran worked approximately sixty (60) to sixty-five (65) hours per week during each week in which he worked five (5) or more shifts."

**ANSWER:**     Plaintiff objects to this Request on the grounds that it is unduly burdensome in that Defendant is required to keep accurate records of hours that Plaintiff worked.  *See Anderson v. Mt. Clemons Pottery Co.*, 328 U.S. 680, 686-88 (1946); 29 U.S.C. § 211(c).  Plaintiff further objects to this Request on the grounds that it seeks information already in Defendant's possession and is therefore available from a less burdensome source.  Finally, Plaintiff objects to this Request to the extent that issues regarding damages should be deferred to a later stage of discovery.  Subject to and without waiving these objections, Plaintiff states that Plaintiff has no responsive documents in Plaintiff's possession, custody or control.

26.     Please produce a true and correct copy of all documents that support your allegation in Paragraph 46 of your Complaint that "during the week of September 13, 2015 through September 19, 2015, McMurran worked approximately sixty (60) hours."

**ANSWER:**     Plaintiff objects to this Request on the grounds that it is unduly burdensome in that Defendant is required to keep accurate records of hours that Plaintiff worked.  *See Anderson v. Mt. Clemons Pottery Co.*, 328 U.S. 680, 686-88 (1946); 29 U.S.C. § 211(c).  Plaintiff further objects to this Request on the grounds that it seeks information already in Defendant's possession and is therefore available from a less burdensome source.  Finally, Plaintiff objects to this Request to the extent that issues regarding damages should be deferred to a later stage of discovery.  Subject to and without waiving these objections, Plaintiff states that Plaintiff has no responsive documents in Plaintiff's possession, custody or control.

27.     Please produce a true and correct copy of all documents that support your allegation in
Paragraph 49 of your Complaint that "The work of the Plaintiffs and the Collective Members
required little skill and no capital investment."

    **ANSWER:**     Plaintiff objects to this Request on the grounds that it seeks information
already in Defendant's possession and is therefore available from a less burdensome source.
Subject to and without waiving this objection, Plaintiff states that Plaintiff has no responsive
documents in Plaintiff's possession, custody or control.

28.     Please produce a true and correct copy of all documents that support your allegation in
Paragraph 50 of your Complaint that "The work required of the Plaintiffs and the Collective
Members did not include managerial responsibilities."

    **ANSWER:**     Plaintiff objects to this Request on the grounds that it is vague and
ambiguous, and calls for a legal conclusion with respect to the term "managerial responsibilities."
Plaintiff also objects to this Request on the grounds that it seeks information already in Defendant's
possession and is therefore available from a less burdensome source.  Subject to and without
waiving these objections, Plaintiff states that Plaintiff has no responsive documents in Plaintiff's
possession, custody or control.

29.     Please produce a true and correct copy of all documents that support your allegation in
Paragraph 51 of your Complaint that "The work required of the Plaintiffs and the Collective
Members did not include the exercise of meaningful independent judgment and discretion
concerning matters of significance."

    **ANSWER:**     Plaintiff objects to this Request on the grounds that it is vague and
ambiguous, and calls for a legal conclusion with respect to the term "exercise of meaningful
independent judgment and discretion concerning matters of significance."  Plaintiff also objects to
this Request on the grounds that it seeks information already in Defendant's possession and is
therefore available from a less burdensome source.  Subject to and without waiving these
objections, Plaintiff states that Plaintiff has no responsive documents in Plaintiff's possession,
custody or control.

30.     Please produce a true and correct copy of all documents that support your allegation in
Paragraph 57 of your Complaint that "The primary job duties of Plaintiffs and the Collective
Members did not materially differ from the duties of non-exempt hourly paid employees."

    **ANSWER:**     Plaintiff objects to this Request on the grounds that it is vague and

ambiguous, and calls for a legal conclusion with respect to the terms "primary job duties" and "duties of non-exempt hourly paid employees." Plaintiff also objects to this Request on the grounds that it seeks information already in Defendant's possession and is therefore available from a less burdensome source. Subject to and without waiving these objections, Plaintiff states that Plaintiff has no responsive documents in Plaintiff's possession, custody or control.

31.    Please produce a true and correct copy of all documents that support your allegation in

Paragraph 58 of your Complaint that "The primary duties of Plaintiffs and the Collective Members

were manual in nature."

    **ANSWER:**    Plaintiff objects to this Request on the grounds that it is vague and ambiguous, and calls for a legal conclusion with respect to the term "primary duties." Plaintiff also objects to this Request on the grounds that it seeks information already in Defendant's possession and is therefore available from a less burdensome source. Subject to and without waiving these objections, Plaintiff states that Plaintiff has no responsive documents in Plaintiff's possession, custody or control.

32.    Please produce a true and correct copy of all documents that support your allegation in

Paragraph 59 of your Complaint that "The Plaintiffs and the Collective Members performance of

manual labor and non-exempt duties occupied the majority of Plaintiffs and the Collective

Members' working hours."

    **ANSWER:**    Plaintiff objects to this Request on the grounds that it is vague and ambiguous, and calls for a legal conclusion with respect to the term "non-exempt duties." Plaintiff also objects to this Request on the grounds that it is unduly burdensome in that Defendant is required to keep accurate records of hours that Plaintiff and Collective Members worked. *See Anderson v. Mt. Clemons Pottery Co.*, 328 U.S. 680, 686-88 (1946); 29 U.S.C. § 211(c). Plaintiff further objects to this Request on the grounds that it seeks information already in Defendant's possession and is therefore available from a less burdensome source. Finally, Plaintiff objects to this Request to the extent that issues regarding damages should be deferred to a later stage of discovery. Subject to and without waiving these objections, Plaintiff states that Plaintiff has no responsive documents in Plaintiff's possession, custody or control.

33.    Please produce a true and correct copy of all documents that support your allegation in

Paragraph 63 of your Complaint that "Defendant did not provide sufficient resources in the labor

budgets for non-exempt employees to complete all the non-exempt tasks in each store."

    **ANSWER:**    Plaintiff objects to this Request on the grounds that it seeks information already in Defendant's possession and is therefore available from a less burdensome source. Subject to and without waiving this objection, Plaintiff states that Plaintiff has no responsive

documents in Plaintiff's possession, custody or control.

34.     Please produce a true and correct copy of all non-privileged documents supporting your claim in Paragraph 68 of your Complaint that Love's misclassified you as exempt from the FLSA's overtime requirements.

       **ANSWER:**   Plaintiff objects to this Request on the grounds that it is vague and ambiguous, and calls for a legal conclusion with respect to the terms "misclassified," "exempt," and "FLSA's overtime requirements." Plaintiff also objects to this Request on the grounds that it seeks information already in Defendant's possession and is therefore available from a less burdensome source. Subject to and without waiving these objections, Plaintiff states that Plaintiff has no responsive documents in Plaintiff's possession, custody or control.

35.     Please produce a true and correct copy of all documents that support your allegation in Paragraph 69 of your Complaint that "Defendant failed to maintain accurate and sufficient time records for Plaintiffs and the Collective Members."

       **ANSWER:**   Plaintiff objects to this Request on the grounds that it is unduly burdensome in that Defendant is required to keep accurate records of hours that Plaintiff worked. *See Anderson v. Mt. Clemons Pottery Co.*, 328 U.S. 680, 686-88 (1946); 29 U.S.C. § 211(c). Plaintiff further objects to this Request on the grounds that it seeks information already in Defendant's possession and is therefore available from a less burdensome source. Finally, Plaintiff objects to this Request to the extent that issues regarding damages should be deferred to a later stage of discovery. Subject to and without waiving these objections, Plaintiff states that Plaintiff has no responsive documents in Plaintiff's possession, custody or control.

36.     Please produce a true and correct copy of all documents that support your allegation in Paragraph 70 of your Complaint that "Defendant acted recklessly or in willful disregard of FLSA, by instituting a policy and practice that did not allow Plaintiffs and the Collective Members to record all hours worked."

       **ANSWER:**   Plaintiff objects to this Request on the grounds that it is vague and ambiguous, and calls for a legal conclusion with respect to the terms "recklessly," and "willful disregard of the FLSA." Plaintiff also objects to this Request on the grounds that it is unduly burdensome in that Defendant is required to keep accurate records of hours that Plaintiff worked. *See Anderson v. Mt. Clemons Pottery Co.*, 328 U.S. 680, 686-88 (1946); 29 U.S.C. § 211(c). Plaintiff further objects to this Request on the grounds that it seeks information already in Defendant's possession and is therefore available from a less burdensome source. Subject to and without waiving these objections, Plaintiff states that Plaintiff has no responsive documents in Plaintiff's possession, custody or control.

37.     Please produce a true and correct copy of all documents that support your allegation in

Paragraph 73 of your Complaint that "There are numerous similarly situated current and former

OMs who have not been paid proper overtime wages…."

   **ANSWER:**   Plaintiff objects to this Request on the grounds that it is vague and ambiguous, and calls for a legal conclusion with respect to the terms "similarly situated." Plaintiff further objects to this Request on the grounds that it seeks information already in Defendant's possession and is therefore available from a less burdensome source. Subject to and without waiving these objections, Plaintiff states that Plaintiff has no responsive documents in Plaintiff's possession, custody or control.

38.     Please produce a true and correct copy of all documents referred to in your responses to

Defendant's First Set of Interrogatories.

   **ANSWER:**   Plaintiff objects to this Request on the grounds that it is overbroad, not limited in time and scope. Plaintiff also objects to this Request on the grounds that it seeks information already in Defendant's possession and is therefore available from a less burdensome source. Plaintiff further objects to this Request to the extent that it calls for the production of documents that are protected from disclosure by the attorney-client privilege and/or work product doctrine. Subject to and without waiving these objections, Plaintiff states that Plaintiff has no responsive documents in Plaintiff's possession, custody or control.

Date:   November 10, 2017           _s/Marc S. Hepworth_
        New York, NY                Marc S. Hepworth*

                                    Charles Gershbaurn**
                                    David A. Roth*
                                    Rebecca S. Predovan*
                                    **HEPWORTH, GERSHBAUM & ROTH, PLLC**
                                    192 Lexington Avenue, Suite 802
                                    New York, New York 10016
                                    Telephone: (212) 545-1199
                                    Facsimile: (212) 532-3801
                                    E-mail:  mhepworth@hgrlawyers.com
                                           cgershbaum@hgrlawyers.com
                                           droth@hgrlawyers.com
                                           rpredovan@hgrlawyers.com

                                    Gregg I. Shavitz*
                                    Paolo C. Meireles*
                                    **SHAVITZ LAW GROUP, P.A.**
                                    1515 South Federal Highway, Suite 404
                                    Boca Raton, FL 33432
                                    Telephone: (561) 447-8888

Facsimile: (561) 447-8831
E-mail: gshavitz@shavitzlaw.com
      pmeireles@shavitzlaw.com

David Senoff
Clayton P. Flaherty*
**ANAPOL WEISS**
One Logan Square
130 N. 18th Street
Suite 1600
Philadelphia, PA 19103
(215) 735-1130
E-mail: dsenoff@anapolweiss.com
      cflaherty@anapolweiss.com

***Attorneys for Plaintiffs and the FLSA Collective***

*\*Pro hac vice* admitted
*\*\*Pro hac vice* application forthcoming

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on November 10, 2017 that the foregoing document was served on all counsel of record via electronic mail.

*s/ Marc S. Hepworth*
Marc S. Hepworth, Esq.

