# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ZACHARY GIVEN, KRISTOPHER :
LAWSON, VINCENT MCCLEERY, :
and SEAN MCMURRAN, Individually :
and on Behalf of Other Persons  :
Similarly Situated,      :

    Plaintiff,     :
           :
   v.         :
           :
LOVE'S TRAVEL STOPS &    :
COUNTRY STORES, INC.,   :
           :
    Defendant.    :
           :

Civil Action No. 1:17-CV-01266-CCC

**JURY TRIAL DEMANDED**

The Hon. Christopher C. Conner

## MEMORANDUM IN SUPPORT OF DEFENDANT LOVE'S TRAVEL STOPS & COUNTRY STORES, INC.'S MOTION FOR SANCTIONS <u>PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 37</u>

# TABLE OF CONTENTS

PAGE

I.   INTRODUCTION ......................................................................1

II.   BACKGROUND ......................................................................2

    A.   Mr. Given Attempts To Prosecute A FLSA Misclassification Claim On Behalf Of A Nationwide Collective ...................................2

    B.   To Prosecute A Collective Action For Overtime Wages, Mr. Given Must Prove That He And The Members Of The Collective Are Similarly Situated .........................................2

    C.   Mr. Given's Complaint And Conduct In Discovery Establish That He Has No Factual Basis To Assert That He Performed Job Duties Similar To Any Of Love's Other OMs .............................5

III.   ARGUMENT ......................................................................10

    A.   Pursuant To Rule 37, The Court May Impose An Array Of Discovery Sanctions The Severity Of Which Is Determined By The Degree Of Culpability ..................................................10

    B.   Dismissal And Cost-Shifting Are Warranted, Because Mr. Given Is Highly Culpable For His Evasive Discovery Responses And Repeated Failure To Appear At Deposition .............12

        1.   Mr. Given Has Engaged In A "Fishing Expedition," Filing A Speculative Collective Action Claim And Then Pursuing Discovery To Support That Claim .........................13

        2.   Throughout Discovery, Mr. Given Refused Furnish Any Hint As to The Factual Bases Underlying His Collective Action Claim Yet He Continues Its Prosecution ....................15

        3.   Mr. Given Has Not Ensured That His Discovery Is Proportionate To His Collective Action Claim.......................16

        4.   In Light Of The Aforementioned Considerations, The Poulis Factors Overwhelmingly Favor Mr. Given's Dismissal ..................................................................18

IV.   CONCLUSION ......................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adeel Tahir v. Avis Budget Group, Inc.*,
Civ. A. No. 09-3495, 2011 U.S. Dist. LEXIS 37279 (D.N.J. Apr. 6,
2011) ......................................................................................................4

*Al Barnett & Son, Inc. v. Outboard Marine Corp.*,
611 F.2d 32 (3d Cir. 1979) ...................................................................11

*Atwell v. SPX Cooling Technologies, Inc.*,
Civ. A. No. 10-1271, 2011 U.S. Dist. LEXIS 60456 (M.D. Pa.
June 6, 2011) ...........................................................................11, 12, 20

*Bailey v. Papa John's USA, Inc.*,
236 F. App'x 200 (6th Cir. 2007) .........................................................16

*Barnett v. Laborers' Int'l Union*,
75 F.R.D. 544 (W.D. Pa. 1977) .........................................................1, 14

*Bates v. Tandy Corp.*,
Civ. A. No. 03-5519, 2005 U.S. Dist. LEXIS 9305 (E.D. Pa. May
17, 2005) ...............................................................................................17

*Boykin v. Comerica Management Co.*,
Civ. A. No. 09-10234, 2009 U.S. Dist. LEXIS 62745 (E.D. Mich.
July 22, 2009) ........................................................................................17

*Bramble v. Wal-Mart Stores, Inc.*,
Civ. A. No. 09-4932, 2011 U.S. Dist. LEXIS 39457 (E.D. Pa. Apr.
12, 2011) .................................................................................................3

*Braun v. Superior Industries International, Inc.*,
Civ. A. No. 09-2560, 2010 U.S. Dist. LEXIS 102863 (D. Kan. Sep.
28, 2010) ..........................................................................................12, 20

*Bromily, Inc. v. State Nat'l Ins. Co.*,
Civ. A. No. 07-2039, 2008 U.S. Dist. LEXIS 98857 (M.D. Pa.
Dec. 8, 2008)..........................................................................................11

# TABLE OF AUTHORITIES
## (CONTINUED)

**Page(s)**

## Cases

*Claude P. Bamberger Int'l, Inc. v. Rohm & Haas Co.*,
 Civ. A. No. 96-1041, 1998 U.S. Dist. LEXIS 11141 (D.N.J. Mar.
 31, 1998) .............................................................................................14, 15

*Cottle v. Falcon Holdings Mgmt., LLC*,
 Civ. A. No. 11-95, 2012 U.S. Dist. LEXIS 135457 (N.D. Ind. Sept.
 20, 2012) .....................................................................................................15

*Danjanovich v. Robbins*,
 Civ. A. No. 04-623, 2006 WL 842907 (D. Utah Mar. 27, 2006) ................12, 20

