IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

-----------------------------------------------------------------------X
ZACHARY GIVEN, KRISTOPHER LAWSON,
VINCENT MCCLEERY, and SEAN MCMURRAN,
Individually and on Behalf of Other Persons Similarly
Situated,

    Plaintiffs,

 -against-

LOVE'S TRAVEL STOPS & COUNTRY STORES,
INC.,

    Defendant.

-----------------------------------------------------------------------X

Civil Action No.
1:17-cv-01266-
CCC

## PROPOSED DISCOVERY MANAGEMENT ORDER

The Parties, by and through their undersigned attorneys, file their Proposed Discovery Management Order addressing discovery (herein "Post-Conditional Certification Discovery") and other pretrial issues as follows.

**I. INTRODUCTION**

By Order dated February 16, 2018, this Court authorized notice of the case be sent to "All individuals who (1) were employed as operations managers ["OMs"] by Love's Travel Stops & Country Stores, Inc. at any location within the United States at any time dating three years back from [February 16, 2018]; (2) were classified as exempt employees and did not receive overtime compensation for hours worked in

1

excess of 40 per workweek; (3) and worked more than 40 hours per workweek during that timeframe." D.E. 68.  On March 26, 2018, pursuant to this Court's Order (D.E. 83), notice of this suit was sent to all OMs contained on the contact list provided by Defendant.  The opt-in period expired on May 25, 2018.  Including the named Plaintiffs, approximately 368 OMs are participating in this matter.

## II.  PROPOSAL

The parties propose the following schedule and dates for the next phase of this case and set forth competing proposals for topics on which the parties disagree:

**A.  Time Period for Discovery**: The parties jointly propose a period of fact discovery through **December 3, 2018** related to merits issues and Defendant's anticipated motion to decertify the FLSA collective, Plaintiffs' Motion for Final Certification of the FLSA Collective, any dispositive motions, and any Fed. R. Civ. P. 23 class certification motions, as may become necessary.

**B.  Representative Discovery**:

**Plaintiffs' Proposal**:

Plaintiffs reiterate their well supported position that collective actions are intended to be advanced and supported by representative proof.  As Judge Jones commented in another retail misclassification case, "our research reveals that a number of district courts have concluded that large-scale individualized discovery such as that sought by Defendants in this case is neither appropriate nor necessary

in FLSA cases." *Craig v. Rite Aid Corp.*, No. 4:08-CV-2317, 2011 WL 9686065, at *1 (M.D. Pa. Feb. 7, 2011) (listing cases and granting representative discovery of either depositions or written discovery on 50 of a total 1,073 opt-ins, and rejecting defendant's request for individualized written discovery to all opt-ins as "unduly burdensome, unnecessary, and likely to undermine the interests of efficiency and fairness"); *Bimbo Bakeries USA, Inc.*, 2012 WL 6151734, at *6 (E.D. Pa. Dec. 11, 2012) (limiting written discovery to 10% of the approximately 650 opt-in plaintiffs to balance defendants' needs and the burden on plaintiffs and their counsel); *Halleen v. Belk, Inc.*, No. 4:16-CV-00055, 2017 WL 1495085, at *1 (E.D. Tex. Apr. 26, 2017) (granting representative discovery on 6.8% of the opt-in plaintiffs, or 25 opt-in plaintiffs); *Bradford v. Bed, Bath & Beyond, Inc.*, 184 F.Supp.2d 1342, 1344 (N.D. Ga. 2002) (parties were allowed to acquire discovery from 25 of the opt-ins, including the named plaintiffs and six other opt-ins out of more than 300 opt-ins).

Thus Plaintiffs propose as follows, discovery pertaining to individual opt-ins shall be limited to 5% or approximately 19 of the total OMs currently participating in the case for the purpose of written discovery ("discovery opt-ins"), to be selected randomly. *Craig*, No. 2011 WL 9686065 (ordering selection of discovery opt-ins to be made randomly). The random selections will be made on or before 15 days after the entry of the Court's Order on this Proposed Discovery

Management Order. Any discovery opt-in who fails or refuses to participate in written discovery will be replaced by the same random selection process.

**Depositions:** Of the 19 discovery opt-ins, five (5) will be randomly selected for depositions. *See id.* The random selections will be made on or before 15 days after the entry of the Court's Order on this Proposed Discovery Management Order. Any discovery opt-in who fails or refuses to participate in a deposition will be replaced by the same random selection process.

