# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KRISTOPHER LAWSON, et al.,** | : | Civil No. 1:17-CV-1266 |
| | : | |
| Plaintiffs, | : | **(Chief Judge Conner)** |
| | : | |
| v. | : | |
| | : | **(Magistrate Judge Carlson)** |
| **LOVE'S TRAVEL STOPS &** | : | |
| **COUNTRY STORES, INC.,** | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM AND ORDER

### I. Factual and Procedural Background

This case is a Fair Labor Standards Act (FLSA) collective action brought on behalf of current and former Operations Managers (OMs) employed at various Love's Travel Stops. (Doc. 1). The plaintiffs allege that they were misclassified as exempt managerial employees under the FLSA, 29 U.S.C. § 201, *et seq*., and accordingly were not paid overtime as required by federal law. (Id.)

The parties are engaged in discovery in this case and are embroiled in a number of discovery disputes. Included among these discovery disputes is a disagreement between the parties regarding whether the collective plaintiffs have fulfilled their responsibilities to seek out, retain, and disclose electronically stored information (ESI). Dissatisfied with the plaintiffs' ESI production to date, the defendant has moved to compel further measures by the collective plaintiffs. (Doc.

1

193). Specifically, Love's urges us to direct the collective plaintiffs to take the following five steps in order to comply with their ESI production obligations: (1) engage an eDiscovery vendor at their own expense; (2) use that vendor to search for and collect responsive ESI; (3) provide hit reports for search terms Defendant specifies; (4) produce all responsive documents to Defendant's document requests dated July 20, 2018, including associated metadata; and (5) provide a detailed description of the sources of ESI searched, how that ESI was searched, and when the source containing the ESI was used by the opt-in Plaintiff.

Thus, the instant motion calls upon us to consider the reciprocal obligations of parties to search for and retain ESI in FLSA collective actions. We consider these questions against the following factual backdrop: On February 16, 2018, the court entered an order conditionally granting the plaintiffs' motion for class and collective certification in this case. (Doc. 68). Following the entry of this order, approximately 400 current and former Love's OMs opted into this conditionally certified class, and the parties engaged in a course of reciprocal discovery involving the defendants and a selected group of discovery Opt-in plaintiffs. In connection with this reciprocal discovery, Love's propounded a series of documentary discovery demands upon the

discovery Opt-in plaintiffs and specified that with respect to any ESI, the defense was seeking the ESI along with any associated metadata.[1]

The plaintiffs responded to these initial demands by producing a limited body of ESI, which did not consistently include the metadata sought by the defense. The plaintiffs also provided a general description of the scope of the ESI searches undertaken by individual plaintiffs and indicated that these initial searches had uncovered no further responsive records. The defense was dissatisfied with this response and their dissatisfaction grew when they deposed Richard Lynch, one of the discovery Opt-in plaintiffs, on April 16, 2019. Both parties have provided us with excerpts from Mr. Lynch's deposition. (Docs. 193-6, 207-4). With respect to the ESI search issues raised in this motion, it appears that at around the time of his deposition, Lynch produced some additional documents. Lynch also testified that he had produced everything in his possession that was responsive to the defendant's discovery demands. (Id.) However, Lynch's testimony reflected a certain degree of uncertainty on his part regarding the precise provenance of various items of ESI, since Lynch could not identify with precision which electronic devices in his possession may have yielded specific items. Lynch also acknowledged that older

---

[1] "Metadata is defined as 'information describing the history, tracking, or management of an electronic document.' " Romero v. Allstate Ins. Co., 271 F.R.D. 96, 105 (E.D. Pa. 2010) (quoting Wyeth v. Impax Labs., Inc., 248 F.R.D. 169, 171 (D. Del. 2006)

text messages may have been deleted and could not describe efforts that he had taken to preserve ESI. (Id.)

