# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KRISTOPHER LAWSON, et al.,** | : | Civil No. 1:17-CV-1266 |
| | : | |
| Plaintiffs, | : | **(Chief Judge Conner)** |
| | : | |
| v. | : | |
| | : | **(Magistrate Judge Carlson)** |
| **LOVE'S TRAVEL STOPS &** | : | |
| **COUNTRY STORES, INC.,** | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM AND ORDER

### I. Factual and Procedural Background

This case is a Fair Labor Standards Act (FLSA) collective action brought on behalf of current and former Operations Managers (OMs) employed at various Love's Travel Stops. (Doc. 1). The plaintiffs allege that they were misclassified as exempt managerial employees under the FLSA, 29 U.S.C. § 201, *et seq.*, and accordingly were not paid overtime as required by federal law. (Id.)

The parties are engaged in discovery in this case and have been embroiled in a number of discovery disputes which have required the court's intervention. (Docs. 167-231). In order to provide focus, clarity, and finality to this process, on November 25, 2019, we entered an order directing the parties to provide us with a comprehensive and complete list of their discovery disputes by December 9, 2019. (Doc. 218). The parties have complied with this direction, providing us with

1

correspondence outlining the remaining discovery disputes that divide these litigants. (Docs. 219-223).

Included among these remaining discovery disputes is a disagreement between the parties regarding the plaintiffs' demands that the defendant should provide discovery of text messages that pertain to the issues in this litigation that Love's supervisors possess on company-owned cell phones. This specific demand for discovery of defense cellphone text messages follows a disagreement between Love's and the plaintiffs regarding the adequacy of the plaintiffs' ESI searches, which included searches of the stored emails and text messages on the phones of the various Opt-In plaintiffs. In response to this prior dispute, we denied Love's request that we order the plaintiffs to undertake the burden and expense of a wholesale forensic review of the Opt-Ins cellphones. Instead, we only granted Love's limited relief in the form of an order directing some further, tailored ESI searches by the Opt-In plaintiffs for ESI, including relevant cellphone text messages. (Doc. 210). We entered this order, in part, because we were satisfied that Love's discovery demands, which specifically referenced text messages, had previously placed the plaintiffs on notice that this information was being sought by the defense. (Doc. 223 at 9).

The plaintiffs, in turn, now seek ESI discovery of the content of text messages found on the company-owned cellphones of Love's supervisors, a request that

Love's opposes on several grounds. First, Love's contends that the plaintiffs are delinquent in making this request, having waited until near the close of discovery before specifically demanding production of cellphone text messages. The plaintiffs have responded to this timeliness objection by arguing that this text message information was sought by them in their July 2018 requests for production of documents. We are not entirely persuaded by this argument, since our reading of these requests for production does not lead us to conclude that the requests clearly placed Love's on notice that the plaintiffs were seeking text messages.

Aside from these timeliness issues, Love's raises concerns regarding the relevance, scope, cost and proportionality of this requested discovery. At the outset, Love's contends that the plaintiffs' requests, which are framed in terms of all text messages from company owned phones, are not bound or defined by any considerations of factual relevance to the issues in this litigation. We agree that no party would be entitled to all text messages contained on an opposing party's cellphones. Only those messages that were relevant to the issues in this litigation would be subject to discovery and disclosure.

Further, Love's notes that the scope of this request is quite broad. According to Love's, only senior management at the District Director or Division Manager level possess company-owned cellphones. However, the number of such company-owned devices is significant and may include 100 devices. In fact, some 18 Division

Directors or District Managers oversee the work of the discovery Opt-In plaintiffs. Thus, wholesale disclosure of text messages from all of these devices could be a significant undertaking.

Beyond the scope of this enterprise, Love's identifies considerable expenses associated with just the initial effort to capture the extant text messages on these devices. Love's contends that this data capture expense would be approximately $1,500 per cellphone. Thus, the cost of simply capturing and retaining this data would be $150,000 for all company-owned cell phones for the 100 senior officials who possess such phones, and up to $27,000 for the 18 officials who actually oversee the discovery Opt-In plaintiffs. Moreover, this projected cost relates solely to capturing this data. There would be additional expenses associated with any data searches of these devices.

Further, Love's argues that the plaintiffs have not made a sufficient showing of relevance to secure this discovery. In particular, Love's notes that the senior managers who possess company-issued cellphones are several rungs above Operations Managers in the corporate hierarchy. Therefore, they would have little reason to communicate with or about the daily duties of Operations Managers through text messages. Love's bolsters its relevance argument by observing that one Opt-In plaintiff who was deposed, Mr. Lawson, produced no relevant text messages from his cellphone describing his duties or other matters relating to this case. If the

actual Operations Managers possessed nothing on their cellphones in terms of relevant text messages concerning their duties and job classification, Love's reasons that it is highly unlikely that a body of relevant text messages exist on the phones of corporate officials who are far removed from OM work or direct supervision of OMs.

Finally, given the substantial expense associated with the collection of this data, the limited showing of relevance made here, and the tardiness of the specific request, Love's contends that this discovery demand does not satisfy the proportionality principles embodied in Rule 26.

We add one other consideration to these concerns identified by Love's, a factor which previously led us to deny many aspects of Love's request for cellphone data from the Opt-In plaintiffs and caused us to narrowly circumscribe Love's demands for ESI from the plaintiffs. Cellphones and cellphone technology are now a ubiquitous part of our lives. For many, the most personal and intimate facts of their lives are carried and saved in their personal electronic devices. Therefore, requests for wide-ranging discovery of cellphone contents often implicate important privacy interests, interests which must be weighed against the need for such disclosure.

With the issues which divide the parties framed in this fashion, we turn to the resolution of this particular dispute.

## II. Discussion

Rulings regarding the proper scope of discovery are matters consigned to the court's discretion and judgment. A court's decisions regarding the conduct of discovery will be disturbed only upon a showing of abuse of that discretion. Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983). This far-reaching discretion also extends to rulings by United States Magistrate Judges on discovery matters. In this regard:

> District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes. See Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc., 174 F.R.D. 572, 585 (D.N.J. 1997). When a magistrate judge's decision involves a discretionary [discovery] matter . . ., "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." Saldi v. Paul Revere Life Ins. Co., 224 F.R.D. 169, 174 (E.D. Pa. 2004) (citing Scott Paper Co. v. United States, 943 F. Supp. 501, 502 (E.D. Pa. 1996)). Under the standard, a magistrate judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion." Kresefky v. Panasonic Commc'ns and Sys. Co., 169 F.R.D. 54, 64 (D.N.J. 1996); see also Hasbrouck v. BankAmerica Hous. Servs., 190 F.R.D. 42, 44-45 (N.D.N.Y. 1999) (holding that discovery rulings are reviewed under abuse of discretion standard rather than de novo standard); EEOC v. Mr. Gold, Inc., 223 F.R.D. 100, 102 (E.D.N.Y. 2004) (holding that a magistrate judge's resolution of discovery disputes deserves substantial deference and should be reversed only if there is an abuse of discretion).

Halsey v. Pfeiffer, No. 09-1138, 2010 WL 2735702, at *1 (D.N.J. Sept. 27, 2010).

The exercise of this discretion is guided, however, by certain basic principles. At the outset, Rule 26(b) of the Federal Rules of Civil Procedure generally defines

the scope of discovery permitted in a civil action, prescribes certain limits to that discovery and provides as follows:

> (b) Discovery Scope and Limits.
>
> (1) *Scope in General*. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b).

Thus, our discretion is limited in a number of significant ways by the scope of Rule 26 itself, which provides for discovery of only "nonprivileged matter that is relevant to any party's claim or defense." Therefore, "[t]he Court's discretion in ruling on discovery issues is, therefore, restricted to valid claims of relevance and privilege." Robinson v. Folino, No. 14-227, 2016 WL 4678340, at *2 (citing Jackson v. Beard, No. 11-1431, 2014 WL 3868228, at *5 (M.D. Pa. Aug. 6, 2014) ("[a]lthough the scope of relevance in discovery is far broader than that allowed for evidentiary purposes, it is not without its limits....Courts will not permit discovery where a request is made in bad faith, unduly burdensome, irrelevant to the general subject matter of the action, or relates to confidential or privileged information")).

Accordingly, at the outset it is clear that Rule 26's definition of that which can be obtained through discovery reaches any nonprivileged matter that is relevant to any party's claim or defense, and valid claims of relevance and privilege still cabin and restrict the court's discretion in ruling on discovery issues. Furthermore, the scope of discovery permitted by Rule 26 embraces all relevant information, a concept which is not confined to admissible evidence but is also defined in the following terms: "Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Rather, Rule 26 states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." This concept of relevance is tempered, however, by principles of proportionality. Thus we are now enjoined to also consider whether the specific discovery sought is "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "Thus, it has been said that the amended rule 'restores the proportionality factors to their original place in defining the scope of discovery.' " Fassett v. Sears Holdings Corp., 319 F.R.D. 143, 150 (M.D. Pa. 2017) (quoting Wertz v. GEA Heat Exchangers Inc., No. 1:14-CV-1991, 2015 WL 8959408, at *2 (M.D. Pa. Dec. 16, 2015)).

Finally, we recognize that there is a uniquely intrusive aspect to this proposal, which would entail a forensic review of the electronic media of as many as 100 persons. In framing the approach to such discovery, we must be mindful of the fact that social media is at once both ubiquitous and often intensely personal, with persons sharing through social media, and storing on electronic media, the most intimate of personal details on a host of matters, many of which may be entirely unrelated to issues in specific litigation. As the Supreme Court has observed in a criminal context:

> [T]there is an element of pervasiveness that characterizes cell phones but not physical records. Prior to the digital age, people did not typically carry a cache of sensitive personal information with them as they went about their day. Now it is the person who is not carrying a cell phone, with all that it contains, who is the exception.

Riley v. California, 573 U.S. 373, 395, 134 S. Ct. 2473, 2490, 189 L. Ed. 2d 430 (2014). Thus, "[t]oday . . . it is no exaggeration to say that many of the more than 90% of American adults who own a cell phone keep on their person a digital record of nearly every aspect of their lives—from the mundane to the intimate." Id.

Acknowledging this fact of our modern society:

> Numerous courts have also recognized this need to "guard against undue intrusiveness" and to be "cautious in requiring" the forensic inspection of electronic devices, in order to protect privacy interests. See John B. v. Goetz, 531 F.3d 448, 459-60 (6th Cir. 2008) (citing cases and concluding that the "compelled forensic imaging orders here fail[ed] to account properly for ... significant privacy and confidentiality concerns"). "Mere suspicion" or speculation that an opposing party may be withholding discoverable information is

> insufficient to support an "intrusive examination" of the opposing party's electronic devices or information systems. <u>Scotts Co. LLC v. Liberty Mut. Ins. Co.</u>, No. 2:06-CV-899, 2007 WL 1723509, at *2 (S.D. Ohio June 12, 2007).

<u>Hespe v. City of Chicago</u>, No. 13 C 7998, 2016 WL 7240754, at *4 (N.D. Ill. Dec. 15, 2016).

Guided by these considerations, we turn to the specific requests for relief sought by the plaintiffs. At the outset, we will decline the plaintiffs' invitation to require some sort of wholesale disclosure and retention of a wide array of cellphone data, just as we had previously declined Love's invitation to compel the plaintiffs to retain an expert to collect and cull all of the cellphone data from the Opt-In plaintiffs. In our view, such sweeping discovery cannot be justified in this case for several reasons. First, we find that this request is tardy, and the plaintiffs' July 2018 requests for production did not plainly put Love's on notice that the plaintiffs were requesting cellphone text messages. Further, the request has a certain conjectural quality to it. The plaintiffs have not shown that any discoverable material exists on these cellphones, and the paucity of relevant information which the plaintiffs have located on their own cellphones concerning these FLSA claims suggests that it is unlikely that the senior executives who possessed company-provided cell phones, but were far removed from the OMs and their day-to-day activities, would have some greater body of relevant text messages. Moreover, the plaintiffs' requests do not seem bound or confined by any clearly defined concepts of relevance, describing particular types

of information which they seek from these cell phones. In addition, the expense of collecting this data would be significant, ranging between $27,000 and $150,000. Without some more specific showing of relevance, these expenses seem disproportionate to the costs of complying with conjectural requests for review of the text messages contained by as many as 100 cellphones. Finally, beyond these concerns of proportionality, we recognize that wholesale, far-reaching collection or disclosure of cellphone data could intrude upon the privacy interests of others.

Yet, while we will decline this invitation to order the defense to engage in this discovery, we recognize that a more narrowly tailored request, supported by a more specific showing of relevance, might be appropriate. For example, if cellphone ESI disclosures by discovery Opt-In plaintiffs suggested that relevant ESI might be also be found on the cellphones of particular Division Directors or District Managers, then the balance of relevance, proportionality, and privacy might well tilt in favor of some more carefully defined disclosures. Therefore, we will also direct that if the plaintiffs wish to seek more specific and narrowly focused discovery of cellphone information, they should provide the defense with a tightly focused discovery request, along with any proffer of relevance, on or before **January 30, 2020**. The parties should then consult, confer, and attempt to agree upon the scope of any carefully tailored, relevant search for such data. If the parties are unable to come to

an agreement on the scope of such a search, they shall notify the court on or before

**February 17, 2020**.

An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KRISTOPHER LAWSON, et al.,** | : | Civil No. 1:17-CV-1266 |
| **Plaintiffs,** | : | (Chief Judge Conner) |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| **LOVE'S TRAVEL STOPS & COUNTRY STORES, INC.,** | : | |
| **Defendant.** | : | |

## **ORDER**

AND NOW, this 9th day of January 2020, in accordance with the accompanying Memorandum, IT IS ORDERED that the plaintiffs' request for discovery of all District Director and Division Manager text messages is DENIED without prejudice to the plaintiffs providing the defense with more tightly focused discovery request, along with any proffer of relevance, on or before **January 30, 2020**. The parties should then consult, confer, and attempt to agree upon the scope of a carefully tailored, relevant search for such data. If the parties are unable to come to an agreement on the scope of such a search terms, they shall notify the court on or before **February 17, 2020**.

*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge