IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

```
-------------------------------------------------------------X
KRISTOPHER LAWSON, VINCENT               :
MCCLEERY, and SEAN MCMURRAN,             :
Individually and on Behalf of Other Persons  : Civ No.: 17-cv-01266
Similarly Situated,                      :
                                         :
                Plaintiffs,              :
                                       :
        -against-                        :
                                         :
LOVE'S TRAVEL STOPS & COUNTRY            :
STORES, INC.,                            :
                                         :
                Defendant.               :
-------------------------------------------------------------X
```

**DECLARATION OF MARC S. HEPWORTH IN SUPPORT OF
PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF
<u>FLSA COLLECTIVE ACTION SETTLEMENT</u>**

Marc S. Hepworth, an attorney admitted to the bar of this Court, declares, under penalty of perjury that:

I am a partner in Hepworth Gershbaum & Roth PLLC, (hereinafter "HGR") co-counsel for Kristopher Lawson ("Lawson"), Vincent McCleery ("McCleery"), and Sean McMurran ("McMurran") (collectively, "Plaintiffs" or "FLSA Collective Representatives"), in this action. I am fully familiar with the facts and circumstances set forth herein, and I make this Declaration in support of the Plaintiffs' Motion for (1) approving the Settlement Agreement; (2) approving Service Awards to the FLSA Collective Representatives and each of three FLSA Collective Members; (3) approving Plaintiffs' request for attorneys' fees plus reimbursement of costs and

1

expenses, which were separately negotiated after the parties agreed upon the settlement amount to the FLSA Collective Members; and (4) dismissing the lawsuit.

The testimony set forth herein is based on first-hand knowledge about which I would and could testify competently in open court if called upon to do so, and on contemporaneously-generated records kept in the ordinary course of law practice by my firm.

My firm first became involved in this litigation when, in early 2017, when we were retained by Lawson, McCleery and McMurran,[1] to prosecute the claims of Plaintiffs for unpaid overtime wages. HGR undertook this case on a contingency fee basis, and thus counsel bore the risk of non-payment for the significant time expended as well as by taking this action, HGR was precluding work on other matters. HGR also knew that costs and expenses might not be recovered and, at the very least, would not be recovered until the litigation was successfully resolved and as detailed below HGR has incurred significant expenses in this litigation. HGR, along with Co-counsel, Shavitz Law Group, P.A. (hereinafter "SLG") and Anapol Weiss (hereinafter together as "Class Counsel"), investigated the Plaintiffs' claims and filed the Complaint in this action on or about July 18, 2017.

Several attorneys from my office other than myself, including Charles Gershbaum, David A. Roth, Rebecca Predovan, Finn Dusenberry, Janine Kapp, Joshua Cittadino, and Jessica Massimi as well as Paralegals performed various litigation and related tasks as set forth herein. Particularly, my firm has been involved in every aspect of this litigation since its inception. As summarized below, the proposed Settlement was the product of Class Counsel's knowledge as to the risks of further litigation, the nature of the claims and defenses, and that future proceedings would be fiercely litigated and include a lengthy trial. Class Counsel reached this settlement

---

[1] One of the original named Plaintiffs, Zachary Given, is no longer is a party to the case.

only after having succeeded in overcoming many litigation hurdles. The Settlement Agreement is attached hereto as **Exhibit 1**. The results obtained in this matter, represents a recovery of a substantial amount of the overtime wages claimed, and the separate attorneys' fee does not reduce the FLSA Collective Members' recovery.

Throughout the duration of this case, HGR performed many tasks including, but not limited to: (1) investigated the Plaintiffs potential overtime claims; (2) researched and analyzed the relevant law based upon the information initially provided by the Plaintiffs concerning their job duties as Love's Travel Stops & Country Stores, Inc. (hereinafter "Love's") Operations Managers, (OM's); (3) interviewed Plaintiffs and reviewed documents provided by the plaintiffs so as to get a better understanding of internal paperwork that would support the claims in the case; (4) compared and contrasted this case to other manager misclassification cases; (5) reviewed and analyzed various Love's, policies including their policy of not paying OM managers overtime and review documents provided by Plaintiffs; (6) performed legal research regarding Love's potential defenses; (7) reviewed and researched other cases brought against Love's over the years in anticipation of the good faith defense; (8) researched and considered the viability of a collective action versus a class action against Love's, or bringing the matter as a hybrid claim; (9) researched and considered the viability of a Rule 23 case in Indiana, Pennsylvania and Ohio; (10) researched, drafted, edited, and filed this action; (11) drafted Pro Hac Vice Motions; (12) reviewed Defendant's Corporate Disclosure; (13) drafted the case management conference order; (14) served plaintiffs' initial rule 26(a)(1) disclosures; (15) drafted responses to Defendant's Requests for Interrogatories; (16) drafted and edited responses to Notices for Requests for Admissions; (17) obtain and review the documents and ESI from the Plaintiffs; (18) drafted responses for named plaintiffs; (19) research regarding retaliation against

Given; (20) meet and confer with defense counsel as to deficiencies in their discovery responses; (21) interviewed OMs to ascertain the names of documents and types of communications that would assist in drafting demands; (22) drafted and served plaintiffs initial demands; (23) researched and drafted the deficiency letter; (24) interviewed multiple opt-ins and drafted declarations in support of the motion for conditional certification; (25) interviewed and draft declarations of opt-ins and Plaintiffs for Conditional Certification motion; (26) drafted and edited the motion for conditional certification; (27) researched case law and drafted reply based upon Defendant's opposition; (28) Traveled to and orally argued motion in the Middle District of Pennsylvania; (29) draft and review Plaintiffs' discovery responses in light of defendant deficiency letter; (30) review and research issues raised by the Defendant as to notice, multiple conferrals with Defendant regarding the notice; (31) draft motion to Court regarding disputed notice items; (32) drafted and review the second phase discovery order; (33) meet and confer with Defendants as to second phase discovery; (34) conducted Second phase discovery including, the review and analysis of Defendant's document production which ended up totaling over a million documents so as to determine what documents should be utilized in the 30(b)(6) deposition both in light of what is needed for final certification and the anticipated summary judgment motion as to willfulness; (35) reviewed documents provided by Defendant with an eye to what was missing in that Defendant made a minimal production; (36) reviewed Defendant's policies and procedures; (37) drafted supplemental responses; (38) researched issues that would likely arise during the deposition of Plaintiff; (39) under took ESI preservation discussions with Defendant; (40) drafted and exchanged ESI preservation letter; (41) conducted numerous ESI conferences with co-counsel and Defendant; (42) researched willfulness and good faith as related to FLSA allegations of misclassification; (43) reviewed and edited the proposed protective order;

4

(44) drafted, edited and served the notice of 30(b)(6) 216(b) deposition notice; (45) conducted supplemental interviews of Plaintiffs and collected electronic and hard copy documents to respond to Defendant's discovery requests; (46) drafted and responded to the Defendant's demand for interrogatories and demand for production of documents from Plaintiffs; (47) drafted ESI protocols including protocols for production of discovery ESI, the format of data exchanged, manner in which the ESI would be identified, developed strategies to review and examine large volumes of data, including research in various forums from the Sedona conference to other ESI decisions from other jurisdictions that governed the varied issues that are associated with large volume production of ESI, due to the scope of ESI and the problems inherent in the production and preservation of same, we examined various methods used to better search and to analyze said data; (48) determined the scope of various records such as emails to and from Plaintiffs and opt-ins to and from corporate custodians, date ranges to be produced vs. preserved, types of agreements that were subject to the ESI protocols for preservation and production; (49) HGR also worked on establishing the proper form of production for ESI, identified numerous varied sources of ESI beyond that which Defendant identified which was necessary, conducted analysis of the form of production identified missing metadata, as well as missing documents from the ESI produced; (50) reviewed Defendant's first production of what was to ultimately be over one million documents over the course of discovery; (51) conducted numerous conferences regarding ESI issues with the Defendant, including the form of the production of the ESI, and search methodology, as terms of ESI could not be agreed upon nor the way the production should be made; (52) prepared the Named Plaintiff Lawson for deposition as well as extensive document review with Lawson; (53) traveled to Philadelphia, Pennsylvania to attend and defend the deposition of the Named Plaintiff Lawson; (54) prepared the Named Plaintiff McMurran for

5

deposition as well as extensive document review with McMurran; (55) traveled to Philadelphia, Pennsylvania to attend and defend the deposition of the Named Plaintiff McMurran; (56) prepared opt in Plaintiff Richard R. Lynch for deposition as well as extensive document review with Richard R. Lynch; (57) traveled to Philadelphia, Pennsylvania attend and defend the deposition of the opt in Plaintiff Richard R. Lynch; (58) prepared opt-in Plaintiff Darryl Warren for deposition as well as extensive document review with Darryl Warren; (59) traveled to Dallas, Texas to attend and defend the deposition of the opt in Plaintiff Darryl Warren; (60) prepared opt-in Plaintiff Antonio Williams for deposition including extensive document review with Antonio Williams; (61) Prepared for and traveled to Oklahoma City again for the depositions of Courtney Worthington and Leonard Court, defendant's experts as to FLSA compliance; (62) drafted and filed motion and order to be relieved as counsel for Plaintiff Given; (63) Travel to Oklahoma City on Multiple occasions; (64) prepare for and travel to Oklahoma City, OK and conduct the deposition of the Defendants 30(b)(6) witness Kevin Asbury; (65) prepare for and travel to Oklahoma City, OK and conduct the deposition of the Defendants 30(b)(6) witness Andrew Graham; (66) prepare for and travel to Oklahoma City, OK and conduct the deposition of the Defendants 30(b)(6) witness Jim Westhoff; (67) prepare for and travel to Oklahoma City and conduct the deposition of the Defendants 30(b)(6) witness Josh Carroll; (68) prepared for and travel to Oklahoma City and conduct the deposition of the Defendants 30(b)(6) witness Courtney Warmington; (69) prepared for and travel to Oklahoma City and conduct the deposition of the Defendants 30(b)(6) witness Henry Leonard Court; (70) review Defendants motion to dismiss various opt in Plaintiffs and devise strategy and theory to oppose motion; (70) drafted opposition to motion to dismiss; (71) drafted a sur reply to Defendant's motion in light of the Defendant's Reply; (72) met and conferred with Defendant several times regarding

outstanding discovery; (73) review of Defendant's production, resulting in issuing Subpoenas of Crowe Dunleavy as to documents and studies done so as to impact the issue as to Defendant's willfulness; (74) draft motion to compel discovery; (75) further Review of Defendants production, resulting in the issuing Subpoenas as to documents and what studies were done so as to impact the issue as to Defendant's willfulness; (76) extensive ESI discussions in light of Defendant's discovery and updating search terms; (77) draft and prepare motion to seal; (78) review hit reports prepared by Defendant, after the limited production and devise ways to par down the production yet allow Plaintiffs to obtain the ESI discovery that is needed; (79) Prepare several status reports for the Court related to discovery; (80) prepare for and attend conferences with the Court; (81) extensive discovery conferrals conducted with Defendant as to discovery to be produced for selected opt in Plaintiffs; (82) ESI so intensive that Plaintiff held consultations with experts in ESI and their ESI vendor to analyze the production and develop protocols; (83) drafted and edited the opposition to Defendants motion to compel extensive discovery from Plaintiffs as to the Plaintiffs' ESI; (84) preparation of opt in Larry Clifton, especially with a view to document production and prior depositions as well as prepare a redirect; (85) extensive conversations with the opt in Plaintiffs and the search and production discovery considering the Defendants ESI motion and Court conference and review with the Plaintiffs and conduct searches on multiple devices as per the Court's order; (86) met and confer with Defendant's ESI expert regarding its ESI production; (87) draft and revise a motion for summary judgement as to the fluctuating work week; (88) obtain Love's audits conducted by outside vendors; (89) review of ESI in light of the failure of the Defendant to come up with the relevant hits in the hit report; (90) review of the meta data of the discovery in light of the Defendants failure to produce results that would show up in the hit report; (91) additional review of productions in light Court's ESI

order; (92) draft joint status report for the court, conduct conference with Judge Carlson, regarding the production; (93) review of Defendant's production (Vol 38) and determination made that based upon other productions and comparison, the meta data was missing; (94) meeting with the Defendant as to potential mediation; (95) drafting a motion to stay pending the mediation; (96) requested and obtained Payroll data spreadsheets from Defendant for the class so multiple damage models could be prepared; (97) analyzed pay week data information provided by defendant for the collective; (98) Prepare for the mediation, that included extensive modeling as to damages, which proved difficult in light of the unavailability of certain data points; review of the Defendants arguments and current case law; (99) review and edit the Plaintiffs mediation statement to the mediator Hunter Hughes; (100) attend mediation and reach a settlement with the Defendant; (101) negotiate, draft and review the settlement agreement; (102) draft and edit the motion for approval of the settlement; and (103) handle multiple calls throughout the litigation, and after the settlement from collective members, answering questions and obtaining information from the class members.

      The total number of hours spent on this litigation by my firm has been 2,403.90.  The total lodestar amount of time based on the firm's billing rates is $1,581,820.00.  This is the rate that is charged to our clients who retain our firm by the hour.  Time expended in preparing the present application for fees and reimbursement of expenses has not been included in these totals.  My firm's lodestar figures are based upon time records maintained by my firm and the firm's billing rates, which do not include charges for expense items.  This reflects the time actually spent, in the exercise of reasonable judgment by the lawyers and staff involved and is reflected in the detailed time records for each of the firms.  Furthermore, the work undertaken represents the work addressed above in connection with the investigation and filing of the lawsuit, the

discovery and the negotiating and effectuating the settlement. However, the work incurred to dated does not include the additional time and fess Plaintiffs' Counsel will expend through the end of the administration of this settlement, which based upon prior experience will be substantial. By the time the administration of this settlement is completed, HGR's relationship with the Plaintiffs will be close to four years. The following attorneys and staff worked on this case, for the hours set forth below, to obtain the lodestar figures:

| NAME | TITLE | HOURS | HOURLY RATE | TOTAL |
|---|---|---|---|---|
| Marc S. Hepworth | Partner | 379 | $800.00 | $303,200.00 |
| Charles Gershbaum | Partner | 321.2 | $850.00 | $273,020.00 |
| David A. Roth | Partner | 423.5 | $900.00 | $381,150.00 |
| Rebecca Predovan | Associate | 712.70 | $625.00 | $445,437.50 |
| Joshua Cittadino | Associate | 179.3 | $250.00 | $44,825.00 |
| Janine Kapp | Associate | 243.7 | $350.00 | $85,295.00 |
| Finn Dusenberry | Associate | 67.4 | $475.00 | $32,015.00 |
| Jessica Massimi | Associate | 16.3 | 475.00 | $7,742.50 |
| Amy Goldreyer | Paralegal | 31.10 | $150.00 | $4,665.00 |
| Andrew Hepworth | Paralegal | 29.80 | $150.00 | $4,470.00 |
| TOTALS | | 2,403.90 | | $1,581,820.00 |

Moreover, our co-counsel Anapol Weiss expended the following time in litigating this action, serving as local counsel this case:

| NAME | TITLE | HOURS | HOURLY RATE | TOTAL |
|---|---|---|---|---|
| David Senoff | Partner | 6.4 | $600 | $3,840.00 |
| Gregory Spizer | Partner | 14.9 | $550 | $8,195.00 |

9

| | | | | |
|---|---|---|---|---|
| Clay Flaherty | Associate | 30.2 | $300 | $9,060.00 |
| Christina McNally | Associate | 13.4 | $250 | $3,350.00 |
| Edna Robles | Associate | 6.2 | $250 | $1,550.00 |
| TOTALS | | 71.1 | | $25,995.00 |

Expense items are billed separately, and such charges are not duplicated in my firm's billing rates.

My firm incurred a total of $119,368.91 in un-reimbursed costs and expenses in connection with the prosecution of this litigation, as follows:

| | |
|---|---:|
| Court Fees/Service of process/Subpoenas | $1,228.30 |
| Court Reporters | $27,402.53 |
| Postage/Express Mail/Messenger/Copy and Record Fee | $1,188.64 |
| Legal Research Fees | $201.40 |
| Transportation/Meals/ Travel | $12,212.51 |
| ESI-Storage/Hosting/Review Platform | $50,860.14 |
| Third Party Administrator | $26,275.39 |
| TOTAL | $119,368.91 |

The time records and expenses incurred in the prosecution of this case are reflected on the books and records of this firm, which are available for submission to the Court *in camera* upon request.  These books and records are prepared from expense vouchers, receipts, and check records, and are accurate regarding all the expenses incurred.  The firms also communicated regularly so as to ensure that there was not unnecessary time incurred, nor duplication of effort.

Hepworth, Gershbaum & Roth, PLLC, is experienced in FLSA and wage and hour litigation.  The firm, and particularly its attorneys involved in this case have, in the past several years, successfully litigated to conclusion FLSA/state wage and hour collective/class actions, and

10

individual suits and settlements that, to date, exceed 100 million dollars. Some of the other cases involving wage and hour class actions that Hepworth, Gershbaum & Roth have been involved are as follows: *Youngblood v. Family Dollar,* 1:09-cv-03176 (S.D.N.Y) (co-counsel in a misclassification store manager case, wherein the Rule 23 case was certified and settled for $14,000,000.00); *Hegab v. Family Dollar Stores, Inc*., 1:11-cv-01206 (D.N.J.) (co-lead counsel on a wage and hour misclassification matter settled for $1,150,000); *Fermin v. Rite Aid of New York, Inc*., 1:08-cv-11364 (S.D.N.Y.) (co-lead counsel on a wage and hour misclassification matter, settled as part of the *Craig v. Rite Aid*, 4:08-cv-02317(S.D.N.Y.) for ($20,900,000.00); *Ibea v. Rite Aid Corporation*, 1:11-cv-5260 (S.D.N.Y) (co-counsel on a misclassification case certified under FLSA 216(b) as a collective action, settled as part of *Craig v. Rite Aid,* 4:08-cv-02317(S.D.N.Y.)); *Cunningham v. EDS*, 1:06-cv-5260 (S.D.N.Y) (Co-lead counsel on a misclassification case certified under FLSA 216(b) as a collective action and settled for $11,800,000.00); *Lapan v. Dicks Sporting Goods, Inc*., 1:13-cv-11390 (DCMA) (co-lead counsel on a misclassification case certified under FLSA 216(b) as a collective action and Rule 23 Class Action settled for $10,000,000.00); *Costello, et. al. v. Kohl's Illinois Inc. et. al*., 1:13-cv-1359 (S.D.N.Y.) (lead counsel on a wage and hour misclassification case certified under FLSA 216(b) as a collective action and settled for $4,000,000.00); *McKee v. Petsmart, Inc.,* 1:12-cv-01117 (D. Del.)(co-lead counsel on a wage and hour misclassification, certified under FLSA 216(b) as a collective action; and settled for $3,800,000.00); *Fischer, et. al. v. Kmart Corp.,* 3:13-cv-04116 (DCNJ)(co-lead counsel on a misclassification case certified under FLSA 216(b) as a collective action and Rule 23 Class Action settled $3,814,000.00); *Burns v. The TJX Companies, Inc*., (D. Mass.) (co-lead counsel on a wage and hour collective and class action, having settled for $4,750,000.00, *Roberts et al v. The TJX Companies Inc*. 1:13-cv-13142-ADB (D. Mass) Co-lead

11

counsel on wage and hour collective and class action pending approval *Martinez De Rodriguez, v. All Care Home Health Services, LLC*, No. 509728/2016, (NY. Sup. Ct. Kings County June 23, 2020)(settled for $2,400,000); *Cambridge v. Sheetz, Inc*., No. 1:17-CV-1649(DCNJ) (M.D. Pa. June 26, 2019)( certified under FLSA 216(b) as a collective action; and settled for $1,800,000) *Maar v. Beall's Inc,* 2:16-cv-14121 (S.D. FL.) (co-lead counsel on a wage and hour misclassification case Action settled $1,200,000.00); *Gervasio et.al. v. Wawa, Inc.* No. 3:17-CV-00245 (lead counsel on a wage and hour misclassification case certified under FLSA 216(b) as a collective action and settled for $1,400,000) *Ferreira v. Modell's Sporting Goods, Inc*., et al., 1:11-cv-02395 (S.D.N.Y.) (co-lead counsel on a wage and hour misclassification case certified under FLSA 216(b) as a collective action, settled); *Charles v. Nationwide Mutual Insurance Company, Inc*., 1:09-cv-0094 (E.D.N.Y) (co-lead counsel on a wage and hour "off the clock" claim, settled); *Morales, et al., v. Sovereign Bank*, Case No.: 13 160 02098 11 (co-lead counsel on a wage and hour misclassification case settled for $1,450,000.00 via mandatory arbitration); *"Doe's" v. "Smith" Corporation*, (a confidential seven figure settlement for five African Americans subjected to employment discrimination on the basis of their race); *Ogaian v. Bed Bath and Beyond, Inc., et al*., 12-cv-01273 (S.D.N.Y.)(co-lead counsel on a wage and hour misclassification matter, settled); *Dickerson-Muhammed v. West Customer Management Group, LLC*., Index No. 21322/2008 (Sup. Ct. County of Queens) (co-lead counsel on a wage and hour case resolved under a confidentiality agreement); *Caballero v. Zaloumis Contracting Service, et al.*, 1:11-cv-01121 (S.D.N.Y.) (co-lead counsel on a wage and hour matter resolved); *Bedoya, et. al. v. Level 42 Associates, LLC et al*., 14-cv-01333 (S.D.N.Y.)(counsel on a wage and hour collective and class action, settled) *Broussard Jr., et al. v. Stein Mart, Inc.,* No. 16-cv-3247 (lead counsel on a wage and hour misclassification case, settled); *Hallen v. Belk, Inc*., 4:16-cv-00055

12

(E.D. Tex.)(co-lead counsel on a wage and hour misclassification case, Collective action settled for $2,900,000.00); *Pulver v. Cafua Management Company, LLC,* et. al., 1:15-cv-08022 (S.D.N.Y.) (lead counsel on a wage and hour misclassification case, Collective action settled).

Other matters wherein our firm is lead or co-counsel include*: Qazi, et al. v. Stage Stores, Inc. d/b/a Peebles* No. 4:17-cv-00780( S.D. Texas) (co-lead counsel on a wage and hour misclassification case); *Garcia v Mini Mart, Inc, d/b/a Loaf 'N Jug, and EG (Retail) America, LLC,* 19–cv–01322 (D. Col.) (off-the-clock wage claim); *Horton v Love's Travel Stop and Country Stores, Inc,.* 1:19-cv-01193 (M.D. N.C.)(co-Lead Counsel on an Equal Pay Act case); *Brown v Barnes and Noble Inc*, 16-cv-7333(SDNY)(co-lead counsel on a wage and hour misclassification case); *Prulello, et. al., v. Francesca's Holdings Corp. et al.*., Case No. 1:17-cv-00565(DCNJ) (co-lead counsel on a wage and hour misclassification case); *Cox et al. v. Francesca's Holdings Corp. et al.*., 4:19-cv-02167(S.D. Tex.) (co-lead counsel on a wage and hour misclassification case); *Smith et al v. Grandvision USA, et al.* 1:20-cv-03541 (N.D. Ill.)(co-lead counsel on a wage and hour misclassification case); *Vasser et al. v. Mapco Express Inc.* 3:20-cv-00665 (M.D. Tenn.) (Off the clock wage claim); *McColley, et al. v. Casey's General Stores, Inc. et al* 2:18-cv-00072 (N.D. Ind.) (co-lead counsel on a wage and hour misclassification case); and *Miles et al. v. Cefco et al.* 7:20-cv-00143 ((W.D. Tex.)(lead counsel on a wage and hour misclassification case).  Attached hereto at **Exhibit 2** is a copy of a brief biography the Hepworth, Gershbaum & Roth, PLLC, firm.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true to the best of my knowledge, information and belief.

Dated: New York, New York
      December 3, 2020

By: s/*Marc S. Hepworth*         
Marc S. Hepworth