### SERVICE LIST
*Given, et al. v. Love's Travel Stops & Country Stores, Inc.*
*CASE NO.: 1:17-cv-01266*
*The United States District Court for the Middle District of Pennsylvania*

Matthew J. Hank, Esq.
Email: mhank@littler.com
Rachel Fendell Satinsky, Esq.
Email: rsatinsky@littler.com
**LITTLER MENDELSON, P.C.**
Three Parkway
1601 Cherry St., Suite 1400
Philadelphia, PA 19102
Telephone: (267) 402-3054

*Attorneys for Defendant*

*Served Via E-mail*

# EXHIBIT O

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ZACHARY GIVEN, KRISTOPHER         :
LAWSON, VINCENT MCCLEERY,         :
and SEAN MCMURRAN, Individually   :
and on Behalf of Other Persons    :
Similarly Situated,               :
                                  :
      Plaintiffs,             :
                                  :
   v.                         :
                                  :
LOVE'S TRAVEL STOPS &             :
COUNTRY STORES, INC.,             :
                                  :
      Defendant.              :
                                  :

Civil Action No. 1:17-CV-01266-CCC

The Hon. Christopher C. Conner

**DECLARATION OF Timothy Cassil IN SUPPORT OF DEFENDANT
LOVE'S TRAVEL STOPS & COUNTRY STORES, INC.'S
MEMORANDUM IN SUPPORT OF ITS OPPOSITION TO
PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION**

## DECLARATION OF <u>Timothy Cassil</u>

I, <u>Timothy Cassil</u>, declare as follows:

1.     I am currently the <u>HR Analyst</u> for Love's Travel Stops & Country Stores, Inc. ("Love's"), the named defendant in this matter. I have been <u>HR Analyst</u> from 9/2/14 to Present.  I make this declaration in support of Defendant's Opposition to Plaintiffs' Motion for Conditional Certification.  All of the information set forth herein is based on my personal knowledge and if called to testify and sworn as a witness, I could and would competently testify thereto.

2.     In my capacity as HR Analyst for Love's, I am readily familiar with the Human Capital Management, HCM, System of Love's, known as SAP Employee Central.

3.     In my capacity as HR Analyst for Love's I am responsible for reporting and accessing data within Love's HCM System, SAP Employee Central.

4.     Love's began using SAP Employee Central on or about April 1, 2015

5.     Based on my familiarity with and knowledge of SAP Employee Central, I have ascertained that 1,929 individuals worked as Operations Managers ("OMs") from March 11, 2015 to present.

6.     While it is known that there are additional individuals who worked as OMs from July 18, 2014 to Mar 10, 2015, it is difficult and burdensome to ascertain the number of OMs who worked during that particular time period because to do so would require going into an old database that we cannot readily access.

1

I declare under penalty of perjury under the laws of the United States of America, 28 U.S.C. § 1746, that the foregoing is true and correct.

Dated: November 9, 2017

Timothy Cassil

## CERTIFICATE OF SERVICE

I, Matthew J. Hank, certify that I caused the foregoing Declaration of Timothy Cassil in Support of Defendant's Opposition to Plaintiff's Motion for Conditional Certification to be filed and served via ECF upon all counsel of record.

/s/ Matthew J. Hank
Matthew J. Hank

Dated: November 13, 2017

Firmwide:151062164.1 094610.1001

3

# EXHIBIT P

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ZACHARY GIVEN, KRISTOPHER   :
LAWSON, VINCENT MCCLEERY,   :
and SEAN MCMURRAN, Individually :
and on Behalf of Other Persons   :
Similarly Situated,   :
  :
      Plaintiffs,   :
  :
    v.   :
  :
LOVE'S TRAVEL STOPS &   :
COUNTRY STORES, INC.,   :
  :
      Defendant.   :
  :

Civil Action No. 1:17-CV-01266-CCC

JURY TRIAL DEMANDED

The Hon. Christopher C. Conner

## DECLARATION OF EDWARD BOSEMAN

I, EDWARD BOSEMAN, do hereby swear, affirm and attest as follows:

1.    I am over 18 years of age and competent to testify to the matters stated in this declaration. I make this declaration based upon my personal knowledge.

2.    I am currently employed by Love's Travel Stops, Inc. (the "Company") and work at Store 612 in Bridgeton, Missouri, as an Operations Manager. I have been employed by the Company beginning in March 28, 2016, in St. Louis, Missouri, as an Operations Manager and I reported directly to General Manager Wes Anderson. As of July 28, 2016, I began working as an Operations Manager at Store 612 in Bridgeton, Missouri. I currently report to General Manager Bill Dawkins.

3.    Since becoming an Operations Manager at Love's, I always have earned at least $455.00 per week.

4.      I estimate that I spend seventy-percent (70%) of my time performing managerial tasks.   If I was not performing these managerial tasks my store would not be able to run.

5.      As Operations Manager I am the manager running the store, the tire shop and the restaurants.  In addition, I oversee the storage facility.  The storage facility is unique to our location in Bridgeton, Missouri as there are only four (4) Love's locations in the country that have storage facilities.

6.      With respect to the storage facility, as Operations Manager I am responsible for any gate and code issues or payment issues when the storage facility manager is not available.

7.      At the beginning of every shift I hold a Tailgate Meeting with the employees in the tire shop. I touch base with the General Manager to discuss priorities for the shift, and I meet with employees.

8.      Upon completing shift change, I check in with the restaurant and make sure it is ready for the upcoming dinner rush.

9.      Part of my duties is performing restaurant "pathing" which consists of ensuring food safety standards are met and the restaurant is prepared for the dinner rush.

10.     As Operations Manager I am the only person besides the General Manager who is able to process refunds, void transactions, and authorize price overrides.

11.     Ninety-percent (90%) of the time I am the highest level manager on duty.

12.     Operations Managers perform inventory management and submit orders and shift leaders do not perform these duties.

13.     The Operations Manager task list is dedicated to following up with employees and delegating tasks to employees.

14.     As Operations Manager I am responsible for end of day cash reconciliation procedures and deposits.  I estimate that I spend at least an hour on cash reconciliation procedures and end of day procedures each shift.

15.     I spend time monitoring loss prevention of the store so I can't be stuck in any one location for a long period of time.

16.     Operations Managers multitask more than anyone and it gets done by delegating tasks.

17.     Forty-percent (40%) of my time as Operations Manager is spent delegating tasks to other employees.

18.     Sixty-percent (60%) of time is following up with employees to make sure they are completing their task lists.

19.     You have to hold your people accountable for their tasks and that is the only way things get done.

20.     As Operations Manager I am responsible for certain safety procedures and processes such as performing pre-trip inspections for the tire shop when they are called out on a road call, environmental compliance in the event of a gas spill, and food safety compliance and food temperature checks.

21.     I participate in weekly management meetings and the meetings last about an hour.  During the meeting we discuss employee performance issues, financial reports, the profit and loss reports and the 13-weeker report, and weekly sales numbers.

22.     I have participated in three (3) business review meetings as Operations Manager.

23.     I have access to WAVE which is the software to access financial reports, and I access WAVE daily to review corporate news and to access any financial reports.

24.     On a weekly basis I also use WAVE to access the DayPart Report which shows the busiest parts of the day for various aspects of the store, and shows how the business is trending.

25.     I access a software called Manthem to get inventory counts as part of my inventory management duties approximately three times per week. Most recently I discovered an invoicing mistake by performing my managerial duties of inventory counts.

26.     I estimate I spend approximately three to four hours per week on inventory management duties.

27.     Every week I am scheduled for a development day with my General Manager and with other areas of the business such as the tire shop and restaurant.   The development day is a full day.  Part of the day is spent reviewing the store's financial reports and performance with the General Manager.   The intent of the development day is to build managerial skills and knowledge so that Operations Managers can move into a General Manager role.

28.     I have access to Love's talent acquisition system called TalentStop.

29.     I have interviewed job applicants on my own and have made recommendations to the General Manager based on my interviews of job applicants.

30.     I verbally coach employees on a daily basis.  I have issued written corrective action to an employee for attendance issues.  We discuss employee performance issues

in the weekly management meeting so that we can identify any issues arising among the store, tire shop and restaurant.

31.     I have the authority to suspend an employee on my shift and send them home with instruction to meet with the General Manager.

32.     I am involved in the performance evaluation process for employees.  I give input to the General Manager for the employees working on my shift.  I have participated in meetings with employees with respect to giving them their performance evaluation feedback.

33.     The Operations Manager is expected to execute monthly promotions which involves changing out signage and tags.  I delegate changing out flyers, signage, and tags to an hourly employee.  This is a part of my marketing duties as Operations Manager.  This task has to be completed by the last day of the month.

34.     Since I have been employed by the Company, I have never made any complaints, statements, or reports to my supervisor, management, or HR about not being paid for overtime.

35.     I have never heard anyone complain, report or otherwise communicate (verbally, electronically, or in writing) to other employees, supervisors, management, or HR about not being paid for all hours worked.

This declaration is given voluntarily.  I have not been promised any benefit, coerced, or threatened in any manner in exchange for or in relation to this declaration or the information stated in this declaration.

I declare under penalty of perjury under the laws of the State of Missouri and the

United States that the foregoing is true and correct.

Dated this 25th day of October, 2017 in Bridgeton, Missouri.

**EDWARD BOSEMAN**

# EXHIBIT Q

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ZACHARY GIVEN, KRISTOPHER   :
LAWSON, VINCENT MCCLEERY,   :
and SEAN MCMURRAN, Individually :
and on Behalf of Other Persons    :
Similarly Situated,               :
                               :
        Plaintiffs,         :
                               :
    v.                     :
                               :
LOVE'S TRAVEL STOPS &      :
COUNTRY STORES, INC.,      :
                               :
        Defendant.       :
                               :

Civil Action No. 1:17-CV-01266-CCC

JURY TRIAL DEMANDED

The Hon. Christopher C. Conner

### DECLARATION OF MALCOLM JOHNSON

I, **MALCOLM JOHNSON**, do hereby swear, affirm and attest as follows:

1.     I am over 18 years of age and competent to testify to the matters stated in this declaration. I make this declaration based upon my personal knowledge.

2.     I am currently employed by Love's Travel Stops, Inc. (the "Company") and work at Store 461 in St. Louis, Missouri as an Operations Manager. I started working for the Company on May 9, 2016, and I was hired as Operations Manager. I trained at Store 488 in Bloomsdale, Missouri for one (1) month with the General Manager there before moving to Store 461 in St. Louis, Missouri as the Operations Manager. I initially reported to former General Manager Clarence Williams, and I currently report to General Manager Wes Anderson.

3.     Since becoming an Operations Manager at Love's, I always have earned at least $455.00 per week.

4.      My current schedule is 3:00 p.m. to 12:00 a.m. on Thursday through Sunday.  On Mondays I have a development day where I work with the General Manager.

5.      My job responsibilities include, among other things, holding Tailgate Meetings with the tire shop managers and determining which techs are on duty, performing a store walk, checking in with store employees, checking in with the restaurant manager to determine if any special tasks need to be completed that shift, making sure the restaurant employees are in uniform, sitting down with the General Manager to discuss items that need to be completed on the shift, performing order reviews, and inventory audit counts.

6.      I wear a radio and any employee in the store and tire shop can contact me at any time and I can contact them.  I frequently check in with employees to make sure they are completing their tasks on their task lists.  I wear the radio my entire shift as a way to supervise employees.

7.      I check on the employee's task lists at least three (3) times per shift to make sure they are completing the tasks on the list.

8.      Employee task lists specifically list items such as cleaning the coffee bar, stocking cigarettes, and completing the zone cleaning program, for example, whereas the Operations Manager task list is designed for the Operations Manager to check in on employees to make sure they are completing their assigned tasks.  I am generally not performing tasks that are assigned to employees such as cleaning and stocking.

9.      I estimate I spend about thirty to forty hours per week as the highest level manager on duty in my location.

10.     I perform restaurant "pathing" to ensure food safety such as food temperature checks and sanitation.   Only the Operations Manager or General Manager can perform restaurant "pathing" duties.

11.     I am responsible for ensuring environmental compliance with a gas spill.  I assign a tire tech to help with clean up.  If more than 25 gallons is spilled I would contact the proper person with the EPA, and file an incident report with Love's risk management department.

12.     Every time there is a road call in the tire shop I have to complete a pre-trip inspection to ensure the vehicle is safe to attend to the road call.

13.     I received training on environmental compliance and pre-trip inspections.

14.     I review job applications in TalentStop on a regular basis and conduct phone interviews with potential job candidates.  I spend approximately two to three hours per week reviewing applications and conducting phone interviews.  If the candidate is strong on the phone interview I set up an in-person interview and conduct the in-person interview with the candidate.  If the candidate is strong I recommend them for a final interview with my General Manager and I have also participated in the final interview.  I have interviewed approximately twenty people in my role as an Operations Manager.

15.     I have coached employees verbally regarding the need for employees to greet customers when they come into the store.

16.     I draft written corrective action and deliver the corrective action to the employee and discuss it with the employee.  I issued written corrective action to my tire tech for refusing to take a road call and insubordination.  I do not need permission or authorization from the General Manager to issue corrective action.

17.     Operations Managers can interview and discipline employees whereas Shift Leads cannot perform these managerial duties.

18.     While I have not yet been presented with the situation, I have the ability to terminate employees on my shift for a clearly terminable offense such as theft or coming to work intoxicated or on drugs.  If the offense is a policy violation such as attendance I would discuss it with my General Manager before terminating the employee.

19.     I participate in a conference call every Monday with the District Manager. This call lasts approximately forty-five minutes to one hour, and sometimes longer.  The District Manager discusses store performance in the district regarding sales, margins, and mystery shops, as a few examples.

20.     On Wednesdays, I participate in the weekly management meeting to discuss the store performance, any issues that come up in the tire shop, the store, and the restaurant, and we discuss any areas for improvement and any issues.  This meeting lasts anywhere from forty-five minutes to one hour.

21.     I participate in a development day with my General Manager on Mondays. The purpose of the development day is to get me into a General Manager type of mindset and reviewing reports such as profit and loss reports.  I also spend time in the tire shop and the restaurant to learn those aspects of the business so that I can support those areas as Operations Manager.  The development day lasts my entire shift.

22.     I have the ability and discretion to adjust and reprioritize items on my task list as the business needs dictate and do what needs to be done to move the business forward.

23.     At the end of a shift the Operations Manager is responsible for ensuring all money is accounted for and entered into the back office system.  As Operations Manager I am responsible for investigating any cash discrepancy and resolving it.

24.     I have participated in at least five (5) business review meetings as Operations Manager.  I prepare by making sure that the store is clean and presentable and I delegate these cleaning tasks to other employees on my shift.  I also ensure that the store planogram is maintained.  If a business review meeting is coming up I spend approximately thirty to forty hours the week prior preparing for the business review meeting.  We will have our next business review meeting on November 14, 2017.  In preparation for the upcoming business review meeting in November 2017, the General Manager asked the Operations Managers and restaurant managers and tire shop managers to identify areas to focus on in preparation for the business review.

25.     I spend approximately seventy-percent (70%) of my time performing managerial tasks.

26.     As Operations Manager I am eligible for a quarterly bonus based on my store's performance.   As Operations Manager I contribute to my store's performance by overseeing loss prevention, cash controls, and ordering, among other managerial duties.  Shift Leaders are not eligible for a quarterly bonus.

27.     Since I have been employed by the Company, I have never made any complaints, statements, or reports to my supervisor, management, or HR about not being paid for overtime.

28.     I have never heard anyone complain, report or otherwise communicate (verbally, electronically, or in writing) to other employees, supervisors, management, or HR about not being paid for all hours worked.

This declaration is given voluntarily. I have not been promised any benefit, coerced, or threatened in any manner in exchange for or in relation to this declaration or the information stated in this declaration.

I declare under penalty of perjury under the laws of the State of Missouri and the United States that the foregoing is true and correct.

Dated this 26th day of October, 2017 in St. Louis, Missouri.

**MALCOM JOHNSON**

# EXHIBIT R

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| ZACHARY GIVEN, KRISTOPHER LAWSON, VINCENT MCCLEERY, and SEAN MCMURRAN, Individually and on Behalf of Other Persons Similarly Situated, | : : : : : : | Civil Action No. 1:17-CV-01266-CCC |
| Plaintiffs, | : : | JURY TRIAL DEMANDED The Hon. Christopher C. Conner |
| v. | : : | |
| LOVE'S TRAVEL STOPS & COUNTRY STORES, INC., | : : : | |
| Defendant. | : : : | |

## DECLARATION OF WILLIAM J. "BILL" DAWKINS

I, WILLIAM J. "BILL" DAWKINS, do hereby swear, affirm and attest as follows:

1.       I am over 18 years of age and competent to testify to the matters stated in this declaration.  I make this declaration based upon my personal knowledge.

2.       I am currently employed by Love's Travel Stops, Inc. (the "Company") and work at Store 612 as General Manager, and have been in my role as General Manager since June 2017.  In November 2015, I began training as Operations Manager at the St. Louis, Missouri location, Store 461.  I have been employed by the Company in New Baden, Illinois from December 2015 to May 2017, as an Operations Manager, preceding my promotion to General Manager.

3.      During my time as Operations Manager I reported to three General Managers: Darrin Anderson, Jeff Turnbough, Bryan Taulbee.  In my role as General Manager, I currently report to District Manager Charley Fisher.

4.      Since becoming an Operations Manager and subsequently a General Manager at Love's, I always have earned at least $455.00 per week.

5.      My job responsibilities as an Operations Manager included, among other things, ensuring that processes were implemented and employees were executing their tasks, and following up on employee task lists.

6.      As an Operations Manager I delegated items listed on my task list to other employees such as, the store walk to check for facing of aisles and merchandise, courtesy checks, checking on task list completion, controllable counts, close out in MaddenCo the computer system for the tire shop, and order reviews.

7.      Frequently I delegated the following tasks to shift leads as training opportunities for the shift leads and also because I was busy performing other managerial tasks: ordering, weekly and daily counts, shift break procedures and end of day procedures, and the 8 hour rule.

8.      As Operations Manager I was managing the processes and spent a majority of my time making sure that tasks were being performed through my employees.

9.      As Operations Manager I typically worked evenings and weekends.

10.     As Operations Manager I spent approximately 60% of my time as the highest level manager on duty.

11.     As Operations Manager I spent approximately 60% of my time performing managerial tasks.

12.     As Operations Manager I was responsible for ensuring safety procedures were followed in the event someone was injured in the store and filing the proper incident reporting procedures with Love's risk management.  I performed these duties on at least two occasions.  There are also times where I have had to walk out a problematic customer to ensure employees and guests remained safe.

13.     In the event of a diesel spill, as Operations Manager I would reach out to a tire tech to begin the clean-up process, but I was overseeing the process to ensure the proper procedures were followed.  Based on our training as Operations Managers, hazardous materials compliance is the Operations Manager's responsibility.  This occurred on at least three occasions during my time as Operations Manager.

14.     As Operations Manager I held meetings with my shift employees every night.  I would walk with them inside and outside the building as well as the restaurant.  I estimate the meetings with shift employees took approximately forty-five minutes to complete on average.

15.     As Operations Manager I held Tailgate Meetings with the tire shop at the beginning of each shift, and I estimate these meetings lasted approximately fifteen minutes. During these meetings we would discuss personnel issues, road calls, tire pass issues, and business trends.  I would also walk the shop to make sure safety conditions were being followed as well as checking inventory and cleanliness with the Tire Care Manager or the lead if the Tire Care Manager was not present.

16.     As Operations Manager I was able to reprioritize items on my task list as I saw fit depending on the business needs of that particular shift. I was able to make that decision as the manager without any permission from my General Manager.

17.     As Operations Manager I was solely responsible for any cash controls and end of day closing procedures and shift changes.

18.     As Operations Manager I would investigate any discrepancies with respect to cash amounts and if the discrepancy could not be resolved I would alert the General Manager.

19.     As Operations Manager I was the only employee authorized to perform price adjustments, and had the discretion to authorize price markdowns on product in the event the General Manager was not present or could not address it at the time.

20.     As Operations Manager I was responsible for performing the counts for auditing inventory, however if I was busy I was able to delegate this task to an hourly shift lead. As Operations Manager I would also perform order review and submit orders.  Additionally, I used the ordering process as a training opportunity for shift leads who would eventually become Operations Managers.

21.     As Operations Manager I had access to the applicant tracking system called TalentStop and I would review applications and could move an applicant through the system and onboard employees.

22.     As Operations Manager I was interviewing applicants on a weekly basis, and I estimate I spent approximately two hours per week interviewing applicants both in-person and over the phone.  I would give the General Manager my feedback on the candidate. During my time as Operations Manager approximately seven employees I recommended were ultimately hired.

23.     As Operations Manager I verbally coached employees and conducted training sessions with employees.

24.     As Operations Manager I assisted in writing performance evaluations and gave my General Manager feedback about the employee. I also sat in on performance evaluation discussions with the employee.

25.     As Operations Manager I had the discretion and authority to suspend employees who committed policy violations with instruction for the employee to follow up with the General Manager.

26.     As an Operations Manager I participated in weekly management meetings and I was responsible for discussing items such as issues related to policy and procedure follow through, employee performance, store standards, and operational issues. I would review financial reports such as the 13-weeker report and profit and loss reports in advance of the meeting and we would discuss financial performance during the meeting.

27.     As an Operations Manager I participated in four business review meetings. During the business review meeting I was responsible for discussing employee training and performance in various aspects of the business. We would discuss how to build business at our location.

28.     As an Operations Manager I spent approximately seven to eight hours per week attending or holding meetings.

29.     As an Operations Manager I had the ability to adjust schedules to ensure that employees were not working excessive overtime. I had the discretion to send an employee home early to avoid incurring overtime or ask the employee to take an extended lunch to avoid incurring overtime.

30.     As Operations Manager I was responsible for assigning and following up with employees to make sure they completed their assigned cleaning of specific store areas, known as "zone cleaning."

31.     Since I have been employed by the Company, I have never made any complaints, statements, or reports to my supervisor, management, or HR about not being paid for overtime.

32.     I have never heard anyone complain, report or otherwise communicate (verbally, electronically, or in writing) to other employees, supervisors, management, or HR about not being paid for all hours worked.

This declaration is given voluntarily.   I have not been promised any benefit, coerced, or threatened in any manner in exchange for or in relation to this declaration or the information stated in this declaration.

I declare under penalty of perjury under the laws of the State of Missouri and the United States that the foregoing is true and correct.

Dated this 25th day of October, 2017 in Bridgeton, Missouri.

_____

**WILLIAM J. "BILL" DAWKINS**

# EXHIBIT S

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ZACHARY GIVEN, KRISTOPHER : 
LAWSON, VINCENT MCCLEERY, :
and SEAN MCMURRAN, Individually :
and on Behalf of Other Persons :
Similarly Situated, :
                                 :
           Plaintiffs, :
                                 :
    v. :
                                 :
LOVE'S TRAVEL STOPS & :
COUNTRY STORES, INC., :
                                 :
        Defendant. :
                                 :

Civil Action No. 1:17-CV-01266-CCC

JURY TRIAL DEMANDED

The Hon. Christopher C. Conner

### DECLARATION OF VERNON W. "WES" ANDERSON, JR.

I, **VERNON W. "WES" ANDERSON, JR.,** do hereby swear, affirm and attest as follows:

1.      I am over 18 years of age and competent to testify to the matters stated in this declaration. I make this declaration based upon my personal knowledge.

2.      I am currently employed by Love's Travel Stops, Inc. (the "Company") and work at Store 461 as the General Manager. I started with the Company in January 2012, at Store 411 in Clive, Iowa, as a General Manager in Training ("GMT"). As GMT I reported to General Manager Kelly Long. I then became the General Manager at Store 411 in Clive, Iowa. As General Manager in Clive, Iowa, I reported to District Manager John Joseph. As General Manager, in October 2013, I relocated to St. Louis, Missouri to open up a new location which is Store 461 in St. Louis, Missouri. In April 2016 I left Store 461 to open a new location in Bridgeton, Missouri, which is Store 612. I returned to Store 461 in St. Louis, Missouri as a

General Manager in May 2017, and this is where I currently work. I currently report to District Manager Charley Fisher.

3.     Since becoming a General Manager at Love's, I always have earned at least $455.00 per week.

4.     My job responsibilities include, among other things, overseeing the day to day operations of the entire operation which includes the tire shop, restaurant concepts, and a store. I also oversee three salaried Operations Managers, a salaried tire shop manager, and a salaried restaurant manager. I also oversee six tire techs and three mechanics in the tire shop, and in the restaurant approximately 11 to 13 hourly team members.

5.     On any given shift the Operations Managers at my store are managing approximately nine (9) employees. The number of employees an Operations Manager manages and supervises could increase depending on the restaurant concept(s) in place at a location.

6.     When I hire an Operations Manager I look for an individual with managerial experience as well as their work history and tenure at prior employers. I also look for any industry experience.

7.     When I am interviewing a potential Operations Manager I tell them that their responsibility is to manage the operations when the General Manager leaves for the day. In my eyes the Operations Manager has to do a lot more with less because they are running the entire operation. To elaborate, when the General Manager is working, the tire shop manager and the restaurant manager are also there. For example, the tire shop manager can perform pre-trip inspections for road calls. When the Operations Manager is working, the tire shop manager and restaurant manager are typically gone for the day, therefore the Operations Manager has to manage the entire operation including the tire shop, the restaurant and the store. For example,

the Operations Manager is solely responsible for conducting pre-trip inspections for road calls. The particular duty of a pre-trip inspection is also a huge safety component as well as a customer service component to make sure the customer receives the efficient service they need, such as a tire change.

8.     "Operations Managers are managing a ton."  Operations Managers are expected to and do manage 100% of the time they are working.

9.     Operations Managers hold Tailgate Meetings with the tire shop at the beginning of their shift so they know what to expect on their upcoming shift.  The Operations Manager is expected to know what is going on in the tire shop so the Operations Managers can effectively manage it when the tire shop manager leaves for the day.

10.     At the beginning of the shift the Operations Manager performs a store walk with the General Manager to review controllable counts for inventory management, discuss whether a team member needs to be assigned to work the back room overstock, discuss delegating a team member to stock the cooler, and visit the restaurant and check with restaurant manager to see what needs to be done on the upcoming shift.

11.     Operations Managers are responsible for restaurant "pathing" which is a duty designed to ensure the restaurant is food safety compliant, employees are in uniform, the restaurant is generally prepared for the dinner rush, and employees are following and executing their task lists.

12.     The role of the Operations Manager is to follow up with employees and manage them.

13.     Operations Managers are expected to train and develop Shift Leaders so that the Operations Managers can delegate tasks to the Shift Leaders.

14.     There are items on the Operations Manager task list that can be delegated to other employees to perform.   Examples include delegating bread counts in the Subway restaurant to employees and delegating testing of RFID readers (a scanner for diesel pumps) to the tire techs, delegating closing of MaddenCo (the estimate and work order system) in the tire shop to the Shift Leader or the tire tech, delegation of counting cigarettes and/or electronics, and delegating cleaning duties.   Delegation by the Operations Managers also presents an opportunity for the Operations Managers to train and develop employees so the Operations Manager can do less with more and build his or her bench strength within the team.

15.     All of my Operations Managers have ability to access TalentStop, via a proxy, to access applications and they also interview applicants.   The Operations Managers are not only encouraged and expected to interview applicants, they also have a significant say in the hiring process because the Operations Managers are the people who are ultimately working with the potential new hire the most.   The Operations Managers have all the same power to interview and recommend applicants as a General Manager would.     Just last night my Operations Manager, Malcom Johnson, pulled three applications from TalentStop and had them sitting on my desk for my review.   Also, Malcom Johnson, recently pulled an application, scheduled the interview, conducted the interview with the other Operations Manager, recommended the candidate for hire and ultimately called and offered the candidate the job.

16.     The Operations Managers have been involved with every hire we have made.

17.     I want to develop Operations Managers so they are set up for success and can eventually promote into a General Manager, if they so desire.

18.     I have had the opportunity to train Operations Managers and have had four (4) Operations Managers go to the next level and promote into the General Manager.

19.     Operations Managers verbally discipline employees and they also access TalentStop to write corrective action and deliver it to an employee.   Both of my Operations Managers have issued verbal and written discipline to team members.   Both of my Operations Managers are involved in the decision-making process to terminate an employee and we discuss it as a group.  Operations Managers also sit in during the termination of an employee. Operations Managers have the authority to send an employee home as disciplinary action if the General Manager is not present.

20.     Operations Managers are involved in the weekly management meetings. Operations Managers discuss employee performance and evaluations during this meeting.  The Operations Managers are in the best position to manage employees and know employees' performance because they spend the most time working with the employees.  We discuss the 13-weeker report and store financial performance.

21.     Operations Managers are eligible for quarterly bonuses and those bonuses are based on store performance which includes sales, margins, labor costs and overtime, and restaurant margins. The Operations Managers directly impact these critical areas that comprise store performance.   For example, Operations Managers are responsible for the order review process.  If the Operations Manager orders too much of an item then the margins in the drink bar and roller grill will be off and that will negatively impact store performance and the Operations Manager's quarterly bonus.  Similarly, Operations Managers are responsible for controlling labor costs by managing their shift and getting team members to clock out at the correct time to control overtime costs.  Labor costs directly impact margins and store performance and therefore impact

the Operations Manager's quarterly bonus. Operations Managers are responsible for the order review process which impacts sales. If the Operations Manager does not order enough of a popular product and the product is out of stock, this negatively impacts sales and subsequently the Operations Manager's quarterly bonus.

22.     Operations Managers participate in a bi-weekly conference call with the Divisional Marketing Manager along with all Operations Managers in the division. This call lasts approximately one hour.

23.     The Operations Managers are absolutely part of the business review process and participate in the business review meeting.

24.     The Operations Managers have a dedicated development day which is designed to help develop the Operations Managers into General Managers. During development day I teach my Operations Managers payroll and how to approve payroll and submit payroll, for example. My Operations Managers work on the store's weekly recap which is due every Friday to the corporate office and details the location's weekly performance. In some instances the Operations Managers has a better grasp on the store performance for the weekly recap because they are actually doing the order reviews and dealing with store performance on a daily basis. Operations Managers also spend time in the tire shop inputting work order into the MaddenCo system and performing tire passes. They also spend time in the restaurant performing tasks such as bread counts. The reason Operations Managers spend time in the tire shop and the restaurant on development days is so that the Operations Managers are proficient in these duties and can effectively train and manage other employees how to do these tasks and answer employee questions.

25.     From my experience as General Manager at several Love's locations, the Operations Manager role is consistent in terms of the expectations that the Operations Manager is to manage the operation.  If there are any differences in the Operations Manager role, they are not differences that will take the Operations Manager out of his or her managerial role.

26.     The St. Louis, Missouri location is unique in the sense that it is in a more challenging major metropolitan area as opposed to in a more rural area where a majority of Love's store are located.  The Operations Managers in my location work primarily evenings and weekends when more potential significant and dangerous criminal activity can occur in this area. For this reason, my store has 24 hour security which the Operations Managers are responsible for also managing.  The Operations Managers are in constant communication via radio with the security team. For this location in particular there is much more for the Operations Managers to consider with respect to store safety and security than most Love's locations.  Despite these challenges, I am very proud of the results my Operations Managers delivered on their quarterly merchandising inspection, the financial results in the second quarter with respect to making budget, while still excelling in their managerial role as Operations Manager.

27.     Since I have been employed by the Company, I have never made any complaints, statements, or reports to my supervisor, management, or HR about not being paid for overtime.

This declaration is given voluntarily.  I have not been promised any benefit, coerced, or threatened in any manner in exchange for or in relation to this declaration or the information stated in this declaration.

I declare under penalty of perjury under the laws of the State of Missouri and the United States that the foregoing is true and correct.

Dated this 26th day of October, 2017 in St. Louis, Missouri.

_____
VERNON W. "WES" ANDERSON, JR.

# EXHIBIT T

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| ZACHARY GIVEN, KRISTOPHER LAWSON, VINCENT MCCLEERY, and SEAN MCMURRAN, Individually and on Behalf of Other Persons Similarly Situated,, | : : : : : : | Civil Action No. 1:17-CV-01266-CCC |
| Plaintiff, | : : | **JURY TRIAL DEMANDED** |
| v. | : : | The Hon. Christopher C. Conner |
| LOVE'S TRAVEL STOPS & COUNTRY STORES, INC., | : : : | |
| Defendant. | : : | |

### DECLARATION OF BRANDY BAUR

I, Brandy Baur, do hereby swear, affirm and attest as follows:

1.      I am over 18 years of age and competent to testify to the matters stated in this declaration.  I make this declaration based upon my personal knowledge.

2.      I am currently employed by Love's Travel Stops, Inc. (the "Company") and work at Store 262 in Tucumcari, New Mexico as an Operations Manager.  I have been employed by the Company in Amarillo, Texas and Tucumcari, New Mexico, since May 2017.  I currently report to General Manager, Ramin Zamani.  Prior to working in Tucumcari, New Mexico, I completed training and was trained by General Manager, Travis Brawner in Amarillo, Texas.

3.      Since becoming an Operations Manager at Love's, I always have earned at least $455.00 per week.

4.      My job responsibilities include, among other things, performing store walks, reconciling cash and making deposits, ensuring store safety and security, managing loss prevention, managing and delegating tasks to Love's employees, interviewing, coaching, training and disciplining employees, participating in management meetings and business review meetings, managing inventory and reviewing and interpreting the store's financial performance.

5.      Since I have been employed by the Company, I have never made any complaints, statements, or reports to my supervisor, management, or HR about not being paid for overtime.

6.      I have never heard anyone complain, report or otherwise communicate (verbally, electronically, or in writing) to other employees, supervisors, management, or HR about not being paid for all hours worked.

7.      I typically spend approximately ~~24~~ 30 to ~~20~~ 40 hours per week as the highest level manager on duty.

8.      Eighty-percent (80%) of my time is spent making sure employees are accomplishing what they need to.  My job is managing.  I have to manage the employees and the expectations I hold for them.

9.      I believe it is important as a manager to know your employee's jobs so that you can effectively manage them, however that does not mean I spend the majority of my time checking the roller grill or fountain area; those are tasks for hourly employees.  I spend the majority of my time performing managerial tasks.

10.      At the beginning of a shift, I hold a meeting with the tire shop employees, also known as a "Tailgate Meeting," to review expectations and outline items that need to be

completed during that shift. I estimate I spend approximately ~~thirty~~ *fifteen to thirty* to ~~forty-five~~ minutes per shift holding the Tailgate Meeting.

11.    At the beginning of a shift I also meet with each store employee individually to discuss my expectations for the shift, goals for the day, and any specials or promotions that are currently running so that they can communicate those specials to guests. Meeting with store employees takes approximately twenty (20) minutes at the beginning of each shift.

12.    I am unable to delegate certain tasks on the Operations Manager task lists because of the managerial nature of the task itself. For example, inventory counts and order reviews need to be performed by a manager to ensure accuracy; this is not something that an hourly employee could or would perform.

13.    With respect to revising task lists, I do have input and the ability to recommend and implement tasks that are specific to my store that are above and beyond what is on the Task List. Examples of such additions include assigning employees to clean and maintain the sink area in our store and maintaining the "Mobile-to-Go" area which includes electronic devices. A manager has to unlock certain cabinets in the Mobile-to-Go area so the employees can stock and maintain the Mobile-to-Go area because only the Operations Managers or General Manager has keys to access certain displays.

14.    Hourly employees are responsible for performing zone cleaning, which involves assigning employees to clean certain areas of the store. The Operations Manager is responsible for assigning employees to areas to clean. For example, I assign employees on my shift to clean certain areas of the store and then I check to make sure they completed it; I do not perform any zone cleaning tasks as Operations Manager.

15.     I typically only work on a cash register to perform managerial functions such as issuing a refund to a customer or load a customer's loyalty rewards points, also known as "Love's Rewards." Managers are the only people who can handle refunds and load Love's Rewards. I am never on the cash register for an extended period of time. If, for example, a large bus pulls into the parking lot, I make sure the cash registers are staffed and I walk the store to monitor loss prevention.

16.     Employees must get permission from the Operations Manager or General Manager to process a price override.

17.     I am responsible for ensuring all money is accounted for and either placed in the safe or deposited in the bank at the end of the day. Employees bring me their receipts from the cash recycler and I confirm it is accurate and enter it into the back office computer. Only Operations Managers and General Managers can perform this task. I estimate I spend approximately one (1) hour per shift performing cash reconciliation duties and depositing money in the bank.

18.     I spend approximately 65% of my time performing inventory management tasks such as order reviews and counts when we receive a shipment in on a truck or in preparation for an order. When we receive shipments in that need to be stocked I ensure that they are being stocked in a well-organized fashion to maintain the integrity of the store's planogram.

19.     I spend approximately five-percent (5%) of my time each week preparing for and participating in weekly management meetings. I prepare for meetings by logging into WAVE and accessing the driver panel reports which detail what guests have said about Love's.

I discuss the driver panel reports in the management meetings, and discuss ideas for any areas that need improvement.

20.     During weekly management meetings I discuss employee training and the status of employee training, including computer based training or "CBT".

21.     As Operations Manager, I oversee all three areas of the Love's location, including the tire shop, the restaurants, and the store. The weekly management meetings are an opportunity for me to discuss any employee-related issues with the restaurant and tire shop managers.

22.     In approximately July 2017, I participated in the business review meeting, which involves a visit from Love's corporate employees. In the two weeks leading up to the meeting, ninety-percent (90%) of my time was spent preparing for the business review meeting, which included reviewing the 13-weeker report and profit and loss ("P & L") reports. My role in the meeting was to discuss store performance and specifically in the area of roller grill and fountain area sales, margins on those particular areas, and suggestions for how to improve sales on those areas.

23.     I estimate that I spend about 15 to 20% of my time during the week reviewing financial reports such as the 13-weeker report and profit and loss ("P & L") reports, because every day you have to be ready for a business review. I utilize the management system to access the 13-weeker and the P & L reports.

24.     In my role as an Operations Manager, I have conducted interviews with job applicants and I provide my recommendation to the General Manager as to whether I think the candidate should be brought in for a second interview. Of the five (5) candidates that I have

recommended for a second interview, all five (5) have been hired.  My General Manager asks me if the individual is someone I would want to hire or not.

25.    While I have not had to give an employee written corrective action, I do have access to the system to generate a written corrective action.  I have had verbal discussions with employees regarding their ability to stay on task, completing assigned tasks, and their use of personal cell phones while on the job.

26.    I write and deliver performance evaluations to employees, especially to those employees who work on my shift, and I am directly involved in the discussion of the performance evaluation with the employee.

27.    On my shifts I typically have approximately three (3) employees in the tire shop, four (4) to five (5) employees in the store, and six (6) to eight (8) employees in the restaurants.

28.    While there are shift leaders at my store, they are not in charge during the busiest times like an Operations Manager or a General Manager.  Additionally, shift leaders are not able to perform "end of day" cash reconciliation and deposit procedures like an Operations Manager or General Manager.

This declaration is given voluntarily.  I have not been promised any benefit, coerced, or threatened in any manner in exchange for or in relation to this declaration or the information stated in this declaration.

I declare under penalty of perjury under the laws of the State of New Mexico and the United States that the foregoing is true and correct.

Dated this 23rd day of October, 2017 in Tucumcari, New Mexico.

BRANDY BAUR

# EXHIBIT U

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ZACHARY GIVEN, KRISTOPHER   :
LAWSON, VINCENT MCCLEERY,   :
and SEAN MCMURRAN, Individually :
and on Behalf of Other Persons   :
Similarly Situated,   :
                         :
         Plaintiffs,   :
                         :
       v.   :
                         :
LOVE'S TRAVEL STOPS &   :
COUNTRY STORES, INC.,   :
                         :
         Defendant.   :
                         :

Civil Action No. 1:17-CV-01266-CCC

**JURY TRIAL DEMANDED**

The Hon. Christopher C. Conner

### DECLARATION OF KENT WESTBROOK

I, **KENT WESTBROOK**, do hereby swear, affirm and attest as follows:

1.       I am over 18 years of age and competent to testify to the matters stated in this declaration. I make this declaration based upon my personal knowledge.

2.       I am currently employed by Love's Travel Stops, Inc. (the "Company") and work at Store 262 in Tucumcari, New Mexico as an Operations Manager. I began working for the Company in May 2012 as a Subway Cashier in Store 229, in Conway, Texas, and I reported to General Manager Steve Nichols. I then became a Shift Leader at Store 229 in approximately October 2012. I transferred to Store 261 in Amarillo, Texas in May 2013, where I worked as a Shift Lead. In November 2013, I was promoted to Operations Manager in Amarillo, Texas. While working in Amarillo, Texas, I reported initially to General Managers Julie Mays and then to Eddie Fristoe. In approximately June 2014, I transferred to Store 558, in Dodge City, Kansas, as an Operations Manager. At store 558 I reported to General Manager Ramin Zamani.

Ramin and I opened up the Dodge City, Kansas store. In approximately December 2014 I transferred back to Store 261, in Amarillo, Texas, as an Operations Manager and reported to General Manager Eddie Fristoe. I then transferred to Store 589, in Lubbock, Texas, in approximately July 2015, and I reported to General Manager Chris Crowley. In November 2015 I transferred to Store 200, in Amarillo, Texas, and I reported to General Managers Robert Talmidge and Travis Brawner. Travis is the current General Manager in Amarillo, Texas. While I was in Amarillo, I assisted with store openings of Stores 638 in Texoma, Oklahoma, and 626 in Dumas, Texas. In September 2016, I transferred to Store 262 in Tucumcari, New Mexico. While I have been back in Tucumcari, New Mexico, I assisted with a store opening in Hereford, Texas. I currently report to General Manager Ramin Zamani.

3.     Since becoming an Operations Manager at Love's, I always have earned at least $455.00 per week.

4.     My job responsibilities include, among other things, ensuring the store runs smoothly, leading employees, delegating and following up with employees.

5.     As an Operations Manager I supervise and manage three (3) to four (4) store employees. If the tire shop manager is not on duty, I am managing the tire shop. On a given shift when the tire shop manager is not present I supervise and manage two (2) to three (3) employees in the tire shop. If the tire shop manager is present I am in communication with the tire shop manager and ensuring operations are running smoothly.

6.     I typically work Friday which is my development day where I work with the General Manager and learn the General Manager role. I also work on Saturdays and Sundays and I am the highest ranking manager in the store and in full control of the operation because the General Manager is not present. I also work the evenings on Mondays and Tuesdays, where for a

majority of my shift I am the highest level manager on duty. I estimate that I spend 35 to 40 hours a week as the highest level manager on duty.

7.     As Operations Manager I ensure safety in the tire shop such as making sure the jack stands are in place and I perform pre-trip inspections for road calls.

8.     As Operations Manager I am responsible for loss prevention in terms of approaching the suspected thief, performing video review, and if the person walks out of the store with an item I am responsible for approaching the customer and asking them to come in and pay for it. I had a customer walk out with an Energizer cable once. I walked outside after we confirmed that he put it in his pocket and walked out of the store. I approached the customer in the store. Then I reviewed the video and confirmed he put the item in his pocket, and I approached him outside of the store and asked if he planned on paying for the item and he went back in and paid for the item. This occurred at Store 262 in Tucumcari, New Mexico in early 2017.

9.     I wear a radio during my entire shift and I put it on as soon as I get out of my vehicle for the day. The radio allows me to communicate needs and information across the store. It helps me answer questions from employees during my shift. I use the radio to delegate tasks to employees and check to see that tasks are being completed. My radio usage was a lot less at the smaller locations where I have worked because I could physically see everyone in the store and see what they are doing. The radio usage in Tucumcari, New Mexico is a lot more because of the size of this particular location. We have three (3) restaurant concepts, a tire shop and a store in Tucumcari, New Mexico. Some of the other locations I have worked, such as Store 261, Amarillo, Texas were laid out differently. The cashiers and the Subway restaurant were all in one line in Store 261.

10.     At the beginning of a shift I perform a walk of the parking lot and check for cleanliness and spot any issues. Next, I go to meet with the tire shop manager and discuss any issues from the outgoing shift that I need to be aware of. I then do a walk of the restaurant and check cleanliness and day dots on food to ensure freshness. I also meet with the outgoing restaurant manager to see if there are any issues I need to be aware of. I perform a store walk and then meet with the current on-duty manager in the office and develop a game plan for the upcoming shift. I spend about twenty-minutes at the beginning of my shift performing these duties.

11.     I perform inventory counts on products on a daily basis to ensure accurate inventory. I sometimes delegate some of the counts to the Inventory Management Coordinator ("IMC") who is an hourly employee. The IMC typically handles smaller, daily counts. The Operations Managers handle the larger counts. If a count is off it affects our inventory and I am responsible for investigating why a count is off and reviewing the invoicing for a particular item with the IMC. I also investigate inventory issues in the back office computer system. I spend about three (3) to four (4) hours per week on inventory management.

12.     Sometimes I delegate counts to the Shift Leader and I work alongside the Shift Leader as a training opportunity to develop her skills in inventory management. We are training her so she could move up into an Operations Manager role.

13.     I continually train employees on the job and help them learn how to do tasks correctly or more efficiently, as the case may be. For the employees striving to become Shift Leaders I start training them under my direction on tasks such as communicating with employees over the radio and following up on those employees' assigned tasks.

14.     We always do two interviews for job applicants.  The applicant will interview with me as the Operations Manager if they will be working on my shift.  Whichever Operations Manager does the interview is dependent on which manager the employee will spend the most time with.  Following those interviews I meet with the General Manager to discuss our impressions of the candidate.  My General Manager and I are almost always on the same page with respect to whether to move forward with the candidate and hire them.  My General Manager and I consider the applicant's job history and the strength of their interview.

15.     I do verbally discipline employees, but I make sure I do not do so publicly. I ask the employee to come to the office and we discuss my concerns and try to find solutions to the problem.  If it is an ongoing issue, I will access the WAVE and fill out written corrective action and discuss it with the employee.

16.     I have had to terminate an employee.  Specifically, it occurred in Dodge City, Kansas, and I asked an employee to complete a task on her task list and she refused to do the task. I asked the employee to clean the floor in the Chester's Chicken restaurant.  I informed her that flat refusal was unacceptable and she said she wasn't going to do it.  I sent her home and I spoke with Ramin about it the next day and we filled out the termination paperwork.  I met with the employee and Ramin and we terminated the employee during that meeting.

17.     I participate in weekly management meetings on Tuesdays.  The meeting usually lasts about thirty (30) to forty (40) minutes.  I am responsible for discussing sales and any promotional items. For example, right now we are running a promotion of two for one on Aquafina water. To discuss sales of promotional items I pull a report from the WAVE under the Analytics Marketplace ("AMP") tab and review the sales on the particular promotional item.  I also pull year to year sales for the restaurant to see how the restaurant is performing year over

year to identify any potential problems.  For example, if Arby's and Godfather's Pizza are up in sales but the Chester's Chicken is down compared to the prior year, then we discuss as a management group what the issues are and possible solutions.

18.     I participate every Tuesday on an Operations Manager conference call to discuss marketing initiatives and execution of those marketing initiatives.  That call lasts about forty (40) minutes.

19.     As Operations Manager I am responsible for marketing and ensuring that the correct items are stocked, tags are accurate and up to date, and maintenance of planogram integrity and floor plan execution.  I delegate changing out tags on items to Shift Leaders.

20.     I have participated in sixteen (16) business review meetings during my time as Operations Manager. The Divisional Marketing Manager and Divisional Managers are present as well as the District Manager.  Sometimes a member of the Love's family is present, such as Jenny Love.  I answer questions during the business review meetings specific to our location.

21.     I am eligible for a quarterly bonus as Operations Manager.  Quarterly bonuses are based on, among other items, inventory control, overtime control, margin control, and sales to budget ratio.  Each of these items is a percentage of the bonus.  For example, the quantity of items and managing inventory, including monitoring loss prevention, can affect the store's performance and subsequently my bonus.  This is the main reason that we don't allow employees to perform counts because they need to be accurate.  If I delegate a count to a Shift Leader or the IMC, I am definitely checking their counts to ensure accuracy of the count.  I am overseeing any counts that I delegate to Shift Leads or the IMC.

22.     In my experience working at several Love's locations, as an Operations Manager, all of the same managerial duties apply, just maybe on a smaller scale because of the physical size of the location.  For example, if I was counting chargers at Store 261, it would take about 20 minutes because it is a smaller store with less product, whereas it would take me at least one hour to do charger counts in Tucumcari, New Mexico.  At a smaller location I may have fewer employees to supervise, however I was always supervising at least three (3) employees even at a smaller location.

23.     I spend eighty-percent (80%) of my time performing managerial tasks.  I will say that that my time performing managerial tasks has increased as I have grown as a manager and become better at delegating tasks to employees.  In my earlier days as an Operations Manager and as I was learning the role, I estimate I spent about sixty-percent (60%) of my time performing managerial tasks, and any time I spent performing non-managerial duties early on as an Operations Manager was my own fault because I needed to learn how to delegate and delegate more efficiently.

24.     Since I have been employed by the Company, I have never made any complaints, statements, or reports to my supervisor, management, or HR about not being paid for overtime.

25.     I have never heard anyone complain, report or otherwise communicate (verbally, electronically, or in writing) to other employees, supervisors, management, or HR about not being paid for all hours worked.

This declaration is given voluntarily.  I have not been promised any benefit, coerced, or threatened in any manner in exchange for or in relation to this declaration or the information stated in this declaration.

I declare under penalty of perjury under the laws of the State of New Mexico and the United States that the foregoing is true and correct.

Dated this 27th day of October, 2017 in Tucumcari, New Mexico.

**KENT WESTBROOK**

# EXHIBIT V

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ZACHARY GIVEN, KRISTOPHER   :
LAWSON, VINCENT MCCLEERY,   :
and SEAN MCMURRAN, Individually :
and on Behalf of Other Persons   :
Similarly Situated,   :

        Plaintiffs,   :

    v.   :

LOVE'S TRAVEL STOPS &   :
COUNTRY STORES, INC.,   :

        Defendant.   :
  :

Civil Action No. 1:17-CV-01266-CCC

**JURY TRIAL DEMANDED**

The Hon. Christopher C. Conner

### DECLARATION OF DANNY DEWAYNE HILL

I, **DANNY DEWAYNE HILL**, do hereby swear, affirm and attest as follows:

1.     I am over 18 years of age and competent to testify to the matters stated in this declaration. I make this declaration based upon my personal knowledge.

2.     I am currently employed by Love's Travel Stops, Inc. (the "Company") and have worked at Store 263 in North Little Rock, Arkansas as an Operations Manager. I was recently promoted to General Manager, and I will be taking over Store 661 in Pine Bluff, Arkansas. Store 661 is still under construction.

3.     I started at store 457, Little Rock, Arkansas on July 29, 2013. From July 2013 to March 2015 I worked as an Operations Manager, and I reported to General Manager, R.C. Penfield in Little Rock, Arkansas. From March 2015 to March 2016 I worked at Store 267 in Morrilton, Arkansas, as an Operations Manager, and I reported to General Manager, Chris Costlow. From March 2016 to March 2017 I worked for the Company as an Operations

Manager in Little Rock, Arkansas, and I reported to General Manager, Aaron Hatfield. From April 2017 to June 2017, I worked as an Operations Manager at Store 267 in Morrilton, Arkansas, and reported to General Manager, Randy Smith. From July 2017 to my recent promotion to General Manager, I have worked as an Operations Manager in North Little Rock, Arkansas.

4.     During my time as Operations Manager at Love's, I always have earned at least $455.00 per week.

5.     My job responsibilities include, among other things, training and hiring employees, inventory management, store planogram maintenance, monthly marketing promotions, inventory counts, reviewing monthly competitive price surveys and generating related reports, reviewing job applications and setting up interviews of applicants, recruiting potential applicants, and participating in the Operations Manager development day.

6.     In compiling the competitive price surveys I am responsible for visiting competing stores and reviewing their prices on tobacco, alcohol, soda and basic staple items. Based on my visits to competing stores I fill out a pricing survey and submit it to the District Marketing Manager. The District Marketing Manager then determines pricing of items based on the information I gather and provide to the District Marketing Manager.

7.     As Operations Manager I train new hires on how to work their task lists. The new hire works alongside me to learn the job and the tasks they need to be able to perform.

8.     I am constantly coaching and training employees on every shift. Coaching is part of the manager's job. It is the manager's job to make sure employees are meeting expectations.

9.      I spend on average three (3) hours per week reviewing applications in TalentStop and conducting telephone interviews.  I also conduct a second in-person interview with the applicant, if appropriate.  If the candidate is strong, I also participate in the final interview with the General Manager.

10.      I make hiring recommendations to the General Manager and the General Manager has hired applicants based on my recommendations. Every applicant I have ever recommended to be hired has in fact been hired.  I estimate that I have interviewed more than forty (40) applicants in my role as Operations Manager.  Additionally, I have recommended applicants that may be a good fit at another Love's location.  For example one, applicant applied to work in the tire shop but ended up being hired for facilities maintenance based on my recommendation.

11.      I have verbally disciplined employees for policy violations.  For example, I recently disciplined a maintenance employee for a safety violation for wearing his earbuds and listening to music while powerwashing the parking lot.

12.      I have drafted and delivered more than 20 disciplinary write-ups to employees, mostly for attendance issues over the years.

13.      I have processed voluntary terminations and followed the termination procedures in TalentStop.

14.      As Operations Manager I have the power to terminate employees without talking to my General Manager first.  I have not had to terminate employees for a policy violation but I have the power to do so if needed.

15.     I estimate that ninety-percent (90%) of my time that I work as Operations Manager I am the highest level manager on duty.  I also fill in as the General Manager when the General Manager is on vacation.

16.     As Operations Manager, at the beginning of every shift I perform my manager walk and check the pumps and the parking lot and follow up on the prior shift's task list.  I then perform a store walk inside the store and the restaurant and follow-up on the task lists from the prior shift in those areas.

17.     I hold one-on-one meetings with shift employees to go over their task lists for the shift and make sure the task lists are completed.  As Operations Manager I am not performing these tasks, but rather, I am delegating these tasks to employees to perform.

18.     As Operations Manager I am able to delegate some tasks on my Operations Manager task list to those employees who show a desire to move up within the Company as a manager, and I utilize such delegation as a "teachable moment" for those employees.

19.     I am responsible for cash reconciliation when shifts change.

20.     Inventory management is a management function, and I am responsible for scanning for "ones, nones and tons" and auditing inventory to ensure count accuracy.

21.     I estimate I spend approximately seven (7) to eight (8) hours per week performing inventory management duties.

22.     I am responsible for following up with employees to make sure they are completing their task lists.  I estimate I spend approximately five (5) hours per week following up with employees on their task lists and making sure they are completing their task lists.

23.     Every Tuesday I participate in the weekly management meeting.  I discuss marketing initiatives, the 13-weeker report which details sales numbers, profit and loss reports for the month, upcoming special events and fundraisers in the store, customer complaints, driver panel reports which detail driver comments on customer service, and mystery shops.  I estimate I spend at least one (1) hour per week in the weekly management meeting.

24.     On Tuesdays I also participate in a conference call with the District Marketing Manager, all General Managers in the district and all Operations Managers in the district.   During this call we discuss, among other items, competitive price surveys, sales competitions within the district, upsells in restaurants, merchandise change-outs, mandatory planogram changes for stores and any related orders, order delivery issues, marketing displays, and markdowns. I estimate I spend approximately one (1) hour per week, if not longer, on this marketing call.

25.     I have participated in fourteen (14) business review meetings during my time as Operations Manager.  In preparation for the business review meetings, I meet with the General Manager to review the profit and loss reports, sales margins and the store performance.

26.     At the end of my shift as Operations Manager I am responsible for compiling sales numbers for the day for the store and the restaurant and sending the report to the District Manager.

27.     I also have to perform a cash audit of the drawers and send the audit to the District Manager every shift that I work.  Only the Operations Manager and General Manager can perform cash audits on their shifts.

28.     As Operations Manager I participated in a development day with my General Manager, which is a training day for Operations Managers to build their managerial

skills and learn different aspects of the business so that I can effectively manage the store and learn the role of General Manager.

29.     I estimate I spend 85% to 90% of my time performing my managerial duties as an Operations Manager, if not more than that.

30.     Since I have been employed by the Company, I have never made any complaints, statements, or reports to my supervisor, management, or HR about not being paid for overtime.

31.     I have never heard anyone complain, report or otherwise communicate (verbally, electronically, or in writing) to other employees, supervisors, management, or HR about not being paid for all hours worked.

This declaration is given voluntarily.  I have not been promised any benefit, coerced, or threatened in any manner in exchange for or in relation to this declaration or the information stated in this declaration.

I declare under penalty of perjury under the laws of the State of Arkansas and the United States that the foregoing is true and correct.

Dated this 26th day of October, 2017 in North Little Rock, Arkansas.

DANNY DEWAYNE HILL

# EXHIBIT W

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ZACHARY GIVEN, KRISTOPHER    :
LAWSON, VINCENT MCCLEERY,    :
and SEAN MCMURRAN, Individually :
and on Behalf of Other Persons    :
Similarly Situated,    :
   :
       Plaintiffs,    :
   :
      v.    :
   :
LOVE'S TRAVEL STOPS &    :
COUNTRY STORES, INC.,    :
   :
       Defendant.    :
   :

Civil Action No. 1:17-CV-01266-CCC

**JURY TRIAL DEMANDED**

The Hon. Christopher C. Conner

### DECLARATION OF RONALD SCOTT MORGAN

I, **RONALD SCOTT MORGAN**, do hereby swear, affirm and attest as follows:

     1.     I am over 18 years of age and competent to testify to the matters stated in this declaration. I make this declaration based upon my personal knowledge.

     2.     I am currently employed by Love's Travel Stops, Inc. (the "Company") and work at Store 370 in Hubbard, Ohio as an Operations Manager. I have been employed by the Company beginning June 26, 2017 at the Hubbard, Ohio location, as an Operations Manager and I report directly to General Manager Tom Devaney.

     3.     Since becoming an Operations Manager at Love's, I always have earned at least $455.00 per week.

     4.     My job here involves running the facility, particularly when the General manager is off duty. My job responsibilities as an Operations Manager include, among other things,



overseeing the operations of the tire shop, restaurant, the store.  I also oversee all vendor selection and the ordering merchandise and supplies.

5.      I participate in the hiring and firing of subordinate employees.  Only the General Manager and the Operations Managers participate in this process.

6.      I would say 75 percent of my time is dedicated to managerial work.

7.      My typical second shift only overlaps about an hour with my General Manager.  He leaves at around 4:00 and does not return for the rest of my shift.  Once he leaves, I am the highest level manager and I am responsible for running the store.

8.      I estimate 90 percent of the time during my second shift I am the highest level manager on duty.

9.      I manage about 15 employees during my typical shift.

10.     When I start my shift I hold a meeting with the tire shop employees and I lead the Tailgate meeting. Part of this involves me telling those employees what tasks they should prioritize.  Then I go over and touch base with the restaurant and I do my pathing.  This involves looking at last nights' numbers (looking at sales and projections, preparations to get through the day, clock in and clock outs, checking inventory and monitoring overtime).

11.     I monitor labor hours.  I ensure everyone is clocking in and out properly.   I have also sent people home who are getting close to incurring overtime in order to meet my responsibility to keep labor costs under control.

12.     I am typically the only person, with the exception of the General Manager, who is allowed to void transactions, authorize price overrides, process refunds.  Very rarely and only when there is no Operations Manager available a shift lead may do these tasks, but if an Operations Manager is on duty, these transactions must be authorized by an Operations Manager and up.

2



13.     In my role as Operations Manager, I am responsible for dealing with potential theft, cash reconciliation, dealing with customer complaints, hiring, firing and disciplining employees.

14.     My role as Operations Manager also involves performing inventory management. This includes ordering merchandise and supplies, and I do inventory counts. I go through products and merchandise and order things when they are running out. I also check in with vendors and I have the authority use to discretion to change vendors. This happens when I want to change up the types of products we are offering our customers.

15.     Operations Managers are solely responsible for the entire floor display of merchandise. I use my discretion and judgment to modify the floor plan and I do not need the General Manager's permission to do this. My job is to set up the displays in a way that will sell the products and market them in the best way possible. In addition to the display floor plan, I am responsible for ordering merchandise, checking lows and outs of product (to see why certain product is out or low), and doing inventory counts. I have the discretion to set the minimums and maximums of product that we order and reorder. Basically, I must make sure that the way the customers see the product is the best way to market it and sell as much as possible. My General Manager rarely provides any input on this process.

16.     I would say the chain of command is always respected here, so if a shift leader is also on duty with me, that shift leader will check in with me before directing the subordinate employees.

17.     I estimate 60 percent of my time is spent delegating tasks to other subordinate employees. I then ensure these tasks are done correctly. I will provide verbal coaching and redirection to an employee if I see that a task is not being done properly. If this is a reoccurring problem, I will follow the progressive discipline policy that I follow and I might even write them up.

3

18.     I am even authorized to fire an employee if I want to, but I might reach out to the District Manager before firing.  If I reach out, the District Manager will consider my input heavily.

19.     Even when I am doing hourly-type pitch in duties such as cleaning the bathrooms, emptying trash, stocking shelves or operating a cash register, I am still in charge because I am always monitoring everything around the facility by way of my radio and looking around. If something comes up when I am doing these tasks I can still respond immediately because I am supposed to have my radio on 100% of the time for monitoring purposes.  I also walk around the facility frequently to supervise and oversee the employees.

20.     The radio lets me direct all my employees across the facility even if they are far away from my current location such as in the tire shop.

21.     If I am doing hourly type tasks like shocking shelves I do not have anyone looking over my shoulder or supervising.  This would be inappropriate because I am the most senior manager on duty.

22.     Everyone here pitches in with these tasks, even our General Manager.

23.     I use my radio a lot to redeploy employees from one part of the facility to another busier area of the facility.  For example, right now we only have one maintenance worker and it is a heavy load so I will pull in other employees from other areas of the facility that are not as busy to help him out and make sure he does not get overwhelmed

24.     I oversee CBTs (computer based trainings) to ensure the employees are doing their required trainings so that we can meet out safety requirements.

25.     I have been involved in 1 business review meeting.  We hold this meeting in a van with the corporate folks who fly in from out of town.  This meeting lasts about an hour and

4



we run through numbers, the store, and the staff.  From our facility only the General Manager, Operations Managers, and the store and restaurant managers are invited to this meeting.

26.    I do most of the interviews here.  I pull from the online applications when there is a need at our facility.  I do the first interview alone or the other Operations Manager will do it.  I then make a recommendation as to whether the candidate should advance to a second interview.  The General Manager has never vetoed my recommendation to hire someone.  I believe have interviewed about 25 job applicants.  To give you an example, I recently recommended we hire Hannah Sirechi to the cashier positions and the General Manager went with my recommendation because he believes my hiring input is very valuable.  The General Manager is very deferential to me with respect to hiring.

27.    I discipline employees.  I feel I have the authority to fire someone.  If it is a progressive sort of infraction I will sit down with the General Manager and discuss my firing recommendation first.  But if it is an emergency situation or a case of severe insubordination, I would not have a problem taking the initiative to fire them on the spot.  For example, there was a restaurant employee, that I hired and we had issues with from the start.  I wrote him up for failing to follow directions and refusing to prep things in the restaurant.  The insubordination problems continued, so I sat him down for a final warning meeting.  The General Manager was not involved in these write ups or coaching meetings.

28.    I play a significant role in performance evaluations.  I fill out the written evaluations.  My evaluations provide key input to determine what the team members should be paid in terms of raises.  I will do performance evaluation meetings by myself to give the employees their performance feedback.  For example, I recently did a gas cashier's, Shayla Mihalcin, performance evaluation meeting alone.



29.     Since I have been employed by the Company, I have never made any complaints, statements, or reports to my supervisor, management, or HR about not being paid for overtime.

30.     I have never heard anyone complain, report or otherwise communicate (verbally, electronically, or in writing) to other employees, supervisors, management, or HR about not being paid for all hours worked.

This declaration is given voluntarily. I have not been promised any benefit, coerced, or threatened in any manner in exchange for or in relation to this declaration or the information stated in this declaration.

I declare under penalty of perjury under the laws of the State of Ohio and the United States that the foregoing is true and correct.

Dated this 3rd day of November, 2017 in Hubbard, Ohio.

_____
**RONALD SCOTT MORGAN**



# EXHIBIT X

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ZACHARY GIVEN, KRISTOPHER  :
LAWSON, VINCENT MCCLEERY,  :
and SEAN MCMURRAN, Individually :
and on Behalf of Other Persons  :
Similarly Situated,  :
　　　　　　　　　　　　　　　　　　  :
　　　　　　　　Plaintiffs,  :
　　　　　　　　　　　　　　　　　　  :
　　　　v.  :
　　　　　　　　　　　　　　　　　　  :
LOVE'S TRAVEL STOPS &  :
COUNTRY STORES, INC.,  :
　　　　　　　　　　　　　　　　　　  :
　　　　　　　　Defendant.  :
　　　　　　　　　　　　　　　　　　  :
　　　　　　　　　　　　　　　　　　  :

Civil Action No. 1:17-CV-01266-CCC

**JURY TRIAL DEMANDED**

The Hon. Christopher C. Conner

## DECLARATION OF RICHARD SAVACOOL

I, **RICHARD SAVACOOL**, do hereby swear, affirm and attest as follows:

1.　　　　I am over 18 years of age and competent to testify to the matters stated in this declaration.  I make this declaration based upon my personal knowledge.

2.　　　　I am currently employed by Love's Travel Stops, Inc. (the "Company") and work at Store 389 in Conneaut, Ohio as an Operations Manager.  I started my employment with the Company in August 2016 in Hubbard, Ohio at Store 370, as an Operations Manager.  At Store 370 I reported to General Manager Tom Devaney.  I transferred to the Conneaut, Ohio location in March 2017 and I now report directly to General Manager Ali Hawk.

3.　　　　Since becoming an Operations Manager at Love's, I always have earned at least $455.00 per week.



4.      My job responsibilities as an Operations Manager include, among other things, overseeing the operations of the tire shop, restaurant, and the store.  I run the facility, typically when the General Manager is not on duty.

5.      I estimate about 75% percent of my time is devoted to managerial work.

6.      When I first arrive the General Manager is usually still here and we meet to talk about task priorities. At the beginning of my shift I lead a meeting with the tire shop employees and conduct the tailgate meeting.  This tailgate meeting is where I direct the tire shop employees as to what tasks they should focus on for the day.  After that, I come to the store and meet with the store employees and discuss what their focus should be for the day.  I also do pathing in the restaurant to monitor and supervise the restaurant employees.

7.      My shift overlaps about with the General Manager about 2 hours when I first arrive. Then once the General Manager leaves, she usually does not return during my shift and I am in charge of the facility.  During the rest of my shift I am the highest level manager responsible for running the facility.  I would say 75 percent of the time I am the highest ranking manager on duty.

8.      I manage 10-12 employees during my shift.

9.      As an Operations Manager I am responsible for cash reconciliation, dealing with customer complaints, disciplining employees, voiding transactions, and dealing with potential theft.

10.      Operations Managers also perform inventory management.  This is where I do all the ordering and I do an inventory count.  I spend 8 hours a week on inventory management.

11.      In terms of loss prevention as the Operations Manager on duty I am the only one who can confront a shoplifter unless a General Manager is present.  In the past when I discovered some empty coat hangers and suspected they were stolen, I was responsible for reviewing the security footage to investigate the theft of these coats.  I also regularly review security

2



footage for three transactions a day to monitor exceptions such as voids or refunds. This is also to guard against theft. I have disciplined employees verbally and in writing when their cash drawers were off by more than five dollars.

12.     I regularly delegate tasks to other lower ranking employees and spend time following up with employees to see that these tasks are done.

13.     The tasks I delegate to other employees include cleaning the bathrooms, cleaning the roller grill area and drink bar area, stocking shelves, and operating a cash register. I also perform these tasks when I am pitching in. Pitching in it is all about servicing the customers. The General Manager also pitches in with these hourly tasks.

14.     Even when I am performing these hourly tasks I am still always looking around and monitoring what is going on at my store. I am giving directions to subordinate employees constantly throughout my shift. I also redeploy employees to meet customer needs when things get busy. For example, the other day on the sales floor I got a call that they were backed up on showers so I directed the floater in the gas department to go over to showers and start cleaning. The showers get cleaned between each use and will sometimes back up with customers waiting when there are not enough employees tasked with cleaning.

15.     I monitor and give directions to employees with a Motorola radio. I am always monitoring this radio, even if I am pitching in with hourly tasks, so I can immediately deal with any issues. I use my radio 5-6 times in an hour to direct the other employees. The radio lets me communicate and manage the employees no matter where they are located whether it is in the store or tire shop.

16.     When I am doing my hourly tasks I am not supervised because I am the most senior manager on duty during my shift. I do these hourly tasks because everyone is expected to pitch in where needed, no matter their title. For example, the other night my tire shop was busy

3



and they were supposed to empty all the trash bins and I pitched in to relieve them by emptying all the trash bins because they were so busy. During that time I was still constantly managing the facility through the use of my radio in order to direct employees and make sure operations were running smoothly.

17.     I monitor how busy the store is and I can send employees home to avoid incurring overtime. I also re-assign task to employees. The other day I reassigned one of the store cashiers and sent him over to the Subway restaurant because they were very busy.

18.     As an Operations Manager I am responsible for ensuring the employees follow safety procedures.  These include monitoring at the tire shop employees to make sure they are wearing safety glasses and gloves.  I also make sure the store employees that are using knives to open boxes are using them properly.  I ensure the restaurant employees are wearing cut resistant gloves when they are cutting fruit.

19.     I participate in management meetings on a weekly basis.  This happens every Friday and lasts about an hour.  Only the General Manager, the Operations Managers, Restaurant General Manager and the Tire Shop Manager attend these meetings.  At these meetings we talk about the 13 weeker reports, profit and loss reports, training reports (to ensure everyone is up to date on their mandatory training), employees performance, discipline, upcoming employee reviews, and sales numbers.  This meeting lasts about an hour.  After this meeting the same managers participate in a weekly conference call with the District Manager.  This call last about an hour.

20.     I also participate in the quarterly business review meetings.  The District Manager, the Regional Manager and the corporate representatives fly into the nearby airport.  Then the General Manager, Operations Managers, the Restaurant General Manager, the Tire Shop General Manager meet with these individuals who flew into the airport in the van.  The vast majority of the meeting occurs in the van, we all use a microphone and iPads to discuss store performance



when we look at financial reports and go over different inspections. Then when everyone gets to the facility I will accompany some of these corporate visitors during their walk through of the facility while they talk with the subordinate employees. Only manager level employees participate the meeting that occurs in the van.

21.     I have interviewed 20-25 job applicants. I conduct the interviews alone and if I like the candidate and recommend them, the General Manager will proceed with meeting with them as well. Of all these 20-25 interviews, my General Manager has only overridden my hiring recommendation once. The General Manager relies heavily on my hiring recommendations.

22.     I discipline employees. I have authority as an Operations Manager to verbally counsel, issue written warnings, and send employees home. For example, when I was the Operations Manager at Hubbard, Ohio, I sent an employee home for attendance issues. This employee had numerous attendance related infractions. I did not need the General Manager's permissions to send this employee home.

23.     I have made recommendations to terminate employees to my General Manager. In both instances where I made these termination recommendations, the General Manager gave a lot weight to my input.

24.     As an Operations Manager, I have an important role in the performance evaluations for employees. I do almost all of the performance evaluations for the subordinate employees. The General Manager also provides input about the employees and ended up only sitting in for about half of the employees' performance evaluation meetings. I conducted the remaining half of the employees' performance evaluation meetings alone as the Operations Manager.

25.     Since I have been employed by the Company, I have never made any complaints, statements, or reports to my supervisor, management, or HR about not being paid for overtime.

5

26.    I have never heard anyone complain, report or otherwise communicate (verbally, electronically, or in writing) to other employees, supervisors, management, or HR about not being paid for all hours worked.

This declaration is given voluntarily.  I have not been promised any benefit, coerced, or threatened in any manner in exchange for or in relation to this declaration or the information stated in this declaration.

I declare under penalty of perjury under the laws of the State of Ohio and the United States that the foregoing is true and correct.

Dated this 2nd day of November, 2017 in Conneaut, Ohio.

_____
RICHARD SAVACOOL

6

# EXHIBIT Y

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ZACHARY GIVEN, KRISTOPHER   :
LAWSON, VINCENT MCCLEERY,   :
and SEAN MCMURRAN, Individually:   
and on Behalf of Other Persons   :
Similarly Situated,   :
   :
       Plaintiffs,   :
   :
   v.   :
   :
LOVE'S TRAVEL STOPS &   :
COUNTRY STORES, INC.,   :
   :
       Defendant.   :
   :

Civil Action No. 1:17-CV-01266-CCC

JURY TRIAL DEMANDED

The Hon. Christopher C. Conner

### DECLARATION OF JOHN BITTNER

I, **JOHN BITTNER**, do hereby swear, affirm and attest as follows:

1.      I am over 18 years of age and competent to testify to the matters stated in this declaration. I make this declaration based upon my personal knowledge.

2.      I am currently employed by Love's Travel Stops, Inc. (the "Company") as an Operations Manager.

3.      I have worked for the Company since September 2015.

4.      The whole time, I've either been an Operations Manager in training or an Operations Manager.

5.      I've worked mainly at the Toms Brook, VA and Cumberland, MD.

6.      My current supervisor is GM Rick Cowsert.

7.      Since becoming at Love's, I always have earned at least $455.00 per week.

8.      As an Operations Manager I run a shift.  I organize employee duties for the day, make a plan for what I want done, and instruct employees for what I want them to do.

9.      During a shift, I'm in charge of supervising the travel store, the tire shop, and the Subway restaurant.

10.      As an Operations Manager, I've worked during all three shifts: 7:00 a.m. – 3:00 p.m.; 3:00 p.m. – 11:00 p.m.; and 11:00 p.m. – 7:00 a.m.

11.      The number of employees in all three department on a shift usually totals eight.  The number varies depending on the day of the week.  For example, on truck days, when there is a delivery, nine employees will be on duty.

12.      A normal workday for me is ten hours.  During that time, I supervise each of those employees for the entire time I'm on duty.

13.      My General Manager and I almost never work at the same time; I'm almost always the most senior employee on duty.

14.      I can call my General Manager if there is an emergency, but I rarely do so.  I don't call him unless it's a big deal.

15.      For example, I direct employees as to where to work (for example, the register, the truck, the diesel), ensure my people are dressed appropriately, have radios on, adhere to Company standards, etc.

16.      100% of the time when I'm on duty, I am monitoring a radio I use to communicate with the seven or eight people I am supervising.  In a typical hour, I use the radio 10-15 times to communicate with the people I'm managing. I also walk the area to check on my people and make sure that the operation is running smoothly.

17.      I am responsible for discipline when I'm on duty.   Fortunately, my employees are good and I rarely have to discipline my people.  I have written someone up for failing

to greet a customer.  I have also given oral discipline on numerous occasions.  For example, I've had to tell my people that it's unacceptable not to wear radios.  That's a big deal to me, because I have to keep in contact with my employees the entire time I'm on duty.

18.     Candidates for employment typically interview with both an Operations Manager and another manager.  That other manager could be the General Manager, the Tire Shop Manager, of the Restaurant Manager, depending on the job the person's applying for.

19.     I have interviewed about 15 candidates for employment.

20.     In each of those cases, I've then sat down with the other interviewing manager (usually my General Manager) to discuss whether to hire the person.

21.     There may have been one or two times when I've said I didn't like a candidate that they person was hired anyway.  Other than that, my recommendation on whether to hire someone has always been followed.

22.     Since I've been an Operations Manager, no one I've worked with has needed to be fired.  But, if there were a termination, I'd expect to have input into the decision.

23.     There are about 30 employees at Love's Cumberland Facility.

24.     Since I have been employed by the Company, I've never heard anyone complain about overtime.

This declaration is given voluntarily.  I have not been promised any benefit, coerced, or threatened in any manner in exchange for or in relation to this declaration or the information stated in this declaration.

I declare under penalty of perjury under the laws of the State of _Md._ and the United States that the foregoing is true and correct.

Dated this _25_ day of _Oct_, 2017 in _Cumberland_, _Md_.

_John Bittner_
**John Bittner**

# EXHIBIT Z

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ZACHARY GIVEN, KRISTOPHER   :
LAWSON, VINCENT MCCLEERY,   :
and SEAN MCMURRAN, Individually :   Civil Action No. 1:17-CV-01266-CCC
and on Behalf of Other Persons   :
Similarly Situated,   :   JURY TRIAL DEMANDED
   :
   　Plaintiffs,   :   The Hon. Christopher C. Conner
   :
   v.   :
   :
LOVE'S TRAVEL STOPS &   :
COUNTRY STORES, INC.,   :
   :
   　Defendant.   :
   :

### DECLARATION OF JAMES MINUTELLI

I, **James Minutelli**, do hereby swear, affirm and attest as follows:

1.   I am over 18 years of age and competent to testify to the matters stated in this declaration. I make this declaration based upon my personal knowledge.

2.   I've worked as an Operations Manager (OM) for Love's since June 2017.

3.   Except for initial training at Toms Brook, VA, I have worked solely at Love's Cumberland, VA location.

4.   Since becoming an OM at Love's, I always have earned at least $455.00 per week.

5.   An OM's job is to run the facility, typically when the General Manager is not there.

6.   Typically, I work from 3:00 p.m. to 1:00 a.m., five days a week.

7.    General Manager Rick Cowsert is my immediate supervisor.  He usually leaves the facility at 4:00 p.m. and does not return for the rest of my shift.

8.    During the one hour of overlap Rick and I have, we usually meet to "hand off" responsibilities.  We talk about priorities of work and anything else I need to know to run the shift.

9.    After Rick leaves, I'm on my own for the next eight hours.  I am allowed to call him if there is an emergency, but this is rare.  I can't recall a time in the last two months when I've done this.

10.    Typically, when I'm on duty, there are 8-11 other team members on duty in three areas: the tire shop, the store, and the Subway restaurant.  I'm usually the only manager on duty when Rick is gone, and I am always the most senior person on duty when Rick is gone.  Those 8-11 team members are always answering to me.

11.    When I'm on duty, I carry a Motorola radio, which allows me to communicate with my team members in the store and the tire shop.  I monitor this radio 100% of the time, and instantaneously deal with the issue.  In a typical hour, I use that radio 2-3 times to direct my subordinates.

12.    I also walk around the facility, physically check on team members, and make sure they're doing the right thing.  I visit each component of the facility at least twice per shift.

13.    When needed, I'll pitch in and perform "hourly" tasks, such as stocking shelves.  I may do this, for example, to cover an employee on break or when there is an unexpected influx of customers.  In a typical day, I spend about 20% of my time on those type of "hourly" tasks.  But, even when I performing such tasks, I'm always monitoring my radio and always managing my people.  I never cease to be a manager.

14.     Critical parts of my job are as follows: dealing with customer complaints; ensuring the inventory is correct; ensuring discipline; assigning team members to specific tasks; making sure things don't get stolen; and protecting cash.

15.     For customer complaints, I manage refunds and exchanges, void outs, and price overrides. Cashiers don't have the authority to do any of these things, mainly because of concerns about theft. In a typical week, I handle 10-20 refunds and exchanges, 20-40 void outs, and 3-4 price overrides.

16.     Turning to discipline, I am almost always monitoring team members to ensure they comply with company policies and procedures. Usually, they are, and I don't have to say anything. When team members violate policies and procedures, I usually give them verbal redirection, and that's end of it. I have the power to issue written discipline when verbal redirection fails, I've been trained on how to provide a written warning, and Rick has told me I have the authority to issue a written warning. Fortunately, however, I haven't had to do that during the short time I've worked for Loves, because we have good team members at Cumberland.

17.     I assign tasks to team members. For example, if I know a stock count needs to be done, I'll assign a floater to do that. When things come up during a shift, I have the power to, and do, re-assign tasks to my team members. This happens during most shifts. I don't have to check with anyone before I do any of these things.

18.     For loss prevention, when I am the OM on duty, I am the *only* team member authorized to confront suspected shoplifters. I am also only team member who can look at the security video to determine whether shoplifting occurred.

19.     Four or five times, the fuel pumps have shut down and I've had to direct employees through the procedures to re-start the pumps.

20.     I have an important role in cash control. When I'm the OM on duty, I alone have the key to the drop safe. It's my job to ensure the money in the drop safe is consistent with the cash report from the registers. When there's a discrepancy, I investigate.

21.     I've had to investigate a discrepancy three or four times. On each occasion, I've looked at the security tape and interviewed the employee. On each occasion, I determined that the cashier made an honest mistake and dealt with the problem via a verbal warning. I have the authority, however, to escalate to a written warning, and could recommend termination if I thought the team member committed theft.

22.     I've interviewed potential employees on four or five occasions. After the interviews, I made a recommendation to Rick about whether to hire the person. Rick has always followed my recommendation, regardless of whether it was to hire or not to hire the person.

23.     New team members get evaluations at the 90-day, six-month, and one-year marks. After that, it's yearly. So far none of my team members have been evaluated. This week a couple of team members are due to be evaluated. When that happens, I will provide information to Rick orally.

24.     Since I have been employed by the Company, I have never made any complaints, statements, or reports to my supervisor, management, or HR about not being paid for overtime.

25.     I have never heard anyone complain, report or otherwise communicate (verbally, electronically, or in writing) to other employees, supervisors, management, or HR about not being paid for all hours worked.

26.     This declaration is given voluntarily. I have not been promised any benefit, coerced, or threatened in any manner in exchange for or in relation to this declaration or the information stated in this declaration.

I declare under penalty of perjury under the laws of the State of Maryland and the United States that the foregoing is true and correct.

Dated this 25th day of October 2017 in Cumberland, MD.

**James Minutelli**