*Dreyer v. Alchem Envtl. Servs., Inc.*,
 Civil Action No. 06-2393 (RBK), 2006 U.S. Dist. LEXIS 93846
 (D.N.J. Dec. 12, 2006) .................................................................................14

*Gillchrist v. Verizon*,
 Civ. A. No. 15-3014, 2017 U.S. Dist. LEXIS 52710 (D.N.J. Apr. 5,
 2017) .....................................................................................................18, 19

*Hoffman-La Roche, Inc. v. Sperling*,
 493 U.S. 165 (1989) ......................................................................................1

*Inmuno Vital, Inc. v. Telemundo Grp., Inc.*,
 203 F.R.D. 561 (S.D. Fla 2001) ................................................................12, 20

*Lynn Electronics Corp. v. Automation Mach. & Dev. Corp.*,
 Civil Action No. 86-2301, 1988 U.S. Dist. LEXIS 2109 (E.D. Pa.
 Mar. 14, 1988) .............................................................................................14

*McClure v. Liberty Tax Corp.*,
 Civ. A. No. 15-00349, 2016 U.S. Dist. LEXIS 170037 (M.D. Pa.
 Dec. 7, 2016) ...............................................................................................10

*McFadden v. Corr. Corp. of Am.*,
 09-2273-EFM-KGG, 2012 U.S. Dist. LEXIS 21173 (D. Kan. Feb.
 21, 2012) .....................................................................................................15

# TABLE OF AUTHORITIES
## (CONTINUED)

**Page(s)**

**Cases**

*Nippo Corp. v. AMEC Earth & Envtl., Inc.*,
Civ. A. No. 09-0956, 2011 U.S. Dist. LEXIS 34994 (E.D. Pa. Mar.
30, 2011) ...................................................................................................19

*Pilot Air Freight Corp. v. Knight-Ridder, Inc.*,
Civ. A. No. 93-0057, 1993 U.S. Dist. LEXIS 14616 (E.D. Pa. Oct.
14, 1993) ...............................................................................................18, 20

*Porten v. Auto Zone*,
Civ. A. No. 10-2629, 2011 U.S. Dist. LEXIS 55398 (D.N.J. May
24, 2011) ...................................................................................................19

*Poulis v. State Farm Fire and Cas. Co.*,
747 F.2d 863 (3d Cir. 1984) ...................................................................*passim*

*Ray v. Phelps Dodge Brass Co.*,
Civ. A. No. 81-1579, 1983 U.S. Dist. LEXIS 20269 (N.D. Ala.
Jan. 4, 1983) ..........................................................................................15, 16

*Retired Chicago Police Ass'n v. Firemen's Annuity and Benefit Fund
of Chicago*,
145 F.3d 929 (7th Cir. 1998) ...................................................................16

*Santer v. Teachers Ins. and Annuity Ass'n*,
Civ. A. No. 06-1863, 2008 U.S. Dist. LEXIS 21767 (E.D. Pa. Mar.
19, 2008) ...................................................................................................16

*Shepherd v. Sheldon*,
Civ. A. No. 11-127, 2011 U.S. Dist. LEXIS 91165 (N.D. Ohio
Aug. 15, 2011) .........................................................................................14

*Tracy v. Dean Witter Reynolds, Inc.*,
185 F.R.D. 303 (D. Colo. 1998) ..............................................................16

*Villanueva-Bazaldua v. TruGreen Ltd. Partners*,
479 F. Supp. 2d 411 (D. Del. 2007).........................................................4

# TABLE OF AUTHORITIES
## (CONTINUED)

Page(s)

**Cases**

*Zanes v. Flagship Resort Dev., LLC.*,
  Civ. A. No. 09-3736, 2012 U.S. Dist. LEXIS 23083 (D.N.J. Jan 30,
  2012) ........................................................................................................18, 19

*Zoltek Corp. v. US*,
  Civ. A. No. 96-166, 2006 WL 5670861 (Fed. Cl. July 25, 2006) .....................20

*Zuk v. E. Pa. Psychiatric Inst.*,
  103 F.3d 294 (3d Cir. 1996) ...........................................................................14

**Statutes**

29 U.S.C. § 207(a)(1) .........................................................................................2

29 U.S.C. § 213 ...................................................................................................2

29 U.S.C. § 216(b) ..........................................................................................3, 4


**Other Authorities**

8B Charles Alan Wright, et al., Federal Practice and Procedure § 2284
  (3d ed. 2010 & Supp. 2012) ...........................................................................10

Fed. R. Civ. P. 26 ..............................................................................................16

Fed. R. Civ. P. 37 ..............................................................................................10

## I. INTRODUCTION

Collective actions under the Fair Labor Standards Act ("FLSA") "serve important goals but also present opportunities for abuse." *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 171 (1989). Plaintiff Zachary Given's ("Mr. Given") misuse of the discovery process illustrates the point. It has long been established that a plaintiff must have a good-faith basis and sufficient factual support to state a class or collective action claim *before* taking discovery to prove that claim. *E.g., Barnett v. Laborers' Int'l Union*, 75 F.R.D. 544, 545 (W.D. Pa. 1977). Although Mr. Given pleaded a collective claim for overtime wages based on the contention that he and other Operations Managers ("OMs") were similarly situated because they all performed primarily non-managerial duties for Love's Travel Stops & Country Stores, Inc. ("Love's"), Mr. Given's violations of the discovery rules make it apparent that he never had a good-faith basis for that allegation: Mr. Given provided evasive responses to written discovery when asked to provide the factual and documentary bases for that assertion, he failed to appear at his deposition scheduled *on a date requested by his counsel*, and he later failed to appear at his re-noticed deposition date. Because Mr. Given's discovery violations are highly blameworthy and prejudicial, the Court should impose sanctions under Rule 37,

1

including dismissal. Love's has conferred in good faith to resolve the dispute without court action, but those efforts have proven unavailing.

## II.    BACKGROUND

### A.    Mr. Given Attempts To Prosecute A FLSA Misclassification Claim On Behalf Of A Nationwide Collective

Generally, the FLSA dictates "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). The rule is, however, subject to exceptions for managers who meet certain criteria. *See* 29 U.S.C. § 213. Because Love's classified its OMs as skilled managers exempt from the FLSA's overtime requirement, Love's paid OMs a salary, and did not pay them overtime premiums.

According to Mr. Given, "the classification of Operations Managers as 'exempt' employees under the FLSA was wrongful because they perform[ed] work that require[d] little skill." (ECF No. 33, p. 11 of 27.) In this lawsuit, therefore, Plaintiffs seek overtime premiums.

### B.    To Prosecute A Collective Action For Overtime Wages, Mr. Given Must Prove That He And The Members Of The Collective Are Similarly Situated

Mr. Given worked for Love's from February 2014 to December 2015. During some, but not all, of that period, Mr. Given worked as an OM. Mr. Given's

2

career as an OM ended when Love's learned he committed a policy violation involving the misappropriation of property. (Exh. A, Bennison Decl., ¶ 7.) On November 25, 2015, Mr. Given admitted to misappropriating Love's property and violating Love's procedures. (*Id.* at ¶ 7, and attached Exh. 1, Subject Statement.)

Now, Mr. Given purports to prosecute a claim for overtime premiums not only on his own behalf, but also on behalf of all others "similarly situated" under 29 U.S.C. § 216(b). (ECF 1, ¶ 2.) Mr. Given seeks to represent the following collective:

> . . . all person (*sic*) who are currently or were formerly employed by the Defendant as OMs and individuals holding comparable salaried positions with different titles employed by Defendant within the United States during the Collective Action Period, which is at any time from July 18, 2014 to the entry of judgments in this case . . .

(*Id.* at ¶ 3.) This means that Mr. Given seeks to proceed on behalf of at least 1,929 of Love's OMs classified as exempt. On November 8, 2017, Mr. Given served written discovery designed to buttress his claim that a nationwide group of similarly situated OMs existed. (*See* Exh. B.)

In the proper case, there are procedural benefits to collective action treatment: it (1) "affords plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources" and (2) "the judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged [unlawful] activity." *Bramble v. Wal-Mart Stores, Inc.*, Civ.

A. No. 09-4932, 2011 U.S. Dist. LEXIS 39457, at *10 (E.D. Pa. Apr. 12, 2011) (internal quotations and punctuation omitted).

There are also potential procedural drawbacks. A plaintiff who is allowed to proceed with a collective action on behalf of individuals who are *not* similarly situated will not realize the benefits of resource-pooling and will not promote judicial economy, but will instead present the Court with an unmanageable unit for trial. Such a plaintiff can also use the discovery process to inflict on the defendant a "class action fishing expedition," *Villanueva-Bazaldua v. TruGreen Ltd. Partners*, 479 F. Supp. 2d 411, 415 (D. Del. 2007), with all of the attendant costs.

To realize the benefits of the collective-action mechanism while avoiding the pitfalls, courts have imposed certain burdens on a plaintiff who would proceed collectively. In a misclassification case under § 216(b), whether each plaintiff satisfies the relevant exemption is a dispositive issue. Therefore, in such a case, the plaintiff must prove that he and the members of the collective performed "the same or at least substantially similar [non-managerial] duties." *Adeel Tahir v. Avis Budget Group, Inc.*, Civ. A. No. 09-3495, 2011 U.S. Dist. LEXIS 37279, at *9 (D.N.J. Apr. 6, 2011). Mr. Given claims that his job duties were primarily non-managerial. As a result, Mr. Given has to establish that members of a nationwide collective have materially the same, primarily non-managerial job duties. *See id.*

4

**C.** **Mr. Given's Complaint And Conduct In Discovery Establish That He Has No Factual Basis To Assert That He Performed Job Duties Similar To Any Of Love's Other OMs**

Although Mr. Given must prove that he and the members of his proposed collective were "similarly situated," the Complaint contains nothing more than cursory, self-serving allegations in this regard. For example, in paragraph 73, Mr. Given alleges "[t]here are numerous similarly situated current and former OMs who have not been paid proper overtime wages." (ECF No. 1, ¶ 73.)

Love's therefore tried to use discovery to learn the factual basis for Mr. Given's contention that he and the members of the proposed collective were "similarly situated." In this regard, Love's Interrogatory No. 19 asked Mr. Given to "[p]lease state all facts supporting" his conclusion that he is "similarly situated" to the members of the collective. Mr. Given's answer was this:

> Plaintiff objects to this Interrogatory on the grounds that it is vague, ambiguous, and calls for a legal conclusion with respect to the term 'similarly situated.' Subject to and without waiving these objections, Plaintiff states that, based on Plaintiffs knowledge and what Plaintiff has experienced and witnessed while working for Defendant, Defendant's OMs are all subject to the same policies, all perform the same primary duties and have the same responsibilities—which are non-exempt, and all regularly work over forty (40) hours per week without overtime compensation due to Defendant's policy of misclassifying OMs as exempt from the overtime protections of the Fair Labor Standers (*sic*) Act. . . .

(Exh. C, Given's Resp. to Love's First Set of Interrog., No. 19.)

Having alleged the existence of "similarly situated" OMs, Mr. Given should have understood what the term meant. But he apparently regards the very concept of "similarly situated" OMs as too "vague" and "ambiguous" to comprehend – *even though he used the very term in his Complaint*. To the extent he can grasp the idea at all, Mr. Given offers only vague factual conclusions without offering any underlying factual detail. Mr. Given's answer defeats the very purpose of the discovery process because he fails to provide the facts supporting his conclusions.

Likewise, Mr. Given failed to produce even a single document in response to Love's Requests for Production, including Request For Production No. 37: "[p]lease produce a true and correct copy of all documents that support your allegation in Paragraph 73 of your Complaint that 'There are numerous similarly situated current and former OMs who have not been paid proper overtime wages . . . '." (Exh. D, Given's Resp. to Req. for Produc. of Docs., No. 37.)

Mr. Given's interrogatory responses and document production were deficient to explain the factual basis for his contention that he is "similarly situated" to the collective of OMs. Therefore, to flush out any facts to support Mr. Given's contention, Love's attempted to schedule his deposition. Initially, on November 2, 2017, Love's counsel wrote an email to Mr. Given's counsel attempting to determine a mutually-agreeable date upon which to schedule his

6

deposition. (Exh. E, Nov. 2 email.)[1] Love's counsel followed up with Mr. Given's counsel by email on November 9 and 16 and then had a telephonic "meet and confer" with counsel on November 29, during which they tried to schedule Mr. Given's deposition for a mutually agreeable date. (Exh. F, November 9 and 16 emails.) Still, there was no agreement.

Hence, on December 4th, Love's noticed Mr. Given's deposition for December 28, 2017. (Exh. G, Given Deposition Notice.) In response, on December 14, Mr. Given's counsel wrote a letter requesting that his deposition be continued until January 4 or 9, 2018. (Exh. H, December 14 letter.) Out of courtesy to Mr. Given's counsel, and after trying for more than a month to schedule his deposition, on December 18th, Love's counsel agreed to a date for his deposition proposed by his lawyers - January 4. (Exh. I, December 18 email.)

After returning to work from vacation on January 3rd, Love's counsel found a letter attached to an email from Mr. Given's counsel sent the evening of December 28, attempting to unilaterally reschedule his deposition "due to the holiday." (Exh. J, Dec. 28 Letter.) This request was only sent to Mr. Hank, and not to any other members of Love's legal team with whom Mr. Given's counsel had regularly communicated. Moreover, Mr. Given's counsel's reason for rescheduling

---

[1] Love's acknowledges that the emails and letters attached hereto as Exhibits are not self-authenticating but because they involve communications between counsel in this case, Love's does not anticipate any challenge to authenticity.

his deposition made no sense: they knew about "the holiday" when they proposed the January 4 date, and January 4 is not a holiday.

Under those circumstances, and with Love's in-house counsel in mid-flight from Oklahoma City to attend Mr. Given's deposition, Love's counsel did not agree to adjourn his deposition. Instead, a teleconference with Magistrate Judge Carlson was scheduled. Shortly before that call, Mr. Given's counsel emailed Judge Carlson's chambers the following:

> Our client is in the armed services which impacts scheduling and communications with our client. We make every possible effort to comply with noticed deposition dates. In this instance, regrettably we were not able to do and advised you a week in advance of the noticed date. There is plenty of time for the parties to reschedule this deposition and still meet the discovery timeline for this case, which we are more than happy to do.

(Exh. K, Email to Chambers.)

This was the first time Mr. Given's military service (our understanding is that he is enlisted in the Maryland National Guard) was offered as a reason he could not appear at his deposition. During the teleconference, Judge Carlson ordered Mr. Given's counsel to confirm her client's physical location by close of business. Mr. Given's counsel emailed Love's counsel at 5:02 p.m. advising that she could not locate Mr. Given and would not be producing him for his deposition the next day. (Exh. L, Jan. 3 email.) We thus infer that the reason for Mr. Given's

failure to appear at his deposition was not his service in the National Guard, but was instead his failure to communicate with his counsel.

On the evening of January 4, Love's counsel proposed that Mr. Given's deposition be rescheduled to January 17, 19, or 31. (Exh. M, Jan. 4 email.) Love's counsel received no response to this attempted meet and confer, so a follow up email was sent on January 8. (Exh. N, Jan. 8 email.) The next day, Mr. Given's counsel responded that she still had not heard from Mr. Given, but proposed scheduling his deposition for January 31. (Exh. O, Jan. 9 response email.)

At that point, Love's counsel concluded that Mr. Given had not responded to any of his counsel's attempts to communicate with him. As Love's in-house counsel would once again travel to Philadelphia to attend the deposition, Love's counsel proposed scheduling Mr. Given's deposition on January 29, immediately following the morning deposition of Plaintiff Sean McMurran. (Exh. P, Jan. 9 email.) Mr. Given's counsel responded that she was "agreeable to [the] proposal in principle" but "need[ed] to confirm the mechanics," and "should be in a position to respond before Monday [January 15]." (Exh. Q, Jan. 10 response email.) Mr. Given's counsel never responded. Accordingly, on January 16, Love's issued a second Notice of Deposition to Mr. Given for January 29, 2018 at 3:30 p.m. (Exh. R, Second Notice of Given Depo.)

Nevertheless, on January 24, Mr. Given's counsel emailed stating: "We are unable to produce Mr. Given, for reasons already discussed." (Exh. S, Jan. 24 email.) At that point, Love's concluded that Mr. Given would not cooperate with discovery. As a result, Love's requested a teleconference with this Court to discuss Love's intention to bring the instant Motion. (ECF No. 57.) At the teleconference, Love's received this Court's permission to do so.

## III.   ARGUMENT

### A.   Pursuant To Rule 37, The Court May Impose An Array Of Discovery Sanctions The Severity Of Which Is Determined By The Degree Of Culpability

Under Federal Rule of Civil Procedure 37(d)(3), if a party fails to attend his own deposition, the Court may impose an array of sanctions, including cost-shifting, prohibiting the disobedient party from supporting designated claims, and dismissing the offending party's claim in whole or in part. Fed. R. Civ. P. 37(d)(3), (b)(2)(A)(i)-(vii); *see also McClure v. Liberty Tax Corp.*, Civ. A. No. 15-00349, 2016 U.S. Dist. LEXIS 170037, at *5 (M.D. Pa. Dec. 7, 2016). The Court's discretion under Rule 37 is flexible, and allows the Court to make orders as it finds "just." 8B Charles Alan Wright, et al., Federal Practice and Procedure § 2284, at 436 (3d ed. 2010 & Supp. 2012). Fault is the analytical polestar: the more outrageous the misconduct, the more severe the corresponding sanctions. *See id.* at 453.

In this regard,

> [w]hen it has been determined that a party has willfully failed to comply with the rules of discovery, it is within the discretion of the trial court to dismiss the action. Litigants may oppose discovery requests by seeking a protective order from the court; they cannot be permitted to frustrate discovery by refusing to comply with a proper request. . . . The dismissal sanction, although severe, is a necessary tool, both to punish in the individual action and to deter future abuses of the discovery process.

*Al Barnett & Son, Inc. v. Outboard Marine Corp.*, 611 F.2d 32, 35-36 (3d Cir. 1979).

Where the moving party requests dismissal, the Court should consider (1) the extent of the violating party's personal responsibility; (2) prejudice to the movant; (3) a history of dilatoriness; (4) willfulness or bad faith; and (5) the effectiveness of sanctions other than dismissal. *Poulis v. State Farm Fire and Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984). However, not all of the *Poulis* factors need be met to warrant dismissal. The standard outlined in *Poulis* is a balancing test rather than a mechanical calculation. *Bromily, Inc. v. State Nat'l Ins. Co.*, Civ. A. No. 07-2039, 2008 U.S. Dist. LEXIS 98857, at *15 (M.D. Pa. Dec. 8, 2008).

Besides dismissal of the offending party from the lawsuit, the Court may impose sanctions on that party and that party's attorney. *Poulis*, 747 F.2d at 474-75, n.49. As this Court found in *Atwell v. SPX Cooling Technologies, Inc.*, Civ. A. No. 10-1271, 2011 U.S. Dist. LEXIS 60456 (M.D. Pa. June 6, 2011), "[i]nsufficient notice of the cancellation of depositions . . . , particularly when the

11

other party has already traveled to the deposition location, warrants an award of costs and attorney's fees." *Id.* at *7.

This court may also strike Mr. Given's declaration submitted to support his Motion for Conditional Certification. In *Braun v. Superior Industries International, Inc.*, Civ. A. No. 09-2560, 2010 U.S. Dist. LEXIS 102863 (D. Kan. Sep. 28, 2010), the plaintiffs failed to appear for their properly noticed depositions. *Id.* at *6 n.1. The court gave them the choice to either strike all evidence offered with their motion for conditional certification or to stay the proceeding until the defendant had the opportunity to depose the plaintiffs at plaintiffs' expense. *Id.*; *see also Danjanovich v. Robbins*, Civ. A. No. 04-623, 2006 WL 842907, at *3 (D. Utah Mar. 27, 2006) (striking defendant's affidavit filed to support a motion to dismiss as a sanction under Rule 37 for defendant's failure to attend his deposition); *Inmuno Vital, Inc. v. Telemundo Grp., Inc.*, 203 F.R.D. 561, 566 (S.D. Fla 2001) (". . . courts have stricken affidavit testimony where a party gives affidavit testimony but refuses to allow deposition questioning to test the veracity of the affidavit.").

**B.    Dismissal And Cost-Shifting Are Warranted, Because Mr. Given Is Highly Culpable For His Evasive Discovery Responses And Repeated Failure To Appear At Deposition**

Before assessing the *Poulis* factors, one must place Mr. Given's evasive interrogatory responses and repeated failure to appear at his deposition in the

12

context of his overall approach to collective discovery. To take discovery designed to prove a collective action claim, a plaintiff must satisfy four successive criteria. Specifically, the plaintiff must (1) plead a good-faith, factual basis for the collective-action claim; (2) respond meaningfully to discovery designed to identify the factual contentions underlying the well-pleaded collective action claim; (3) ensure that his own discovery requests are proportionate to his well-pleaded collective action claim; and (4) cease prosecuting the collective action claim if it becomes evident that there is no longer any good-faith, factual allegation to support it.

A plaintiff who cannot meet even one of those criteria is not entitled to proceed, or continue proceeding, with collective action discovery. Because Mr. Given's discovery violations are part of a pattern of ignoring each of those criteria, stiff sanctions, including dismissal, are warranted.

> **1.    Mr. Given Has Engaged In A "Fishing Expedition," Filing A Speculative Collective Action Claim And Then Pursuing Discovery To Support That Claim**

The first hurdle that a plaintiff who would proceed with collective action discovery must clear is not onerous: he must adduce a good-faith, factual basis for the contention that a group of similarly situated individuals exists. As a general matter, "[t]he discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable without discovery, not to find out if it has any

basis for a claim." *Claude P. Bamberger Int'l, Inc. v. Rohm & Haas Co.*, Civ. A. No. 96-1041, 1998 U.S. Dist. LEXIS 11141, at **4-5 (D.N.J. Mar. 31, 1998). Accordingly, "[d]iscovery . . . may not be used as a fishing expedition." *Shepherd v. Sheldon*, Civ. A. No. 11-127, 2011 U.S. Dist. LEXIS 91165, at *20 (N.D. Ohio Aug. 15, 2011). "Rather, a plaintiff must have a good faith basis and sufficient factual support to state a claim *before* discovery ensues." *Id.* (emphasis in original).[2]

What is true in general is also true specifically in a collective or class action. *Barnett*, 75 F.R.D. at 545.[3] Accordingly, a good-faith belief that Mr. Given was "similarly situated" to the proposed collective of OMs was a prerequisite to discovery on his collective claim. Yet Mr. Given's evasive interrogatory responses combined with his repeated failure to appear for his deposition make it clear that he never had a good-faith, factual basis for his assertion that he is "similarly situated" to the proposed collective of thousands of OMs; if he had such a basis, he would be willing to explain it in plain English. The more logical inference is that,

---

[2] *Accord Zuk v. E. Pa. Psychiatric Inst.*, 103 F.3d 294, 299 (3d Cir. 1996) ("[D]iscovery is not intended as a fishing expedition permitting the speculative pleading of a case first and then pursuing discovery to support it. . . ."); *Lynn Electronics Corp. v. Automation Mach. & Dev. Corp.*, Civil Action No. 86-2301, 1988 U.S. Dist. LEXIS 2109, at *6-7 (E.D. Pa. Mar. 14, 1988) (Discovery is not a vehicle for proving unsubstantiated allegations.).

[3] *See also Dreyer v. Alchem Envtl. Servs., Inc.*, Civil Action No. 06-2393 (RBK), 2006 U.S. Dist. LEXIS 93846, at *7 (D.N.J. Dec. 12, 2006) (where there is no evidentiary basis for a collective-action claim, defendants should not be subjected to "the burdens and costs necessarily imposed by the discovery process").

when Mr. Given pleaded his collective action allegations, he was engaging in the proverbial "fishing expedition" "without knowing whether there were even any fish in the pond." *Claude P. Bamberger Int'l, Inc.*, 1998 U.S. Dist. LEXIS 11141, at *10. He thus never should have served any discovery to establish a collective action claim, much less nationwide discovery.

> ### 2. Throughout Discovery, Mr. Given Refused Furnish Any Hint As to The Factual Bases Underlying His Collective Action Claim Yet He Continues Its Prosecution

Once a plaintiff puts forth a well-pleaded collective action allegation, he must respond meaningfully to discovery designed to ascertain the factual basis of his collective contentions. *See Cottle v. Falcon Holdings Mgmt., LLC*, Civ. A. No. 11-95, 2012 U.S. Dist. LEXIS 135457, at **8-9 (N.D. Ind. Sept. 20, 2012) (defendant in collective action is entitled to discovery to determine if lead and opt-in plaintiffs are similarly situated); *Ray v. Phelps Dodge Brass Co.*, Civ. A. No. 81-1579, 1983 U.S. Dist. LEXIS 20269, at ** 9-10 (N.D. Ala. Jan. 4, 1983) (same in Rule 23 context).[4]

Mr. Given flouted that duty. At every turn of the discovery process – when providing evasive interrogatory answers, when refusing to produce any documents supporting his collective action claim, and when repeatedly failing to appear for his

---

[4] *See also McFadden v. Corr. Corp. of Am.*, 09-2273-EFM-KGG, 2012 U.S. Dist. LEXIS 21173, at **16-17 (D. Kan. Feb. 21, 2012) (defendant is entitled to discover plaintiff's work duties).

15

deposition – Mr. Given has, as the *Ray* court put it, refused to "furnish[] any hint of" the factual contentions underlying his collective action claim. *Ray,* 1983 U.S. Dist. LEXIS 20269, at *9. The inference from Mr. Given's blatant failure to meaningfully engage in fact-based discovery is that he has no facts to support his collective action claim.

To continue prosecuting a collective action claim after discovery reveals that the plaintiff lacks any factual basis for that claim is sanctionable under Rule 11. *See Bailey v. Papa John's USA, Inc.*, 236 F. App'x 200, 203 (6th Cir. 2007).[5] Yet that is exactly what Mr. Given has done. Such conduct evinces high culpability. *See id*.

### 3. Mr. Given Has Not Ensured That His Discovery Is Proportionate To His Collective Action Claim

A plaintiff must ensure that any discovery he serves is "neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action." Fed. R. Civ. P. 26(g)(1)(B)(iii); *see Santer v. Teachers Ins. and Annuity Ass'n*, Civ. A. No. 06-1863, 2008 U.S. Dist. LEXIS 21767, at *7 (E.D. Pa. Mar. 19, 2008) (burden of discovery must be weighed against likely benefit); *Tracy v. Dean Witter Reynolds, Inc.*, 185 F.R.D. 303, 305 (D. Colo. 1998)

---

[5] *See also Retired Chicago Police Ass'n v. Firemen's Annuity and Benefit Fund of Chicago*, 145 F.3d 929, 934 (7th Cir. 1998) (continuing to prosecute class claims after it becomes apparent that the claims are not grounded in fact violates Rule 11).

16

(same principle in class context). What that means in a collective action is that the burden of extensive, class-oriented discovery should not be imposed on a defendant absent a good-faith basis for the plaintiff's claim of extensive, collective mistreatment of a group of similarly situated employees. *E.g., Bates v. Tandy Corp*., Civ. A. No. 03-5519, 2005 U.S. Dist. LEXIS 9305, at **2-3 (E.D. Pa. May 17, 2005); *Boykin v. Comerica Management Co.*, Civ. A. No. 09-10234, 2009 U.S. Dist. LEXIS 62745, at **8-10 (E.D. Mich. July 22, 2009). Absent that factual basis, courts typically limit a plaintiff's discovery to the location at which the plaintiff worked. *See, e.g.*, *Bates*, 2005 U.S. Dist. LEXIS 9305, at **2-3; *Boykin*, 2009 U.S. Dist. LEXIS 62745, at **8-10.

Mr. Given's evasive responses to written discovery and his repeated failure to appear at deposition clarify that he and his counsel never undertook the mandated cost-benefit analysis. To the contrary, even while Mr. Given stiff-armed Love's every attempt to ascertain the factual basis underlying his claim that he and other OMs are similarly situated, he has consistently demanded that Love's provide him with nationwide discovery, heedless of the immense burden that would impose. *See, e.g.*, *Bates*, 2005 U.S. Dist. LEXIS 9305, at **2-3; *Boykin*, 2009 U.S. Dist. LEXIS 62745, at **8-10.

### 4. In Light Of The Aforementioned Considerations, The *Poulis* Factors Overwhelmingly Favor Mr. Given's Dismissal

The first *Poulis* factor, the extent of the violating party's personal responsibility, is met. Besides providing no meaningful answer to Interrogatory No. 19 and his failure to produce a single document to support his collective action theory, Mr. Given has repeatedly failed to appear for his deposition. A party's failure to appear at deposition is that party's personal responsibility. *See Pilot Air Freight Corp. v. Knight-Ridder, Inc.*, Civ. A. No. 93-0057, 1993 U.S. Dist. LEXIS 14616, at **5-9 (E.D. Pa. Oct. 14, 1993).

Turning to *Poulis* factor two, the prejudice to Love's is significant. Mr. Given's failure to provide discovery has prejudiced Love's "by depriving [it] of information about [the disputed issues] and by forcing [it] to expend time on motions . . . ." *Id.* at **5-9; *see also Zanes v. Flagship Resort Dev., LLC.*, Civ. A. No. 09-3736, 2012 U.S. Dist. LEXIS 23083, at **8-9 (D.N.J. Jan 30, 2012), *adopted*, 2012 U.S. Dist. LEXIS 23066 (D.N.J. Feb. 22, 2012). "Defendants have been prejudiced by Plaintiff's failure to appear for [his] deposition and otherwise participate in the discovery process. Defendants have been unable to effectively defend the case and resolve it in a timely manner." *Gillchrist v. Verizon*, Civ. A. No. 15-3014, 2017 U.S. Dist. LEXIS 52710, at *6 (D.N.J. Apr. 5, 2017)

(dismissing complaint with prejudice). The second *Poulis* factor therefore favors dismissal. *See id.*

Regarding *Poulis* factor three (a history of dilatoriness), Mr. Given has injected delay by providing evasive responses to written discovery and repeatedly failing to appear for deposition.

Turning to the fourth *Poulis* factor, willfulness or bad faith exists where the discovery violation was not the "result of inadvertence or mistake." *Nippo Corp. v. AMEC Earth & Envtl., Inc.*, Civ. A. No. 09-0956, 2011 U.S. Dist. LEXIS 34994, at *22 (E.D. Pa. Mar. 30, 2011). Here, Mr. Given's willful inaction sends a message to this Court that he has refused to prosecute and desires to abandon his case. *Porten v. Auto Zone*, Civ. A. No. 10-2629, 2011 U.S. Dist. LEXIS 55398, at *4 (D.N.J. May 24, 2011) (dismissing case and finding plaintiff indicated desire to abandon her case by choosing not to participate in discovery).

Regarding the final *Poulis* factor, the effectiveness of alternative sanctions, no alternative sanction would remedy the problem caused by Mr. Given's repeated failure to appear at deposition. An alternative sanction to obtain the requested discovery would not likely suffice, as it is apparent that Mr. Given has no intention of complying with discovery. *See Zanes*, 2012 U.S. Dist. LEXIS 23083, at *9. Here, the proper remedy for Mr. Given's abuse of the judicial process is dismissal. *See Porten*, 2011 U.S. Dist. LEXIS 55398, at **4-6; *Gillchrist*, 2017 U.S. Dist.

19

LEXIS 52710, at *8 (dismissing complaint with prejudice after repeated failure to attend court conferences and comply with orders); *Pilot*, 1993 U.S. Dist. LEXIS 14616, at **5-9 (Because "outright disregard of the Court's orders is not excusable neglect," the court found plaintiffs' conduct was a display of bad faith and found dismissal the only appropriate sanction.).

The Court should also require Mr. Given and his counsel, jointly and severally, to bear the fees and costs reasonably necessitated by this motion and associated with Defendant's and its lawyers' preparation for Mr. Given's scheduled deposition on January 4, including the travel costs of in-house counsel. *Poulis*, 747 F.2d at 474-75, n.49; *Atwell*, 2011 U.S. Dist. LEXIS 60456, at *2-4; *Zoltek Corp. v. US*, Civ. A. No. 96-166, 2006 WL 5670861, at *2 (Fed. Cl. July 25, 2006). This court should also strike Mr. Given's declaration submitted to support his Motion for Conditional Certification. *Braun*, 2010 U.S. Dist. LEXIS 102863, at *6 n.1; *Inmuno*, 203 F.R.D. at 566; *Danjanovich*, 2006 WL 842907, at *3.

## IV.  CONCLUSION

Mr. Given has committed flagrant, prejudicial discovery violations, has squandered every opportunity to identify the factual basis for his collective action claim, and has made it clear that he can identify no good-faith, factual basis for his collective action claim.  The Court should dismiss Mr. Given from this case, strike Mr. Given's Declaration in Support of Plaintiffs' Motion for Conditional

20

Certification (ECF No. 33-2), and hold Mr. Given and his counsel jointly and severally liable for the fees and costs reasonably necessitated by this motion and associated with Defendant's and its counsel's appearance at Plaintiff Zachary Given's scheduled deposition on January 4, 2018, including but not limited to travel expenses.

*/s/ Matthew J. Hank*
Matthew J. Hank (PA No. 86086)
Marc D. Esterow (PA No. 323020)
LITTLER MENDELSON, P.C.
Three Parkway, Suite 1400
1601 Cherry Street
Philadelphia, PA 19102
(267) 402-3000
(267) 402-3131 – fax
mhank@littler.com

Attorneys for Defendant
Love's Travel Stops & Country Stores, Inc.

Dated: February 14, 2018

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.8(b)(2)</u>

Pursuant to Local Rule 7.8(b)(2), the undersigned counsel certifies that Defendant's Opposition to Plaintiffs' Motion for Conditional Certification is 4,959 words as verified by the word count feature of Microsoft Word as used by the undersigned counsel. The word count reflected herein only includes the body of Defendant's Memorandum in Support of Sanctions Pursuant to Federal Rule of Civil Procedure Rule 37, and excludes the Case Caption, Signature Block, Table of Contents, Table of Authorities, Certificate of Service, and Certificate of Compliance.

*/s/ Matthew J. Hank*
Matthew J. Hank

Dated: February 14, 2018

## <u>CERTIFICATE OF SERVICE</u>

I, Matthew J. Hank, hereby certify that I caused the foregoing Memorandum in Support of Defendant's Motion for Sanctions Pursuant to Federal Rule of Civil Procedure 37 to be filed and served via ECF upon all counsel of record.

*/s/ Matthew J. Hank*
Matthew J. Hank

Dated: February 14, 2018