Depositions shall be limited to four hours and any opt-in may choose to be deposed by video-conference at any facility equipped to do so instead of appearing at the nearest major city to where such opt-in lives. Again, plaintiffs in an FLSA collective action are to be deposed where they reside since the FLSA's cost savings advantages "would be significantly reduced or even eliminated if the proposed deponents are required to travel hundreds of miles for their depositions." *Gee v. Suntrust Mortg., Inc.*, 2011 WL 5597124, at *2 (N.D. Cal. Nov. 15, 2011); *see also, e.g., Goodman v. Burlington Coat Factory Warehouse Corp.*, 292 F.R.D. 230, 235 (D.N.J. 2013) ("plaintiffs' depositions shall be taken in a location reasonably convenient to the deponents"); *Smith v. Family Video Movie Club, Inc.*, No. 11 C 1773, 2012 WL 4464887, at *3 (N.D. Ill. Sept. 27, 2012)("travel to this judicial district would be burdensome and would undermine the benefits of the collective FLSA action."); *Fiore v. Goodyear Tire & Rubber Co.*, 09-cv-00843 (M.D. Fla.)

(Dkt. No. 73) (finding "that forcing an out of state opt-in plaintiff to travel hundreds of miles to take a deposition would undermine the purpose of this collective action, and effectively destroy any benefits gained by proceeding as a class under the FLSA.").

Plaintiffs may select up to five (5) witnesses to depose. This shall include Rule 30(b)(6) witnesses. These depositions shall last up to seven hours. In addition to these five (5) witnesses, Plaintiffs shall be permitted to depose one supervisor of each of the opt-ins deposed by Defendant. These depositions shall last no more than four (4) hours, with the exception of the 30(b)(6) deposition.

    **C.**    **Written Discovery:**

        a. Plaintiffs shall collectively be permitted to serve up to a total of 50 requests for production, 20 requests for admission, and 35 interrogatories upon Defendant during Post-Conditional Certification Discovery.

        b. Defendant shall be permitted to serve up to a total of 10 requests for production, 10 requests for admission, and 10 interrogatories upon each of the discovery opt-ins, for a total of 190 request for production, 190 requests for admission, and 190 interrogatories, during Post-Conditional Certification Discovery.

      c. With respect to written-discovery limits, the Parties shall petition the Court for additional written discovery for good cause shown.

**<u>Defendant's Proposal</u>**:

Love's proposes a discovery period between now and December 3, 2018 with five characteristics:

1. Love's may notice the depositions of those named Plaintiffs whom Love's has not already deposed.

2. Love's may depose no more than 30% of the opt-in Plaintiffs. Those depositions would be in-person and, absent a stipulation of the parties to the contrary, would take place in the Middle District of Pennsylvania. Love's would select the Plaintiffs it wished to depose.

3. Love's may serve 25 interrogatories per opt-in Plaintiff and 20 requests for production of documents per opt-in Plaintiff.

4. Plaintiffs will have 30 days to respond to written discovery requests to opt-in Plaintiffs.

5. By dint of this proposal, Love's does not waive its objection to the required use of a sampling for discovery purposes or at trial. Love's maintains its position that, at trial, it has the right to examine each opt-in Plaintiff.

The bedrock principle underlying Love's proposal is that an individual who opts in to a conditionally certified collective action under 29 U.S.C. § 216(b) is a "party plaintiff," with "the same status in relation to the claims of the lawsuit as . . . the named plaintiffs." *Prickett v. DeKalb County*, 349 F.3d 1294, 1297 (11th Cir. 2003); *accord* 7B Wright, Miller & Kane, Federal Practice and Procedure § 1807, p. 474 (2005 & Supp. 2016) ("[E]very plaintiff who opts in to a collective action has party status. . . ."). Our thinking on each specific point of disagreement is set forth in more detail below.

**Why The Depositions Should Proceed In The Middle District:** The Rules of Civil Procedure ordinarily require a party plaintiff to appear for a deposition in the forum where the case is venued: "[s]ince the plaintiff has selected the forum, he or she will not be heard to complain about having to appear there for a deposition." 8A Charles Alan Wright et al., Federal Practice and Procedure, § 2112, pp. 527-28 (2010 & Supp. 2016). Absent a showing of particularized, "extreme hardship," therefore, an opt-in plaintiff "should be deposed in the judicial district where the action is brought." *Young v. Dollar Tree Stores, Inc.*, Civil Action No. 11-cv-01840-REB, 2012 U.S. Dist. LEXIS 33856, at *3 (D. Colo. Mar. 14, 2012) (collecting cases).[1]

---

[1] *Accord Allen v. Cogent Communs., Inc.*, Case No. 1:14cv459, 2015 U.S. Dist. LEXIS 5795, at *8 (E.D. Va. Jan. 15, 2015) ("[A]s an opt-in plaintiff, Scott is expected to appear for her deposition in the forum where the lawsuit is initiated absent extreme hardship."); *Lafleur v. Dollar Tree Stores, Inc.*, No. 2:12-cv-363, 2013 U.S. Dist. LEXIS 189291, at **10-11 (E.D. Va. Oct. 7, 2013); *Williams v.*

The parties can address those cases of extreme hardship when they occur. The Court should not, however, issue a blanket rule exempting opt-in Plaintiffs from the core duty of any plaintiff: the duty to show up and testify.

**Why Love's Should Be Allowed To Depose Up To 30% Of Plaintiffs:** Because opt-ins are plaintiffs, no more and no less, and because a defendant may challenge their assertion they are similarly situated, individualized depositions of opt-in Plaintiffs are appropriate. *See, e.g., Abubakar v. City of Solano*, No. CIV S-06-2268, 2008 U.S. Dist. LEXIS 17456, at **7-10 (E.D. Cal. Feb. 22, 2008) (refusing to limit written and deposition discovery to 160 opt-in plaintiffs in an FLSA collective action, and explaining that "[i]ndividualized discovery at this phase is appropriate" because "defendant seeks to challenge plaintiffs' assertion that they are 'similarly situated' for purposes of § 216(b)"). Given that Love's intends to move to decertify the collective and needs written discovery and depositions from opt-ins to challenge Plaintiffs' assertion they are similarly situated, its proposal to take written discovery from and depositions of only 30% of the Plaintiffs is reasonable.[2] *See, e.g., Bell v. Reading Hosp.*, No. 13-5927, 2015 U.S. Dist. LEXIS 51991 (E.D. Pa. Apr. 21, 2015)

---

*Sprint/United Management Co.*, 2006 U.S. Dist. LEXIS 44951, No. 03-2200-JWL, at **10-12 (D. Kan. June 30, 2006).

[2] Love's would only be allowed to depose *1%* of the opt-in Plaintiffs if the Court adopted Plaintiffs' proposal.

(allowing depositions of 35 plaintiffs/opt-ins in a collective of 122, amounting to 29%).

**Why Love's Should Be Allowed To Serve Written Discovery On All Plaintiffs**: Because opt-ins are plaintiffs, courts allow written discovery to be sent to all opt-in plaintiffs. *See, e.g., Wilson v. Navika Capital Grp., LLC*, No. 4:10-CV-1569, 2014 U.S. Dist. LEXIS 7181, at **12-14 (S.D. Tex. Jan. 17, 2014) (allowing individualized discovery of approximately 300 plaintiffs and dismissing with prejudice the plaintiffs that failed to respond); *Evans v. Lowe's Home Centers, Inc.*, No. 3:03-CV-0438, 2005 U.S. Dist. LEXIS 19072, 2005 WL 2100708, *1 (M.D. Pa., Aug. 29, 2005) (permitting individualized written discovery for all 508 opt-in plaintiffs); *Coldiron v. Pizza Hut, Inc.*, No. CV 03-05865, 2004 U.S. Dist. LEXIS 23610, at **5-6 (C.D. Cal. Oct. 25, 2004) (permitting discovery to all 306 opt-in plaintiffs and concluding individualized discovery was both "necessary and appropriate" where it was clear defendant intended to move to decertify).

**Why Love's Should Be Allowed To Choose Which Plaintiffs To Depose:** "Generally, in civil litigation, the parties are free to select the witnesses they want to depose." *Oropeza v. AppleIllinois, LLC*, No. 06 7097, 2010 WL 3034247, at *5 (N.D. Ill. Aug. 3, 2010). That principle is limited only where, under Rule 26(e), a party shows good cause for a protective order. *See id.* As Plaintiffs have not shown grounds for such a protective order, or established how deponents could be chosen

by representative sample, there is no reason to impose on Love's restrictions on the witnesses Love's may depose. *See id.* at \*6.

### E. Expert Discovery

1. Sixty (60) days before the close of Post-Conditional Certification Discovery, any party intending to rely on an expert for purposes of summary judgment motions, a final certification motion, a Rule 23 class certification motion, or a decertification motion, shall serve any such expert's report in accordance with Federal Rule of Civil Procedure 26(a)(2). Written discovery and the deposition of any such expert shall be conducted within thirty (30) days of the service of that expert's report. Any rebuttal report shall be served thirty (30) days after the date of the expert's deposition. Written discovery and the deposition of any such rebuttal expert shall be conducted within thirty (30) days of the service of that rebuttal expert's report.

2. Expert reports concerning the calculation of damages shall be stayed until the Court rules on all summary judgment motions, final certification, Rule 23 class certification motions, or decertification motions. The parties shall submit a proposed schedule for the disclosure of expert reports concerning the calculation of damages, and discovery related to those reports, within fourteen (14) days after the Court has ruled on all summary judgment motions, Rule 23 class certification

motions, or decertification motions. Neither party shall be precluded from conducting discovery otherwise related to damages.

**F.     Discovery of Electronically Stored Information**

1. To ensure that the parties can meet the Post-Conditional Certification Discovery Deadline established by Paragraph II(A)(2) above, during the course of discovery, the parties shall meet and confer regarding the following eDiscovery issues:

> a. the manner in which the parties are preserving discoverable ESI and the need, if any, for modifications or additions to those means of preservation;
> b. refining both parties' sources of discoverable Electronically Stored Information ("ESI"), taking into account appropriate objections under the Federal Rules of Civil Procedure;
> c. production and review methodologies, including: de-duplication techniques and procedures; key word methodologies to be used to locate, search, refine and produce ESI; and the manner in which the parties believe they can reasonably produce discoverable ESI from databases and similar data sources;
> d. the form in which ESI should be produced;
> e. the timing for the production of ESI, including the use of a "rolling production" methodology;
> f. cost-allocation issues surrounding the preservation, harvesting, processing, review and production of ESI requested by a party;
> g. privilege issues relating to ESI, including the non-waiver of privileged or confidential materials by inadvertent production via the use of a claw back agreement; and
> h. any other pertinent issues relating to disclosure or discovery of ESI.

The parties do not intend to imply that topics (a)-(h) are the entire universe of ESI topics to be discussed among the parties.

2. The parties will meet-and-confer concerning disputes over eDiscovery matters before raising such issues with the Court.

**G.** **Bifurcation Motions:** The deadline for any party to file motions to bifurcate any part of the trial is no later than forty-five (45) days after the Court rules on Defendant's motion for decertification of the collective action and any Fed. R. Civ. P. 23 class certification motion (should Plaintiffs intend to file such motion).

**H.** **Rule 23/ Final Certification Motion:**

**Plaintiffs' Proposal**: Plaintiffs anticipate that Defendant will argue that the procedure of Fed. R. Civ. P. 15 is sufficient to address this issue, however as this is the Opt-ins' first appearance in this action it is not unexpected that they would seek to assert their state law claims. Thus, the most efficient course of action would be for the Opt-in Plaintiffs to assert those claims in this case and for the instant scheduling order to provide for this eventuality. Plaintiffs anticipate that if they were to file separate individual actions in connection with the Opt-ins' state law claims, Defendant would seek to have those claims transferred back into this action. Thus, providing both an amendment mechanism and timeline will prevent needless delay within this action. Finally, even if the Court were to entertain Defendant's request to hold Opt-ins, as "party plaintiffs . . . no more and no less" (*see* Defendant's Proposal, *infra*), to the requirements of Fed. R. Civ. P. 15, rather than simply permitting amendment to the Complaint, the Rule permits "a party [to] amend its

pleading [] with . . . the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Given this is the *first* appearance of these Opt-ins in this matter, they could not have asserted analogous state law claims in this case until this point in time. Moreover, this request cannot be a surprise to Defendant as the parties' September 18, 2017 Joint Case Management Plan notes that "Plaintiff intends to add potential Rule 23 classes either post or pre certification," and Plaintiffs' previously proposed discovery plan including "Rule 23 certification discovery (to the extent that Rule 23 cases exist)," and Defendant did not at that time object to the possible later assertion of a Rule 23 claim. *See* Dkt. No. 28 at 3, 6. Thus, permitting the Opt-ins an opportunity to assert such claims via amendment of the Complaint surely serves the interests of justice.

The deadline for Plaintiffs to amend the Complaint to plead any Rule 23 state wage and hour claims should be within 60 days of the entry of the Court's order on this Proposed Discovery Management Order. Plaintiffs may file Fed. R. Civ. P. 23 class certification motion(s) and/or Plaintiffs' Motion for Final Certification of the FLSA Collective on or before **February 15, 2019**, oppositions shall be filed 30 days later, and replies shall be filed two (2) weeks later.

**Defendant's Proposal**: Love's does not agree that this Order should expressly permit Plaintiffs to file an amended complaint, much less an amended complaint asserting a Rule 23 class action. To the extent any party seeks to amend a pleading,

13

it, him, her, or they shall do so in accordance with Federal Rule of Civil Procedure 15.

**I.** **Decertification Motions:** Plaintiffs shall file their motion for final certification of the collective action, and Defendant shall file their motion for decertification of the collective on or before **February 15, 2019**, oppositions shall be filed 30 days later, and replies shall be filed 14 days later.

**Defendant's Position:** Love's does not object to Plaintiff's proposal, although it believes reply briefs are unnecessary.

**J.** **Dispositive Motions**: The parties shall file dispositive motions on or before **March 29, 2019**, oppositions shall be filed thirty (30) days later, and replies shall be filed two (2) weeks later.

**L.** **Federal Rule of Evidence 502(d) and (e) Clawback Agreement:** Pursuant to Federal Rule of Evidence 502(d) and (e), the parties agree to, and the Court orders, protection from disclosure of information subject to a legally recognized claim of protection, including, without limitation, the attorney-client privilege, the work-product doctrine, or other applicable protection ("Protected Information") against claims of waiver as follows:

1. The inadvertent disclosure or production by a party of Protected Information by a producing party to a receiving party shall in no way constitute the voluntary disclosure of such information.

2. The disclosure of Protected Information in this action shall not result in the waiver of any privilege, evidentiary protection, or other protection associated with such information as to the receiving party or any third parties, and shall not result in any waiver, including subject matter waiver, of any kind.

3. If, during the course of this litigation, a party determines that any information produced by another party is Protected Information:

 (a) The receiving party shall: (i) refrain from reading the Protected Information any more closely than is necessary to ascertain that it is privileged or otherwise protected from disclosure; (ii) immediately notify the Producing Party in writing that it has discovered Protected Information; (iii) specifically identify the Protected Information by Bates number range or otherwise; and, (iv) within ten (10) days of discovery by the receiving party, return, sequester, or destroy all copies of such Protected Information, along with any notes, abstracts, or compilations of the content thereof.

 (b) If the producing party intends to assert a claim of privilege or other protection over information identified by the receiving party as Protected Information, the producing party will, within ten (10) days of receiving the receiving party's written

notification described above, inform the receiving party of such intention in writing and shall provide the receiving party with a log for such Protected Information that is consistent with the requirements of the Federal Rules of Civil Procedure, setting forth the basis for the claim of privilege or other protection. In the event that any portion of the Protected Information does not contain privileged or protected information, the producing party shall also provide to the receiving party a redacted copy of the Protected Information that omits the information that the producing party believes is subject to a claim of privilege or other protection.

4. If, during the course of this litigation, a party determines it has produced Protected Information:

(a) the producing party may notify the receiving party of such production in writing, and demand the return of such information. Such notice shall be in writing. The producing party's written notice will identify the Protected Information produced by Bates number range or otherwise, the privilege or other protection claimed, and the basis for the assertion of the privilege or other protection and shall provide the receiving party

with a log for such Protected Information that is consistent with the requirements of the Federal Rules of Civil Procedure, setting forth the basis for the claim of privilege or other protection.  In the event that any portion of the identified information does not contain Protected Information, the producing party shall also provide to the receiving party a redacted copy of the Protected Information that omits the information that the producing party believes is subject to a claim of privilege or other protection.

(b) The receiving party must, within ten (10) days of receiving the producing party's written notification described above, return, sequester, or destroy the Protected Information and any copies, along with any notes, abstracts, or compilations of the content thereof.

5. The receiving party's return, sequestering, or destruction of Protected Information as provided herein will not act as a waiver of the receiving party's right to move for the production of the returned, sequestered, or destroyed information on the grounds that the information is not, in fact, subject to a viable claim of privilege or protection.  However, the Receiving Party is prohibited from arguing that: (i) the disclosure or production of the Protected Information acts as a waiver of an applicable privilege or evidentiary protection; (ii) the disclosure of the

Protected Information was not inadvertent; (iii) the producing party did not take reasonable steps to prevent the disclosure of the Protected Information; and (iv) the producing party failed to take reasonable or timely steps to rectify the error pursuant to Federal Rule of Civil Procedure 26(b)(5)(B), or otherwise.

      6.    Either party may submit Protected Information to the Court under seal for a determination of the claim of privilege or other protection. The producing party shall preserve the Protected Information until such claim is resolved. The receiving party may not use the Protected Information for any purpose absent an Order from this Court.

      7.    Nothing contained herein is intended to, or shall serve to limit a party's right to conduct a review of information (including metadata where applicable), whether stored in electronic, paper, or other tangible form, for relevance and responsiveness, and for the segregation of privileged or otherwise protected information before such information is produced to another party.

**M.**   **Other Matters**: The parties' proposal is without prejudice to the parties' rights to seek (1) modifications to this proposal for good cause shown; (2) discovery and evidence from parties and individuals other than the discovery opt-ins; or (3) discovery from individual discovery opt-ins or others following the Court's ruling on the above-referenced motions, and any disputes regarding such discovery requests will be considered at that time. This proposal is without prejudice to all

arguments, claims, and defenses of the parties, including but not limited to the applicable statute of limitations, a motion by Plaintiffs for final certification of the FLSA Collective, Fed. R. Civ. P. 23 class certification motion or a motion by Defendant to decertify the case as a collective action under 29 U.S.C. § 216(b). This proposal shall not be cited to, referred to, utilized, or admitted as evidence for purposes of arguing that any class or collective action may be maintained or certified in this action or any other action.

Respectfully submitted this 6th day of June 2018.

| | |
|---|---|
| By: *s/* Marc S. Hepworth<br>Marc S. Hepworth (*pro hac vice* approved)<br>E-mail: mhepworth@hgrlawyers.com<br>Charles Gershbaum (*pro hac vice* approved)<br>E-mail: cgershbaum@hgrlawyers.com<br>David A. Roth (*pro hac vice* approved)<br>E-mail: david.roth@rothandrothlaw.com<br>Rebecca S. Predovan (*pro hac vice* approved)<br>E-mail: rpredovan@hgrlawyers.com<br>**HEPWORTH, GERSHBAUM & ROTH, PLLC**<br>192 Lexington Avenue, Suite 802<br>New York, New York 10016<br>Telephone: (212) 545-1199<br>Facsimile: (212) 532-3801<br><br>Gregg Shavitz, Esq. (*pro hac vice* approved)<br>E-mail: gshavitz@shavitzlaw.com<br>Paolo Meireles, Esq. (*pro hac vice* approved) | By: *s/* Matthew Hank<br>Matthew Hank, Esq.<br>Email: mhank@littler.com<br>Rachel Fendell Satinsky, Esq.<br>E-mail: rsatinsky@littler.com<br>**LITTLER MENDELSON P.C.**<br>Three Parkway, 1601 Cherry Street, Suite 1400 Philadelphia, PA 19102-1321<br>Telephone: (267) 402-3054<br>Facsimile: (267) 402-3131<br><br>*Attorneys for Defendant* |

|  |  |
|---|---|
| E-mail:  pmeireles@shavitzlaw.com<br>**SHAVITZ LAW GROUP, P.A.**<br>1515 S. Federal Highway, Suite 404<br>Boca Raton, Florida  33432<br>Phone: 561-447-8888<br>www.shavitzlaw.com<br><br>David S. Senoff<br>E-mail: dsenoff@anapolweiss.com<br>Clay Flaherty<br>E-mail: cflaherty@anapolweiss.com<br>**ANAPOLWEISS**<br>One Logan Square<br>130 N. 18th Street<br>Suite 1600<br>Philadelphia, PA 19103<br>Telephone: (215) 735-1130<br><br>*Attorneys for Plaintiffs and the FLSA Collective* |  |