Lynch's uncertainty on these issues inspired additional rounds of consultation and conferral between the parties concerning the plaintiffs' ESI preservation and production obligations. As a result of this process, in July of 2019, the plaintiffs' counsel provided the defendant with some additional details concerning the ESI collection process undertaken by the discovery Opt-in plaintiffs. (Doc. 207-5). In particular, as to these discovery Opt-in plaintiffs, counsel provided a general description of the devices search, ("cell phone, laptop, desktop"), and the data reviewed ("e-mails and text messages"). Plaintiffs' counsel also identified any social media searched by the discovery Opt-in plaintiffs as well as any job networking sites searched by the plaintiffs. Further, according to the plaintiffs' counsel, the searches were conducted using variations of the terms "Love's" as well as co-workers' names. In addition, the supplemental responses stated whether these searches revealed any further responsive documents. (Id.) Finally, with regard to Love's concerns that it had not received requested metadata, the plaintiffs' counsel agreed to produce these records in their native format.[2]

---

[2] "The native file format is the 'file structure defined by the original creating application,' such as a document created and opened in a word processing application.". Race Tires Am., Inc. v. Hoosier Racing Tire Corp., 674 F.3d 158, 161 (3d Cir. 2012) (quoting The Sedona Conference, The Sedona Conference

Dissatisfied with this response, Love's filed the instant motion to compel plaintiffs' production of ESI, (Doc. 193), which seeks an order directing the following five forms of relief: an order directing the plaintiffs (1) to engage an eDiscovery vendor at their own expense; (2) use that vendor to search for and collect responsive ESI; (3) provide hit reports for search terms Defendant specifies; (4) produce all responsive documents to Defendant's document requests dated July 20, 2018, including associated metadata; and (5) provide a detailed description of the sources of ESI searched, how that ESI was searched, and when the source containing the ESI was used by the opt-in Plaintiff. The motion is fully briefed by the parties and is now ripe for resolution.

For the reasons set forth below, the motion will be granted, in part, and denied, in part, as follows: The defendant's request that we order plaintiffs to undertake the expense of hiring and using an outside eDiscovery vendor is DENIED. To the extent that the defendant seeks access to available metadata on produced records, the motion is GRANTED IN PART, in that the plaintiffs shall produce records in their native format. Further, to the extent that the defendant is dissatisfied with the clarity of the plaintiffs' responses regarding the procedures and protocols employed in the ESI search in this case, the motion is GRANTED IN PART and the defendant may

---

Glossary: E–Discovery & Digital Information Management 35 (Sherry B. Harris et al. eds., 3rd ed. 2010)).

propound up to five interrogatories of the discovery Opt-in plaintiffs seeking further details regarding this search methodology. Finally, with respect to the scope of the search terms used in this search, the motion is GRANTED IN PART, and the parties are ordered to consult, confer and attempt to agree upon no more than ten carefully tailored, relevant search terms to use when examining the plaintiffs' ESI. If the parties are unable to come to an agreement on these search terms, they shall notify the court.

## II. Discussion

### A. Guiding Principles

Rulings regarding the proper scope of discovery are matters consigned to the court's discretion and judgment. A court's decisions regarding the conduct of discovery will be disturbed only upon a showing of abuse of that discretion. Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983). This far-reaching discretion also extends to rulings by United States Magistrate Judges on discovery matters. In this regard:

> District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes. See Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc., 174 F.R.D. 572, 585 (D.N.J. 1997). When a magistrate judge's decision involves a discretionary [discovery] matter . . ., "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." Saldi v. Paul Revere Life Ins. Co., 224 F.R.D. 169, 174 (E.D. Pa. 2004) (citing Scott Paper Co. v. United States, 943 F. Supp. 501, 502 (E.D. Pa. 1996)). Under the standard, a magistrate judge's discovery ruling "is entitled to great deference and

6

> is reversible only for abuse of discretion." Kresefky v. Panasonic Commc'ns and Sys. Co., 169 F.R.D. 54, 64 (D.N.J. 1996); see also Hasbrouck v. BankAmerica Hous. Servs., 190 F.R.D. 42, 44-45 (N.D.N.Y. 1999) (holding that discovery rulings are reviewed under abuse of discretion standard rather than de novo standard); EEOC v. Mr. Gold, Inc., 223 F.R.D. 100, 102 (E.D.N.Y. 2004) (holding that a magistrate judge's resolution of discovery disputes deserves substantial deference and should be reversed only if there is an abuse of discretion).

Halsey v. Pfeiffer, No. 09-1138, 2010 WL 2735702, at *1 (D.N.J. Sept. 27, 2010).

The exercise of this discretion is guided, however, by certain basic principles. At the outset, Rule 26(b) of the Federal Rules of Civil Procedure generally defines the scope of discovery permitted in a civil action, prescribes certain limits to that discovery and provides as follows:

> (b) Discovery Scope and Limits.
>
> (1) *Scope in General*. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b).

Thus, our discretion is limited in a number of significant ways by the scope of Rule 26 itself, which provides for discovery of only "nonprivileged matter that is relevant to any party's claim or defense." Therefore, "[t]he Court's discretion in

ruling on discovery issues is, therefore, restricted to valid claims of relevance and privilege." Robinson v. Folino, No. 14-227, 2016 WL 4678340, at *2 (citing Jackson v. Beard, No. 11-1431, 2014 WL 3868228, at *5 (M.D. Pa. Aug. 6, 2014) ("[a]lthough the scope of relevance in discovery is far broader than that allowed for evidentiary purposes, it is not without its limits....Courts will not permit discovery where a request is made in bad faith, unduly burdensome, irrelevant to the general subject matter of the action, or relates to confidential or privileged information")).

Accordingly, at the outset it is clear that Rule 26's definition of that which can be obtained through discovery reaches any nonprivileged matter that is relevant to any party's claim or defense, and valid claims of relevance and privilege still cabin and restrict the court's discretion in ruling on discovery issues. Furthermore, the scope of discovery permitted by Rule 26 embraces all relevant information, a concept which is not confined to admissible evidence but is also defined in the following terms: "Information within this scope of discovery need not be admissible in evidence to be discoverable." Rather, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." This concept of relevance is tempered, however, by principles of proportionality. Thus we are now enjoined to also consider whether the specific discovery sought is "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant

information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "Thus, it has been said that the amended rule 'restores the proportionality factors to their original place in defining the scope of discovery.'" Fassett v. Sears Holdings Corp., 319 F.R.D. 143, 150 (M.D. Pa. 2017) (quoting Wertz v. GEA Heat Exchangers Inc., No. 1:14-CV-1991, 2015 WL 8959408, at *2 (M.D. Pa. Dec. 16, 2015)).

Finally, one other immutable factor governs the scope of discovery under Rule 26. "It is an obvious truism that a court should not enter an order compelling a party to produce documents where the documents do not exist." Wells v. JPC Equestrian, Inc., No. 3:13-CV-2575, 2014 WL 5641305, at *4 (M.D. Pa. Nov. 4, 2014). It is clear, therefore, that the court cannot compel the production of things that do not exist. Nor can the court compel the creation of evidence by parties who attest that they do not possess the materials sought by an adversary in litigation. See, e.g., AFSCME District Council 47 Health and Welfare Fund v. Ortho-McNeil-Janssen Pharmaceuticals, Inc., No. 08-5904, 2010 WL 5186088 (E.D.Pa. Dec. 21, 2010); Knauss v. Shannon, No. 08-1698, 2009 WL 975251 (M.D.Pa. April 9, 2009).

In the instant case, the parties have discussed at length their concerns regarding real and perceived asymmetries in ESI discovery in this FLSA litigation. On this score, we emphasize for all parties our view that the legal principles

governing their reciprocal discovery obligations are fixed, firm, and absolutely symmetrical. Thus, the law does not create different legal benchmarks for the parties in terms of their ESI disclosure duties. However, there are factual considerations relating to the claims and defenses of the parties, and access to information concerning those claims and defenses, which will certainly define how much ESI is available to each party to produce.

In particular, in FLSA litigation, several factors understandably may often lead to a greater production of ESI by the defense than by the plaintiffs. At the outset, the inherent nature of FLSA misclassification claims places a focus on a defendant's employment and job classification policies and practices. Thus, the burden of ESI discovery relating to these elements of an FLSA claim will necessarily fall upon the alleged policymaker, the defendant. See generally Woodard v. FedEx Freight E., Inc., 250 F.R.D. 178, 190 (M.D. Pa. 2008). Further, to the extent that contemporaneous ESI communications by plaintiffs regarding job duties and classifications may have occurred, for the most part those communications would be expected to have taken place at the workplace, using office e-mail communication systems which would record communications by and between Love's employees regarding the work they are doing. Therefore, many of these records, if they exist in an ESI format, would remain within the possession, custody, and control of the defendant on its proprietary e-mail system.

Further, as between Love's and its various OMs, the defendant would be far more likely to have standardized approaches to the retention and preservation of ESI prior to the onset of litigation. Simply put, while the corporation may have the resources and business incentives to retain electronic data for extended periods of time, it is far more likely that individual Love's employees may have treated cell phones and laptops as disposable items, particularly prior to the inception of this lawsuit. One consequence of these essentially neutral factors is that the evidence available to the parties that is responsive to discovery requests will likely differ, and the parties' reciprocal responses to ESI demands in FSA litigation may vary significantly in terms of the quantity of available ESI.

Guided by these considerations we turn to the specific requests for relief sought by Love's in its motion to compel.

### B. <u>Love's Motion Will be Granted In Part and Denied in Part</u>

At the outset, in this motion Love's extends a sweeping invitation to us, urging us order the plaintiffs to engage an eDiscovery vendor at their own expense and then use that vendor to search for and collect responsive ESI. The plaintiffs oppose this request, arguing that it is unreasonable, disproportionate, and unduly intrusive.

We will decline this invitation. To be sure, eDiscovery vendors are an increasingly common tool used in the management of high volume ESI discovery. See generally <u>Race Tires Am., Inc. v. Hoosier Racing Tire Corp.</u>, 674 F.3d 158, 159

(3d Cir. 2012). Oftentimes, such vendor services can provide an orderly means of securing, retaining, reviewing, and disclosing voluminous ESI. However, while the use of such vendors may be a best practice in some cases, nothing in the Federal Rules of Civil Procedure mandates this practice, and the parties have presented us with a paucity of legal authority relating to our ability to compel a party to hire an ESI vendor at that party's expense to manage electronic discovery.[3] Thus, on this score, we note that Love's request seems to be both sweeping and largely unprecedented. Indeed, our own independent research identified only one case in which a party was apparently ordered to procure an ESI vendor at its own expense. <u>Seven Seas Cruises S. De R.L. v. V. Ships Leisure SAM</u>, No. 09-23411-CIV, 2011 WL 772855, at *7 (S.D. Fla. Feb. 19, 2011), <u>report and recommendation adopted,</u> No. 09-23411-CIV, 2011 WL 772902 (S.D. Fla. Feb. 28, 2011).However, in <u>Seven Seas</u>, this order was premised upon a finding of major failures to provide ESI discovery, and subsequent cases have suggested that this is an extreme remedy limited to curing significant ESI discovery defalcations. <u>Procaps S.A. v. Patheon</u>

---

[3] We note that some courts have suggested a middle ground approach to such discovery issues, permitting a party to demand extensive ESI discovery investments but conditioning those ESI discovery investments upon a shifting of costs to the party making the discovery requests. <u>See generally</u> <u>Boeynaems v. LA Fitness Int'l, LLC</u>, 285 F.R.D. 331, 337 (E.D. Pa. 2012). Notably, in this case Love's has not volunteered to undertake the expense of using an eDiscovery vendor to collect data from the plaintiffs. Therefore, the defense has not tempered this demand with some cost-shifting proposal.

Inc., No. 1:12-CV-24356-JG, 2014 WL 11498060, at *39 (S.D. Fla. Dec. 1, 2014), report and recommendation adopted, No. 12-24356-CIV, 2014 WL 11498061 (S.D. Fla. Dec. 30, 2014).

In our view, no such showing of a major ESI discovery defalcation has been made here. While the deposition of Opt-in plaintiff Richard Lynch disclosed a degree of uncertainty on his part regarding the precise provenance of various items of ESI, acknowledged that older text messages may have been deleted, and failed to describe efforts which had been taken to preserve ESI, Lynch also testified to a good-faith attempt to review his electronic media and stated that he had produced everything he could locate that was relevant. For its part, Love's does not identify some body of ESI that was not searched or disclosed, but rests its concerns on a somewhat speculative assertion that this lack of clarity by one deponent may reveal some systemic shortcomings in discovery warranting imposition of the expense of an eDiscovery vendor upon the plaintiffs. We are not prepared to impose these costs on the plaintiffs based upon this speculative showing, particularly since we have at our disposal other means of ensuring that adequate ESI searches have been performed by the plaintiffs.

We also agree that the relief sought here—imposition of an eDiscovery vendor—is presently disproportionate to the needs of this case. On this score, it has been represented without contradiction that an eDiscovery vendor's services may

cost the plaintiffs more than $37,000. This is a substantial expense in an FLSA case, where individual claims of class members often have a relatively modest dollar value, and we find Love's argument that the expense is proportionate to the plaintiffs' potential total recovery in this case unpersuasive and, perhaps, ironic.[4] Instead, we believe that the better measure of proportionality would be a cost-benefits analysis of what additional discovery would be gained through this substantial expense. In this case, where plaintiffs have already been stated on numerous occasions that their prior searches have not disclosed any substantial body of ESI, imposing an additional $37,000 cost upon the plaintiffs based upon speculation that something more might exist which has not yet been found is, in our view, disproportionate. In short, absent some more specific and compelling showing that some body of ESI material exists which has not been reviewed or disclosed, imposition of this cost is unwarranted.

Finally, we recognize that there is a uniquely intrusive aspect to this proposal, which would entail an outside forensic review of the Opt-in plaintiffs' electronic media and social media. In framing the approach to such discovery, we must be mindful of the fact that social media is at once both ubiquitous and often intensely

---

[4] We say that this argument has an element of irony because, in order to assert that imposing this $37,000 expense upon the plaintiffs is a measured and proportionate cost of litigation, Love's necessarily has to imply that its financial exposure in this case is many magnitudes of order greater than $37,000, an argument that we rarely receive from defendants.

personal, with persons sharing through social media, and storing on electronic media, the most intimate of personal details on a host of matters, many of which may be entirely unrelated to issues in specific litigation. Recognizing this fact of our modern society, we are not prepared to direct a third-party forensic examination of these electronic media absent a more specific and compelling showing of need. We are not alone in this concern. Quite the contrary:

> Numerous courts have also recognized this need to "guard against undue intrusiveness" and to be "cautious in requiring" the forensic inspection of electronic devices, in order to protect privacy interests. See John B. v. Goetz, 531 F.3d 448, 459-60 (6th Cir. 2008) (citing cases and concluding that the "compelled forensic imaging orders here fail[ed] to account properly for ... significant privacy and confidentiality concerns"). "Mere suspicion" or speculation that an opposing party may be withholding discoverable information is insufficient to support an "intrusive examination" of the opposing party's electronic devices or information systems. Scotts Co. LLC v. Liberty Mut. Ins. Co., No. 2:06-CV-899, 2007 WL 1723509, at *2 (S.D. Ohio June 12, 2007).

Hespe v. City of Chicago, No. 13 C 7998, 2016 WL 7240754, at *4 (N.D. Ill. Dec. 15, 2016). Guided by these privacy considerations, we decline to order this outside forensic review at the plaintiffs' expense.

Yet, while we decline Love's invitation to order this specific relief, we understand and recognize the defendant's desire for greater clarity concerning the plaintiffs' satisfaction of their ESI discovery obligations. Towards that end, however, we believe that these concerns can be met through a series of lesser measures, as discussed below.

At the outset, we note that Love's sought ESI disclosures from the plaintiff along with metadata. While the parties dispute whether the plaintiffs sufficiently objected to this request for metadata, we need not resolve this question because the plaintiffs have now agreed to provide the ESI that they possess in its native format. Given our understanding that production in "native format will provide Defendant[] with the metadata necessary to identify the provenance of each document and put it into its proper context," City of Colton v. Am. Promotional Events, Inc., 277 F.R.D. 578, 586 (C.D. Cal. 2011), we will order the plaintiffs to make their ESI productions in native format.

As for Love's concerns that it lacks information regarding the ESI search protocols and procedures used by the plaintiffs in this case, while we understand that some disclosures have been made on this score, we believe that further clarity is warranted given the uncertainty expressed by the discovery Opt-in deponent, Richard Lynch. Therefore, we will authorize the defendant to propound up to five interrogatories to each discovery Opt-in plaintiff to further clarify and describe the search protocols actually used by these discovery Opt-ins when conducting their ESI searches.

Finally, we understand that Love's has voiced a concern that the ESI search terms employed by the plaintiffs, which apparently were limited to variants of the term "Love's" and co-workers names, were unduly narrow. As part of our oversight

responsibilities in discovery we have the discretion to modify ESI search term parameters. See Shaw Grp. Inc. v. Zurich Am. Ins. Co., No. CIV.A. 12-257-JJB, 2014 WL 4373210, at *6 (M.D. La. Sept. 3, 2014). In this case, we agree that the search terms described by the plaintiffs may have been unduly restrictive. Therefore, consistent with the Sedona principles, which emphasize that electronic discovery should be a party-driven cooperative process, the parties are ordered to consult, confer, and attempt to agree upon no more than ten carefully tailored, relevant search terms to use when examining the plaintiffs' ESI. If the parties are unable to come to an agreement on these search terms, they shall notify the court.

An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KRISTOPHER LAWSON, et al.,** | : | Civil No. 1:17-CV-1266 |
| **Plaintiffs,** | : | (Chief Judge Conner) |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| **LOVE'S TRAVEL STOPS &** | : | |
| **COUNTRY STORES, INC.,** | : | |
| **Defendant.** | : | |

## ORDER

AND NOW, this 31st day of October 2019, in accordance with the accompanying Memorandum, IT IS ORDERED that the defendant's Motion to Compel, (Doc.193) is GRANTED IN PART AND DENIED IN PART as follows: The defendant's request that we order plaintiffs to undertake the expense of hiring and using an outside eDiscovery vendor is DENIED. To the extent that the defendant seeks access to available metadata on produced records, the motion is GRANTED IN PART, in that the plaintiffs shall produce records in their native format. Further, to the extent that the defendant is dissatisfied with the clarity of the plaintiffs' responses regarding the scope of the ESI search in this case, the motion is GRANTED IN PART and the defendant may propound up to five interrogatories of the discovery Opt-in plaintiffs seeking further details regarding this search

18

methodology. Finally, with respect to the scope of the search terms used in this search, the motion is GRANTED IN PART, and the parties are ordered to consult, confer, and attempt to agree upon no more than ten carefully tailored, relevant search terms to use when examining the plaintiffs' ESI. If the parties are unable to come to an agreement on these search terms, they shall notify the court within 21 days.

*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge