**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| KRISTOPHER LAWSON, VINCENT MCCLEERY, and SEAN MCMURRAN, Individually and on Behalf of All Other Persons Similarly Situated, | : : : : : | Case No.: 1:17-cv-01266-CCC |
| Plaintiffs, | : : | |
| -against- | : : | |
| LOVE'S TRAVEL STOPS & COUNTRY STORES, INC., | : : : | |
| Defendant. | : | |

## SETTLEMENT AGREEMENT

The Parties to this Civil Action, acting through their representatives and attorneys, enter into this Agreement concerning the amicable resolution of this Civil Action, subject to approval by the Court.

## 1.   DEFINITIONS

The terms set forth below shall have the meanings defined herein wherever used in this Agreement (including its exhibits).

**1.1**    "Agreement" means this written Settlement Agreement, which sets forth the terms of the settlement and final amicable resolution of this Civil Action.

**1.2**    "Approval Order" means the order to be entered by the Court: (a) approving the terms of this Agreement (subject to any modification that is acceptable to the Parties); and (b) approving the settlement and release of claims by Named Plaintiffs and the other FLSA Collective Members, as set forth herein. The proposed Approval Order that will be submitted to the Court with Named Plaintiffs' unopposed motion is attached as **Exhibit A**.

**1.3**    "Civil Action" means the above-captioned action, inclusive of the claims asserted therein pursuant to the federal Fair Labor Standards Act ("FLSA").

**1.4**    "Court" means the United States District Court for the Middle District of Pennsylvania (Magistrate Judge Martin C. Carlson).  The parties stipulate to the jurisdiction of Magistrate Judge Carlson for settlement approval purposes.

**1.5**    "Class Counsel" means Marc Hepworth, David A Roth, Charles Gershbaum, and Rebecca S Predovan, of the law firm HEPWORTH, GERSHBAUM & ROTH, PLLC, 192 Lexington Avenue, Suite 802, New York, New York 10016; and Gregg I. Shavitz, Paolo C. Meireles, and Logan A. Pardell, of the law firm SHAVITZ LAW GROUP, P.A.

**1.6**    "Defendant" means Love's Travel Stops & Country Stores, Inc.

**1.7**    "Defense Counsel" means Matthew J. Hank, Donald W. Myers, Rachel Fendell Satinsky, and Marc D. Esterow of Littler Mendelson, P.C.

**1.8**    "Effective Date" means the date upon which all of the following have occurred in the Civil Action: (a) entry of the Approval Order; (b) issuance of an order dismissing the Civil Action with prejudice and entering judgment in accordance with the terms of this Agreement (subject to any modification that is acceptable to the Parties); and (c) the expiration of the appeal rights of the Parties and FLSA Collective Members (which shall be deemed to be 31 days following entry of the order dismissing the Civil Action with prejudice and entering judgment in accordance with the terms of this Agreement, or if a timely notice of appeal is filed, shall be deemed to be 5 business days following the expiration of all such appeals and related proceedings without any material alteration of the terms of the Approval Order).

**1.9**    "FLSA Collective Representative" means Named Plaintiffs.

1.10    "FLSA Collective Members" means Named Plaintiffs and those individuals who filed written consents to join this action pursuant to 29 U.S.C. § 216(b)[1] and whose claims have not been withdrawn or dismissed.  The Parties have agreed upon a list of all FLSA Collective Members, which is attached to this Agreement as **Exhibit B**.  For purposes of settlement only, Defendant stipulates to the validity of the written consents filed by the FLSA Collective Members, the eligibility of the FLSA Collective Members to participate in the Civil Action, the right of the FLSA Collective Members to participate in the amicable resolution of the Civil Action in accordance with the terms of this Agreement, and to the certification of the FLSA Collective Members as an FLSA Collective pursuant to 29 U.S.C. § 216(b) (the "FLSA Collective").

1.11    "Settlement Amount" means the amount of money to be paid by Defendant in connection with this Agreement. The Settlement Amount consists of $2,950,000.00, plus the employer's share of payroll taxes and the Settlement Administrative Costs, as addressed below. The Settlement Amount is inclusive of the FLSA Collective Member Fund, the Service Payment Allocation, and the Attorneys' Fees and Expenses Payment, as addressed further herein.

a)    "FLSA Collective Member Fund" means the maximum of $1,500,000.00 to be paid by Defendant to FLSA Collective Members for their individual settlement payments, unless otherwise indicated herein.  Court-approved Service Payment Allocations shall be deducted from the FLSA Collective Member Fund, with the remainder to be allocated among the FLSA Collective Members in accordance with Section 3.3, below.

---

[1]    In addition to the Named Plaintiffs and others who opted into this Civil Action in advance of the Court's February 16, 2018 Order conditionally certifying the FLSA collective, and who have not otherwise withdrawn from the Civil Action whether voluntarily or by Court order, this includes all those individuals that opted into this Civil Action pursuant to the Court's February 16, 2018 Order authorizing notice of the Civil Action to be sent to "[a]ll individuals who [] were employed as operations managers by Love's Travel Stops & Country Stores, Inc. at any location within the United States at any time dating three years back from [February 16, 2018]," using the contact list provided by Defendant.  D.E. 68.

3

b)      "Service Payment Allocation" means the maximum of up to $10,000.00 allocated to each of the Named Plaintiffs; and the maximum of up to $2,500.00 allocated to each Larry Clifton, Richard Lynch Jr., Darryl Warren (collectively with Named Plaintiffs, "Service Award Recipients") for a total of $37,500.00, to be allocated from the FLSA Collective Member Fund, subject to Court approval, in exchange for their services on behalf of the FLSA Collective Members in this Civil Action.  Defendant will not oppose these requests.

c)      The "Attorneys' Fees and Expenses Payment" means the maximum of up to $1,450,000.00 to be paid to Class Counsel in accordance with the Approval Order, as attorney's fees, costs and expenses incurred in the Civil Action.  The Attorneys' Fees and Expenses Payment will account for an award of attorney's fees of up to $1,312,804.17 and an award of costs and expenses of up to $137,195.83, both based on actual fees and costs incurred to date.  Defendant will not oppose this request.  If the Court awards less than $1,450,000.00 as the total Attorneys' Fees and Expenses Payment, this shall not provide a basis for voiding this Agreement, or objecting to or appealing from the Approval Order.  Amounts not approved by the Court will remain with and be retained by Defendant.  Named Plaintiffs, FLSA Collective Members and Class Counsel expressly waive any rights that they may have to recover any other attorney's fees, costs and/or expenses relating to the Civil Action.

1.12    "Named Plaintiffs" means Plaintiffs Kristopher Lawson, Vincent McCleery, and Sean McMurran.

1.13    "Parties" means Named Plaintiffs in their own capacity as well as in their capacity as FLSA Collective Representatives (on behalf of themselves and all FLSA Collective Members) and Defendant.

**1.14**    "Released Parties" means: (a) Love's Travel Stops & Country Stores, Inc. and (b) the predecessors, successors, present and former affiliates, future affiliates, parents, Advisory Board, subsidiaries, insurers, officers, directors, agents, members, shareholders, unitholders, general partners, limited partners, owners, beneficiaries, representatives, heirs, attorneys, assigns (including without limitation, any investors, trusts, or other similar or affiliated entities) of, and all persons acting by, through, under or in concert with, any of the entities identified in subsection (a) of this section, including, but not limited to, any person or entity that was or could have been named as a defendant in the Civil Action.

**1.15**    "Settlement Administrator" means JND Settlement Administration.

**1.16**    "Settlement Administrative Costs" means the fees and costs of the Settlement Administrator, not to exceed twenty-thousand dollars ($20,000), for the administrative services it will provide and its expenses in connection with those services under this Agreement. Defendant will pay the Settlement Administrative Costs as part of the Settlement Amount.  The Parties agree to cooperate in the settlement administration process and to make all reasonable efforts to control and minimize the costs incurred in the administration of the settlement.

## 2.    <u>RECITALS</u>

**2.1.**    Named Plaintiffs brought this Civil Action under the FLSA on behalf of individuals who were employed by Defendant in the position of Operations Manager. Named Plaintiffs assert that they and FLSA Collective Members worked in excess of 40 hours per week during their employment with Defendant in the position of Operations Manager and that Defendant was required to pay them at a rate of one and one-half times their regular rate for all hours worked in excess of 40 hours per week. Named Plaintiffs seek compensation for unpaid overtime

compensation, as well as other relief under the FLSA, including liquidated damages, interest, litigation costs and expenses, and attorney's fees.

2.2.    Defendant denies the allegations in the Civil Action and states that it did not violate the law and that it has no liability for any claims asserted in the Civil Action. Defendant contends that Named Plaintiffs and FLSA Collective Members were properly classified as employees exempt from the overtime protections of the FLSA, and thus were fairly and adequately compensated for the work they performed. Nonetheless, Defendant has agreed to the terms of this Agreement because it will: (1) avoid the further expenses and disruption of business due to the pendency and expense of the litigation; and (2) put the claims asserted in the Civil Action to rest.

2.3.    On June 3, 2020, the Parties met with Mediator Hunter R. Hughes, III to attempt to negotiate a resolution of the Civil Action. As a result of the mediation, the parties reached a settlement-in-principle, which is intended to be a full and final resolution of the Civil Action and all released claims as discussed herein.

2.4.    This Agreement reflects a compromise of disputed claims. Nothing in this Agreement shall be deemed or used as evidence of, or as an admission of, liability by Defendant or any of the Released Parties, or of any fault or wrongdoing whatsoever, or as evidence that, or as an admission that, this action may proceed as a collective action under the FLSA for any purpose other than settlement.

2.5.    It is the desire of Named Plaintiffs and all FLSA Collective Members to fully, finally, and forever settle, compromise, and discharge all claims that were asserted or that could have been asserted in the Civil Action related to the payment of regular or overtime wages, including but not limited to all claims, demands, and causes of action for unpaid regular and/or overtime wages, penalties, liquidated damages, interest, costs, attorney's fees, and any other relief

under the FLSA, 29 U.S.C. §§ 201, *et seq.*, as well as any similar state or local law governing the payment of regular or overtime wages, arising out of work performed for Defendant as an overtime exempt-classified Operations Manager at any time up until and including execution of this Agreement, however excluding all Equal Pay Act, gender discrimination claims, and/or sex or gender based claims that were asserted or that could have been asserted in the action *Horton v. Love's Travel Stops & Country Stores, Inc.*, No. 19 Civ. 1193 (M.D.N.C.).

      **2.6.**    It is the intention of the Parties that this Agreement shall constitute a full and complete settlement and release of all Released Claims as defined in Section 5 herein against all Released Parties.

      **2.7.**    In exchange for (a) the dismissal of Civil Action with prejudice; (b) the settlement and release of all Released Claims as defined in Section 5 herein against all Released Parties; and (c) otherwise subject and pursuant to the terms and conditions of this Agreement, Defendant has agreed to pay the Settlement Amount.

      **2.8.**    The Parties shall cooperate in the formal steps necessary to carry out the terms set forth in this Agreement, which is subject to approval by the Court.

**3.**    **APPROVAL AND NOTICE PROCEDURES**

      **3.1**    The Parties shall seek Court approval of this Agreement. The Parties agree that Named Plaintiffs will file with the Court, if possible no later than thirty (30) days following the date on which this Agreement is executed by all Parties, an unopposed motion for entry of the Approval Order as an Order of Court. The motion shall be prepared and filed by Class Counsel, with  Defense Counsel being provided the opportunity to review same in advance of filing.

**3.2     Notice and Claims Procedure for FLSA Collective Members.**

      **a)**     Not later than  fifteen (15) business days after the date the Court enters the Approval Order as an Order of Court, Defendant will provide the Settlement Administrator and Class Counsel with an Excel chart listing for each FLSA Collective Member listed in **Exhibit B**, their: (1) name; (2) dates of employment as an exempt-classified Operations Manager; (3) state(s) of employment as an overtime exempt-classified Operations Managers; and (4) social security number.  Likewise, not later than fifteen (15) business days after the date the Court enters the Approval Order, Class Counsel will provide the Settlement Administrator with an Excel chart listing for each FLSA Collective Member listed in **Exhibit B**, their: (1) name; and (2) last known address; and (3) last known e-mail address.  The Settlement Administrator must have in place an effective information and data security program capable of protecting the personal information of the FLSA Collective Members.  In addition, the Settlement Administrator must contractually obligate itself to maintain reasonable physical, administrative, and technical controls to protect such information.  The Parties' counsel may object to the selection of a Settlement Administrator that does not pass the assessment process or that will not agree to reasonable contractual commitments regarding the security of Putative Collective Members' information.

      **b)**     Within seven (7) business days of the funding of the Qualified Settlement Fund, as discussed in Section 4.3 below, the Settlement Administrator shall mail, via First Class United States mail, the Notice of Settlement of Collective Action Lawsuit ("Notice") in the form attached as **Exhibit C** and a Settlement Check reflecting the recipient's share of the FLSA Collective Member Fund ("Notice Packet") to all FLSA Collective Members using each individual's last known address (except that the Settlement Administrator shall perform a national change of address database review prior to mailing).  If a Notice is returned to the Settlement

Administrator with a forwarding address, the Notice shall be re-mailed by the Settlement Administrator within three (3) business days following receipt of the returned mail to the address indicated. If a Notice is returned to the Settlement Administrator without a forwarding address, the Settlement Administrator shall undertake reasonable efforts (such as skip traces) to search for the correct address, and shall promptly re-mail the Settlement Notice to any newly found address(es). At the same time that Notice Packets are initially issued via First Class United States mail, the Settlement Administrator shall e-mail the Notice to all FLSA Collective Members for which an e-mail address was provided by Class Counsel, with the clarification that the recipient's Settlement Check has been issued via First Class United States mail.

**3.3**     **Allocation of the FLSA Collective Member Fund.**

      **a)**     Net Fund.   The amount approved by the Court for the Service Payment Allocation shall be deducted from the FLSA Collective Member Fund to obtain a "Net Fund."

      **b)**     Each FLSA Collective Member shall be allocated a portion of the Net Fund pursuant to the following allocation formula:

           **i)**     Each Named Plaintiff and FLSA Collective Member employed by Defendant anywhere in the United States shall be compensated on a *pro rata* basis, based on each week worked as an exempt-classified Operations Manager, at any time from the longer of three years prior to each such individual filing a Consent to Join form in the Civil Action, or from February 16, 2015, in either event through execution of this Agreement.

           **ii)**     The calculation of all workweeks pursuant to paragraphs (i) above shall be based on Defendant's business records.

iii) To calculate each Named Plaintiff and FLSA Collective Member's proportionate share:

    **1.** Add all eligible workweeks for each Named Plaintiff and FLSA Collective Member together to obtain the "Total Denominator";

    **2.** Divide the number of eligible workweeks for each Named Plaintiff and FLSA Collective Member by the Total Denominator to obtain each Named Plaintiff and FLSA Collective Member's "Portion of the Net Fund."

iv) Multiply each Named Plaintiff and FLSA Collective Member's Portion of the Net Fund by the Net Fund to determine each Named Plaintiff and FLSA Collective Member's "Gross Individual Settlement Payment." If any Named Plaintiff's or FLSA Collective Member's Portion of the Net Fund is less than $200.00, their allocation shall be increased to $200.00 with a *pro rata* reduction to all other FLSA Collective Members' Gross Individual Settlement Payments. The final sum of the Gross Individual Settlement Payments for the Named Plaintiffs and FLSA Collective Members shall equal the Net Fund. The Gross Individual Settlement Payment shall be disclosed in each respective Named Plaintiff's and FLSA Collective Member's Notice. A Gross Individual Settlement Payment will be paid to each Named Plaintiff and FLSA Collective Member, with appropriate taxes withheld as further described herein, via a Settlement Check.

4.    **PAYMENT OBLIGATIONS**

4.1    Within fourteen (14) business days after receiving Excel spreadsheets contemplated in Section 3.2(a) above, the Settlement Administrator will provide the Parties with a register of all FLSA Collective Members, the total amount to be paid to them under the terms of the Agreement, the total amount necessary to satisfy all individual payments to the FLSA Collective Members, the total amounts necessary to pay the approved Attorneys' Fees and Expenses Payment, the total amount necessary to pay the employer's share of payroll taxes arising out of the individual payments to FLSA Collective Members, and the total Settlement Administrative Costs.

4.2    No later than fourteen (14) business days after the Effective Date, Defendant shall remit to the Settlement Administrator the total amount of funds required to satisfy its obligations under this Agreement, as advised by the Settlement Administrator in accordance with Section 4.1 above.   Payment will be by wire transfer to a Qualified Settlement Fund established by the Settlement Administrator with a depository bank chosen by the Settlement Administrator.

a)    The Qualified Settlement Fund is intended by the Parties to be a qualified settlement fund as described in Section 468B of the Internal Revenue Code of 1986, as amended, and Treas. Reg. Section 1.468B-1, *et seq*.  The account shall be established as a qualified settlement fund within the meaning of Section 468B of the Internal Revenue Code of 1986, as amended, the Treas. Reg. Section 1.468B-1, *et seq.*, and shall be administered by the Settlement Claims Administrator, subject to the ultimate authority of the Court.

4.3    Within seven (7) business days after funding to the Qualified Settlement Fund, the Settlement Administrator shall distribute the funds to FLSA Collective Members in the manner described in Section 3, above; the approved Attorneys' Fees and Expenses Payment to Class Counsel (so long as Class Counsel has provided the Settlement Administrator with their tax-payer

identification number(s), executed W-9 form(s), wire instruction(s), mutual written instruction(s) regarding the allocation of the payment among the firms comprising Class Counsel, and any other information required to facilitate the distribution); and the approved Service Payment Allocation via First Class United States mail, according to the amounts due and owing to each of them pursuant to the terms of the Approval Order and this Agreement.

**4.4**     For income and payroll tax purposes, fifty percent (50%) of the Court-approved individual shares of the FLSA Collective Member Fund shall be treated as wages (and subject to required withholdings and deductions and reported as wage income), and the remaining fifty percent (50%) of each such adjusted payment, as well as one-hundred percent (100%) of each payment made in satisfaction of the Court-approved Service Payment Allocation, shall be treated as liquidated damages, interest and other non-wage recovery (and shall not be subject to withholdings or deductions and shall be reported as non-wage other income in Box 3 of a Form 1099-MISC).

**4.5**     Other than the withholding and reporting requirements herein, the FLSA Collective Members shall be solely responsible for the reporting and payment of their share of any federal, state and/or local income or other taxes on payments received pursuant to this Agreement. The employee portion of all applicable income and payroll taxes will be the responsibility of the individual FLSA Collective Member, who agrees to indemnify and hold harmless the Released Parties, Class Counsel, and Defense Counsel for any tax liability, including penalties and interest, arising out of or relating to their failure to pay taxes on any amounts paid pursuant to this Agreement.  All applicable employer payroll tax amounts associated with the payments described in this Agreement to the FLSA Collective Members, including the employer share of FICA, FUTA, and SUTA/SUI, shall be paid by Defendant as part of the Settlement Amount, and Defendant shall

bear all responsibility with respect to the employer's share of payroll taxes. The Settlement Administrator shall be responsible for calculating and remitting to the tax authorities all payroll taxes, as well as the employer share of FICA, FUTA, and SUTA/SUI, for payments out of these allocations.

4.6     Except as otherwise provided herein, the Parties and FLSA Collective Members shall bear responsibility for their own fees, costs, and expenses incurred by them or arising out of this Civil Action and will not seek reimbursement thereof from any of the other Parties or any of the Released Parties.

4.7     The FLSA Collective Members will have one hundred eighty (180) days from the date the checks are issued to negotiate them. One hundred twenty (120) days from the date of mailing of the checks, the Settlement Administrator will provide Class Counsel with a report reflecting which individuals have not yet negotiated their checks. Class Counsel will be free to contact any such individuals to encourage them to promptly negotiate their checks. After one hundred eighty (180) days from the date the checks are issued, the Settlement Administrator shall stop payments on any checks issued to FLSA Collective Members that have not been negotiated, and corresponding funds shall be remitted by the Settlement Administrator to the Children's Miracle Network Hospitals as the *Cy Pres* Recipient. FLSA Collective Members shall be bound by the terms of this Agreement, even if they fail to timely negotiate their checks.

4.8     Released Parties, Class Counsel, and Defense Counsel will not be liable for checks cashed by persons other than the FLSA Collective Members.  Each such individual will be deemed to have released the Released Parties from all liability as set forth in this Agreement even if his or her check is cashed by a person other than to whom the check is written.

**4.9** Payments made under this Agreement are not intended to and will not: (1) form the basis for additional contributions to, benefits under, or any other monetary entitlements under; (2) count as earnings or compensation with respect to; or (3) be considered to apply to, or be applied for purposes of, any bonus, pension, any 401(k) and/or other retirement plans or similar programs of any of the Released Parties.

**5.    RELEASES**

**5.1    Release of Claims by Named Plaintiffs and all FLSA Collective Members.**

**a)** By operation of this Agreement and the Approval Order, and except as to such rights or claims as may be created by this Agreement or those non-waivable by law, each Named Plaintiff and all FLSA Collective Members shall hereby irrevocably and unconditionally forever and fully release and covenant not to sue or otherwise pursue claims against Defendant and all Released Parties from any and all claims that were asserted or that could have been asserted in this Civil Action related to the payment of regular or overtime wages, including but not limited to all claims, demands, and causes of action for unpaid regular and/or overtime wages, penalties, liquidated damages, interest, costs, attorney's fees, and any other relief under the federal FLSA, 29 U.S.C. § 201, *et seq.*, as well as any similar state or local law governing the payment of regular or overtime wages, arising out of work performed for Defendant as an overtime exempt-classified Operations Manager at any time until and including execution of this Agreement (collectively, the "Released Claims"). The Released Claims further include all claims for miscalculated wages, improper deduction(s), late payment of wages, premium pay, commissions, bonuses, improper rounding of time records; and as it applies to any wage and hour claims, breach of contract, implied contract, quantum meruit, unjust enrichment, promissory estoppel, equitable estoppel, fraud, negligent misrepresentation, conversion, failure to keep accurate and complete payroll records, and any other claims or relief of any kind under tort, contract, quasi-contract, injunctive relief

14

theories or claims, any claims related to 401k or pension plans, or under or derived from the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, to the extent such ERISA claims are premised on an alleged failure to credit any pension plan, health plan or other employer sponsored benefit plan account or benefits based upon and within the above defined scope of claims release.  Specifically excluded from Released Claims are all Equal Pay Act, gender discrimination claims, and/or sex or gender based claims that were asserted or that could have been asserted in the action *Horton v. Love's Travel Stops & Country Stores, Inc.*, No. 19 Civ. 1193 (M.D.N.C.).

**b)**     Named Plaintiffs, as the FLSA Collective Representatives, on behalf of themselves and all FLSA Collective Members, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any of the Released Claims or any portion thereof or interest therein, including but not limited to, any interest in the Civil Action, or any related action.

**5.2**     **Provisions Applicable to Service Award Recipients.**

**a)**     In addition to the claims released as set forth in Section 5.1 above, Service Award Recipients, including Named Plaintiffs, shall execute the General Release of Claims attached hereto as **Exhibit D**.

**5.3**     **Confidentiality**.

**a)**      The Parties and their Counsel agree not to disclose the terms of this Agreement to the media.

**b)**     The Parties and their Counsel shall also refrain from issuing, or causing anyone to issue, any press release, press conference or other publicity (including Class Counsel's websites or social media communications) disclosing the terms of this Agreement or anything about the negotiations leading up to this Agreement.

c)      If the Parties or Class Counsel are asked about this Agreement or anything about the negotiations leading up to this Agreement by the media , they must state only that the dispute has been resolved and that they are not allowed to comment further on the matter.

## 6.    PARTIES' AUTHORITY

**6.1**    All Parties have been represented by counsel throughout all negotiations which preceded the execution of this Agreement and this Agreement is made with the consent and advice of counsel. Class Counsel represent that the terms and conditions of this settlement are fair, reasonable, adequate, beneficial to and in the best interest of Named Plaintiffs and the FLSA Collective Members. Named Plaintiffs, as the FLSA Collective Representatives, and Class Counsel represent that they are fully authorized to enter into this Agreement and to bind the FLSA Collective Members to the terms and conditions thereof. Class Counsel and Named Plaintiffs (as the FLSA Collective Representatives) represent that by filing written consents to join this Civil Action, the other FLSA Collective Members: (a) consented and agreed to be bound by any judgment of the Court or any settlement of this Civil Action that the Court reviews and determines to be fair and reasonable; and (b) authorized Named Plaintiffs and Class Counsel to act as their agents and to negotiate a settlement in this Civil Action, subject to a review for fairness by the Court.

**6.2**    All of the Parties acknowledge that they have been represented by competent, experienced counsel throughout all negotiations which preceded the execution of this Agreement, and this Agreement is made with the consent and advice of counsel who have jointly prepared this Agreement.

**6.3**    It is agreed that because the FLSA Collective Members are so numerous, it is impossible or impractical to have each member execute this Agreement. The Notice will advise

all FLSA Collective Members of the binding nature of the release as described in this Agreement, and that the release will have the same force and effect as if this Agreement were executed by each member of the FLSA Collective Member.

6.4    The Agreement will be binding upon and inure to the benefit of the Parties and their respective heirs, trustees, executors, administrators, successors, and assigns.

## 7.    ADDITIONAL PROVISIONS

7.1    The Parties agree to use their best efforts and to fully cooperate with each other to accomplish the terms of this Agreement in a reasonable, practicable, and expeditious manner, including but not limited to, execution of such documents and to take such other action as may reasonably be necessary to implement and effectuate the terms of this Agreement.

7.2    Upon the dismissal of the Civil Action, at Defendants request following the close of discovery in *Horton v. Love's Travel Stops & Country Stores, Inc.*, No. 19 Civ. 1193 (M.D.N.C.), Named Plaintiffs, Class Counsel, and the FLSA Collective Members shall destroy or deliver to Defense Counsel any and all documents produced in this matter and designated as "confidential" by Defendant in the Action within twenty-one (21) business days of such request, and they shall not retain any copies or derivatives thereof.  Class Counsel shall send a certification to counsel for Defendant confirming compliance with this provision.  Notwithstanding this provision, Class Counsel may retain an archival copy of all pleadings, motion papers, transcripts, expert reports, legal memoranda, internal or external correspondence, or attorney work product, even if such materials contain documents produced in this matter and designated as "confidential" by Defendant in the Action.

7.3    Unless otherwise specifically provided herein, all notice, demands or other communications given hereunder shall be in writing and shall be deemed to have been duly given

as of the third business day after mailing by United States registered or certified mail, return receipt

requested, addressed as follows:

      To the Named Plaintiffs/FLSA Collective Members:

          Marc Hepworth
          HEPWORTH, GERSHBAUM & ROTH, PLLC
          192 Lexington Avenue
          Suite 802
          New York, New York 10016)

          -and-

          Gregg I. Shavitz
          SHAVITZ LAW GROUP, P.A.
          951 Yamato Rd, Suite 285
          Boca Raton, FL 33431

      To Defendant:

          Matthew Hank
          Littler, Mendelson, P.C.
          Three Parkway
          1601 Cherry Street, Suite 1400
          Philadelphia, PA 19102-1321

**7.4**     To be effective, any amendment to the Agreement must be made in writing and

signed by counsel for the Parties, and approved by the Court.

**7.5**     This Agreement and its attachments constitute the entire agreement between the

Parties concerning the subject matter hereof. No extrinsic oral or written representations or terms

shall modify, vary, or contradict the terms of this Agreement. In the event of any conflict between

the Agreement and any other document, the Parties intend that this Agreement shall be controlling.

**7.6**     This Agreement shall be subject to, governed by, construed, enforced, and

administered in accordance with the laws of the Commonwealth of Pennsylvania, both in its

procedural and substantive aspects, and shall be subject to the continuing exclusive jurisdiction of

the Court to interpret and enforce the provisions of this Agreement; to supervise the administration

and distribution of the resulting settlement funds; and to hear and adjudicate any dispute or litigation arising from or related to this Agreement or the issues of law and facts asserted in the Civil Action. This Agreement shall be construed as a whole according to its fair meaning and intent, and not strictly for or against any party, regardless of who drafted or who was principally responsible for drafting this Agreement or any specific term or condition thereof.

7.7    This Agreement may be executed in counterparts, including by electronic means, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original and, when taken together with other signed counterparts, shall constitute one Agreement, which shall be binding upon and effective as to all Parties.

7.8    The Named Plaintiffs, Class Counsel, and Defense Counsel agree not to encourage FLSA Collective Members to refrain from depositing or otherwise negotiating their Settlement Checks. Defendant may communicate about the Agreement with their current employees who are FLSA Collective Members for the exclusive purpose of encouraging them to deposit or otherwise negotiate their Settlement Checks, consistent with the terms and provisions of this Agreement. Defendant will not take any adverse action against any current employees who are FLSA Collective Members because of their decision to deposit or otherwise negotiate their Settlement Checks.

7.    If the Court declines to enter, in the form submitted by the Parties as contemplated under this Agreement (or any amended version agreed upon by the Parties), the Approval Order, or if the settlement as agreed does not become final for any other reason, the Parties agree to meet and confer in an attempt to address the Court's concerns that precluded approval, and if feasible, to resubmit the settlement for approval within thirty (30) business days. If the Parties are unsuccessful, then there shall be no prejudice due to lapse of time to either side and the Parties

may proceed with litigation as it existed on the date of the execution of this Agreement. If this Agreement is not approved, the case will proceed as if no settlement had been attempted, and Defendant retains the right to contest whether this case should be maintained as a collective action and to contest the merits of any claims being asserted in the Civil Action.

**IN WITNESS WHEREOF**, and intending to be legally bound, the Parties hereby execute this Agreement on the dates indicated below:

Dated: _____

_____
Named Plaintiff Kristopher Lawson
On Behalf of Himself and as an FLSA Collective Members

Dated: _____

_____
Named Plaintiff Vincent McCleery
On Behalf of Himself and as an FLSA Collective Members

Dated: _____

_____
Named Plaintiff Sean McMurran
On Behalf of Himself and as an FLSA Collective Members

Dated: _____

_____
_____
Love's Travel Stops & Country Stores, Inc.

Title:

may proceed with litigation as it existed on the date of the execution of this Agreement. If this Agreement is not approved, the case will proceed as if no settlement had been attempted, and Defendant retains the right to contest whether this case should be maintained as a collective action and to contest the merits of any claims being asserted in the Civil Action.

**IN WITNESS WHEREOF**, and intending to be legally bound, the Parties hereby execute this Agreement on the dates indicated below:

Dated: _____

_____
Named Plaintiff Kristopher Lawson
On Behalf of Himself and as an FLSA Collective Members

Dated: _____

_____
Named Plaintiff Vincent McCleery
On Behalf of Himself and as an FLSA Collective Members

Dated: _____

_____
Named Plaintiff Sean McMurran
On Behalf of Himself and as an FLSA Collective Members

Dated: 10/14/2020

_____
Love's Travel Stops & Country Stores, Inc.

Title: Manager of Risk

20

may proceed with litigation as it existed on the date of the execution of this Agreement. If this Agreement is not approved, the case will proceed as if no settlement had been attempted, and Defendant retains the right to contest whether this case should be maintained as a collective action and to contest the merits of any claims being asserted in the Civil Action.

**IN WITNESS WHEREOF**, and intending to be legally bound, the Parties hereby execute this Agreement on the dates indicated below:

Dated: _____

_____
Named Plaintiff Kristopher Lawson
On Behalf of Himself and as an FLSA Collective Members

Dated: _____

_____
Named Plaintiff Vincent McCleery
On Behalf of Himself and as an FLSA Collective Members

Dated: _____

_____
Sean and Mary McMurran (Oct 2, 2020 11:25 PDT)
Named Plaintiff Sean McMurran
On Behalf of Himself and as an FLSA Collective Members

Dated: _____

_____
_____
Love's Travel Stops & Country Stores, Inc.

Title:

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| KRISTOPHER LAWSON, VINCENT MCCLEERY, and SEAN MCMURRAN, Individually and on Behalf of All Other Persons Similarly Situated, | : : : : : | Case No.: 1:17-cv-01266-CCC |
| Plaintiffs, | : : | |
| -against- | : : | |
| LOVE'S TRAVEL STOPS & COUNTRY STORES, INC., | : : : | |
| Defendant. | : | |

**ORDER APPROVING COLLECTIVE ACTION SETTLEMENT**

THIS MATTER came before the Court upon Plaintiffs' Unopposed Motion for Approval of Settlement of Collective Action and to Dismiss Action with Prejudice.  Having reviewed the Motion and all accompanying papers, and the Court being otherwise fully advised, it is ORDERED AND ADJUDGED as follows:

Plaintiffs' Motion is GRANTED.  The Court finds that the Parties' Settlement in this Fair Labor Standards Act action is fair, reasonable, and just.

1. The Parties' Settlement and all of its terms is APPROVED. The Claims Administrator is authorized to send the notices and issue payments pursuant to the terms of the Settlement.

2. This Action is DISMISSED WITH PREJUDICE.

3. This Court will RETAIN JURISDICTION to enforce the Settlement until the conclusion of the settlement administration process.

4. The case is closed.

**So ordered.**

_____
**Martin C. Carlson**
**UNITED STATES MAGISTRATE JUDGE**

# EXHIBIT B

| Name | Emp Num. | OM Date Start | OM Date End |
|---|---|---|---|
| ABEL, AARON | 4535 | 3/11/2015 | 1/24/2017 |
| ADKINS, DANIEL JASON | 151890 | 1/27/2016 | 10/16/2016 |
| ALDERETE, EMMANUEL | 2032 | 3/11/2015 | 5/19/2015 |
| ALFORD, CLIFFORD L JR. | 189716 | 10/10/2016 | 12/13/2016 |
| ALLEN, ANTHONY GEORGE | 187186 | 8/24/2016 | 9/18/2017 |
| ALZNER, EARL HENRY | 177707 | 9/21/2016 | 2/16/2018 |
| ANDERS, JOSHUA JAMES | 2152 | 3/11/2015 | 5/20/2016 |
| ANDERSON, JERAMIAH ADAM | 150816 | 3/11/2015 | 8/4/2015 |
| ANDREWS, JOHN RANDALL | 188990 | 10/17/2016 | 12/6/2017 |
| APPLE, RANDY LEE | 2509 | 3/11/2015 | 7/14/2015 |
| ARGUELLO MORA, EDDIE ELADIO | 146984 | 3/11/2015 | 2/16/2018 |
| ARMSTRONG, DEIDRE DENNETT | 206608 | 8/16/2017 | 2/16/2018 |
| AVERETT, KEVIN LEE | 2040 | 1/8/2017 | 2/16/2018 |
| AYERS, PERRY WILLIAM | 9654 | 3/11/2015 | 12/22/2015 |
| BAILEY, SHANON VENABLE | 2500 | 3/11/2015 | 6/30/2016 |
| BALLARD, TEDDY BEAR | 179679 | 4/25/2016 | 8/14/2016 |
| BARGER, JAMES C. | 168794 | 9/21/2015 | 9/26/2017 |
| BASCO, RAYMOND JOHN | 179103 | 4/18/2016 | 7/10/2017 |
| BATES, STEPHEN | 148765 | 3/11/2015 | 7/20/2016 |
| BECKOM, STEVEN | 8002 | 3/11/2015 | 1/2/2018 |
| BEJARANO, OSCAR LEONARDO | 151202 | 3/11/2015 | 2/21/2017 |
| BELL, ADAM KYLE | 3207 | 3/11/2015 | 11/1/2016 |
| BENNETT, SAMUEL JOHN | 165667 | 7/20/2016 | 11/1/2016 |
| BHARDWAJ, MANU | 160526 | 4/6/2015 | 11/1/2016 |
| BIAS, BRENDA SUE | 3134 | 3/11/2015 | 9/11/2015 |
| BILKA, DONALD ROY | 14495 | 3/11/2015 | 7/1/2015 |
| BILLETER, JOSEPH GLEN | 183853 | 6/29/2016 | 9/9/2017 |
| BITTNER, JOHN | 168553 | 12/29/2015 | 2/16/2018 |
| BLACKSHEAR, BRANDON LEE | 1668 | 3/11/2015 | 12/27/2016 |
| BLAKENEY, LAWRENCE MICHAEL | 193674 | 12/20/2016 | 2/9/2018 |
| BLAUM, CAMERON MARK | 4274 | 3/11/2015 | 11/1/2016 |
| BORST, DAVID L. | 12667 | 3/11/2015 | 6/23/2015 |
| BOSCO, ANTHONY WAYNE | 197035 | 2/27/2017 | 7/25/2017 |
| BOTHWELL, SHABRIEKA KEANDRA | 148408 | 5/2/2016 | 7/21/2016 |
| BOXLEY, MICHAEL ANTHONY | 169094 | 9/28/2015 | 9/26/2016 |
| BRADFORD, DAVID L | 169126 | 12/29/2015 | 9/18/2016 |
| BRADFORD, SEAN DANIEL | 209620 | 8/30/2017 | 2/16/2018 |
| BRADLEY, EDWARD KEITH | 153782 | 3/23/2015 | 6/29/2015 |
| BRANHAM, JORDAN CHARLES | 216718 | 12/18/2017 | 2/16/2018 |
| BRANT, JASON L. | 161613 | 4/27/2015 | 7/17/2015 |
| BRENNAN MICHAEL TROY | 151969 | 5/6/2015 | 5/15/2016 |
| BRIDGES, DAWN A. | 13266 | 3/11/2015 | 11/24/2015 |

| | | | |
|---|---|---|---|
| BROOKS, CHRISTOPHER PAUL | 195600 | 1/25/2017 | 2/16/2018 |
| BROWN, KEVIN | 4605 | 6/28/2015 | 8/5/2015 |
| BROWN, RONNIE ALLEN | 217208 | 12/11/2017 | 2/16/2018 |
| BRUS, MICHAEL S. III | 201852 | 5/15/2017 | 2/16/2018 |
| BURCHAM, TERRY LEE | 5858 | 3/11/2015 | 11/1/2016 |
| BURGIEN, CHRISTOPHER ROBERT MICHAEL | 2668 | 3/11/2015 | 9/20/2016 |
| BUTTRICK, THOMAS JOHN JR. | 165217 | 12/29/2015 | 2/27/2016 |
| CADARETTE, MATTHEW ALLEN | 5309 | 10/28/2015 | 5/31/2016 |
| CALANDRINO, LOUIS ANTHONY | 4132 | 3/11/2015 | 5/26/2015 |
| CALDWELL, LLOYD ALLEN JR. | 13654 | 3/11/2015 | 5/19/2015 |
| CALIGNAOAN, ROMANO KEITH | 151894 | 3/11/2015 | 6/21/2015 |
| CALLAN JEFFREY F. | 175234 | 2/10/2016 | 2/16/2018 |
| CAMPOS, DAVID RAY | 9690 | 3/11/2015 | 4/16/2015 |
| CANFIELD, JUSTIN | 150985 | 3/11/2015 | 5/23/2015 |
| CAPERONIS, PAUL | 189168 | 10/17/2016 | 2/16/2018 |
| CARPER, DANIEL L. | 200597 | 4/24/2017 | 1/19/2018 |
| CARTER, ROBERT JOSEPH | 177833 | 3/28/2016 | 7/8/2016 |
| CASSIDY, NATALIE | 210963 | 11/6/2017 | 2/16/2018 |
| CAVANNA, MIGUEL | 192308 | 12/12/2016 | 8/20/2017 |
| CAVENER, BRIAN RICHARD | 6324 | 3/11/2015 | 10/18/2016 |
| CHAPELL, DAVID ERIC GORDON | 9207 | 3/11/2015 | 5/16/2015 |
| CHARLES, JOHNIE JR. | 189605 | 3/1/2017 | 2/16/2018 |
| CHERRY, TIMOTHY JAMES | 174806 | 2/23/2016 | 3/1/2017 |
| CLAYTON, MARK JOSEPH | 8801 | 8/12/2015 | 8/25/2015 |
| CLIFTON, LARRY GLENN | 2598 | 3/11/2015 | 8/6/2016 |
| COLE, CHARLES JULIAN | 145604 | 3/11/2015 | 4/2/2015 |
| COLEMAN, MICHAEL GLEN | 149540 | 3/11/2015 | 5/19/2017 |
| COLLEY, RICHARD DARRELL | 177236 | 3/16/2016 | 3/15/2017 |
| COLON, NIDIA | 10568 | 7/20/2016 | 11/1/2016 |
| COOK, NATHAN WILLIAM | 204900 | 6/26/2017 | 8/3/2017 |
| COOPER, DUSTIN RAY | 167527 | 9/21/2015 | 11/1/2016 |
| COSTLEY, RAYMOND R. | 11363 | 3/11/2015 | 8/18/2015 |
| COTTON, ROBIN DARLENE | 2552 | 3/11/2015 | 8/5/2015 |
| COX, CHRISTOPHER A. | 3824 | 3/11/2015 | 11/1/2016 |
| CREAGOR, CHRISTOPHER | 166833 | 12/29/2015 | 3/11/2016 |
| CREASMAN, ROBERT MICHAEL | 4265 | 3/11/2015 | 2/16/2016 |
| CUTLIP, NICHOLAS | 10491 | 3/11/2015 | 3/27/2015 |
| DAUGHERTY, ZACHERY | 6988 | 3/11/2015 | 5/19/2015 |
| DAUGHTRY, CODY DONOVAN | 173103 | 12/29/2015 | 4/6/2016 |
| DE LEON, ALEJANDRO | 175094 | 1/4/2017 | 6/5/2017 |
| DELANEY, GREGORY HARRIS | 145742 | 3/11/2015 | 1/3/2016 |
| DELEON, CHRISTOPHER DAVID | 152655 | 4/6/2016 | 10/3/2017 |
| DENN, STEVEN S. | 188212 | 10/3/2016 | 4/25/2017 |

| | | | |
|---|---|---|---|
| DENSTORFF, SYDNEY | 196207 | 2/6/2017 | 1/10/2018 |
| DICKERSON, PHILIP | 160013 | 3/25/2015 | 2/16/2018 |
| DIGNAN, MATTHEW MICHAEL | 2973 | 4/4/2016 | 2/9/2017 |
| DOMINGUEZ, EDWARD | 4957 | 3/11/2015 | 11/1/2016 |
| DONALD, PHILLIP CHARLES JR. | 160524 | 4/6/2015 | 9/15/2017 |
| DOWD, KEVIN GEORGE | 112619 | 3/11/2015 | 2/18/2018 |
| DUGGER, JAY SCOTT | 148119 | 6/13/2016 | 2/16/2018 |
| DUNN, COTY RAY | 150668 | 3/11/2015 | 8/19/2015 |
| DYKES, JAMES ROBERT JR. | 5879 | 3/11/2015 | 7/14/2015 |
| EDWARDS, TRACY | 5669 | 5/24/2016 | 6/15/2016 |
| ELLEDGE, GLEN | 178128 | 4/11/2016 | 10/9/2017 |
| ELLIS, J.D. | 2832 | 11/2/2015 | 8/1/2017 |
| ELLIS, JASON | 150433 | 3/11/2015 | 2/16/2018 |
| EMMERT, BRYAN | 179797 | 5/3/2016 | 5/6/2016 |
| ENGH, ADAM THOMAS | 149955 | 3/11/2015 | 1/28/2016 |
| EWART, CHRISTOPHER ALLEN | 2560 | 3/11/2015 | 7/31/2016 |
| FAIRBANKS, ROBERT PAUL | 207284 | 7/31/2017 | 2/16/2018 |
| FAIRCHILD, CHRISTOPHER ROBERT | 9070 | 2/24/2016 | 11/1/2016 |
| FEATHERSTON, GREGORY | 185605 | 8/2/2016 | 2/27/2017 |
| FIELDS, BENJAMIN TAYLOR | 171207 | 12/29/2015 | 2/8/2016 |
| FISCHER, NATHANIEL W. | 163349 | 6/1/2015 | 7/11/2015 |
| FLICK, LYNN | 214786 | 11/2/2017 | 2/16/2018 |
| FLOWERS, KURT A. | 2130 | 3/11/2015 | 11/1/2016 |
| FREEMAN-HERNANDEZ, GINA LYNNE | 175140 | 5/25/2016 | 11/1/2016 |
| GAONA, EDUARDO ASENCION | 5549 | 3/11/2015 | 9/7/2015 |
| GARCIA, MOSES JEREMIAH | 183287 | 7/5/2016 | 1/30/2017 |
| GARCIA, RENA JEAN | 1716 | 3/11/2015 | 11/2/2016 |
| GARDEA, RICHARD | 14948 | 3/11/2015 | 10/20/2015 |
| GARZA, RAFAEL | 3240 | 3/11/2015 | 6/23/2016 |
| GEORGE, ROBERT JEFFERY | 170318 | 12/29/2015 | 9/9/2016 |
| GINSBERG, DAVID | 150992 | 3/11/2015 | 7/29/2015 |
| GOODREAU, JAMES ARTHUR | 1510 | 3/11/2015 | 6/20/2016 |
| GOSSECK, LISA MARIE | 218278 | 1/3/2018 | 2/16/2018 |
| GRANT, JAMES FRANCIS | 3049 | 8/29/2016 | 2/16/2018 |
| GRAVES, JOHN | 195129 | 1/23/2017 | 3/31/2017 |
| GREMARD, CORY HEATH | 152107 | 3/11/2015 | 2/6/2016 |
| GRIFFIN, DORIAN | 168281 | 9/7/2015 | 5/18/2016 |
| GRUBBS, STEPHANIE LAVONNE | 175513 | 2/8/2016 | 7/30/2016 |
| GUILLOTT, DANIEL AARON | 192280 | 11/28/2016 | 5/3/2017 |
| GURTO, CHRISTOPHER DAVID | 4592 | 3/11/2015 | 10/14/2015 |
| HAMILTON, STEPHEN | 169414 | 12/29/2015 | 2/1/2017 |
| HAMPTON, BRANDON | 186344 | 8/15/2016 | 10/6/2016 |
| HANKINS, TYLER EVAN LEE | 152084 | 3/11/2015 | 3/27/2015 |

| | | | |
|---|---|---|---|
| HANSEN, RICHARD LINDSAY | 179021 | 4/18/2016 | 9/20/2017 |
| HARDEN, RONALD ANTHONY | 190545 | 11/2/2016 | 2/16/2018 |
| HARMAN, DEVIN CRAIG | 171359 | 11/18/2015 | 6/28/2016 |
| HARRIS, BRANDON | 16240 | 3/11/2015 | 11/3/2015 |
| HARRISON, JEREMY SCOTT | 180629 | 5/23/2016 | 2/16/2018 |
| HARTDEGEN, SHANE PHILIP | 178153 | 4/18/2016 | 5/31/2017 |
| HATCHER, TIMOTHY | 150803 | 3/11/2015 | 4/24/2015 |
| HAWTHORNE, JAMES S. | 199107 | 4/3/2017 | 10/21/2017 |
| HAYS, KELLEN | 16354 | 3/11/2015 | 8/15/2017 |
| HEDRICK, DANIEL JOSEPH | 5567 | 12/19/2017 | 2/16/2018 |
| HERNANDEZ, JOHN PAUL | 12832 | 3/11/2015 | 1/3/2017 |
| HERRMANN, CORY | 152328 | 11/2/2015 | 11/20/2016 |
| HIGGINS, DAVID ALLEN | 168356 | 12/29/2015 | 3/1/2017 |
| HOLLAND, TAMAR MARIE | 189857 | 5/15/2017 | 1/19/2018 |
| HOLLAR, DEREK WADE | 197484 | 3/6/2017 | 5/9/2017 |
| HOLLY, RICHARD DOYLE | 2848 | 3/11/2015 | 12/3/2015 |
| HOLMES, MICHAEL | 160194 | 3/30/2015 | 5/26/2015 |
| HOPKINS, YOLANDA VEDA | 177224 | 3/14/2016 | 2/16/2018 |
| HORST, WENDY LEEANN | 2521 | 1/1/2017 | 4/18/2017 |
| HORTON, KRISTEN LEANN | 3169 | 3/11/2015 | 6/2/2015 |
| HOWARD, RICKY LEE | 213487 | 10/18/2017 | 2/16/2018 |
| HUEY, KIRSTIN ANN | 188632 | 9/30/2016 | 5/24/2017 |
| HUFF, JIMMY DON | 188519 | 9/19/2016 | 2/13/2017 |
| HUFFMAN, JASON EUGENE | 9999 | 3/11/2015 | 2/16/2018 |
| HURLEY, ROBERT | 146433 | 3/11/2015 | 3/29/2016 |
| JACKSON, DAVID ARTEMIO | 174116 | 1/4/2016 | 9/8/2016 |
| JACOBITZ, JACOB E. | 181182 | 9/20/2017 | 2/13/2018 |
| JAGEARS, RANDALL WADE | 197891 | 3/13/2017 | 10/3/2017 |
| JASPER, JAY | 169977 | 10/19/2015 | 4/6/2016 |
| JENNINGS, ADAM JEFFREY | 149775 | 3/11/2015 | 11/1/2016 |
| JIMERSON, DESMOND | 148196 | 3/11/2015 | 12/23/2015 |
| JOHNSON, DWIGHT LEE | 168539 | 9/14/2015 | 3/29/2016 |
| JOHNSON, JESSE JR. | 193772 | 12/27/2016 | 7/12/2017 |
| JONES, CLENT CARVER JR. | 170019 | 10/19/2015 | 1/27/2016 |
| JONES, CODY LEE | 207339 | 8/2/2017 | 12/8/2017 |
| JONES, MICHAEL LYNN | 162956 | 5/25/2015 | 9/21/2016 |
| JUAREZ, MICHAEL DEWAYNE | 5759 | 3/11/2015 | 10/10/2015 |
| KELLEY, ANDREW LAVERNE | 66202 | 11/30/2015 | 11/1/2016 |
| KEMPEN, LAWRENCE LEE | 195501 | 1/25/2017 | 1/9/2018 |
| KENNEY, SHANE | 4627 | 3/11/2015 | 3/26/2015 |
| KERRY, ROGER WAYNE | 194593 | 1/11/2017 | 5/24/2017 |
| KING, CHAD MICHAEL | 163473 | 10/26/2015 | 10/18/2016 |
| KING, DANNY LENARD | 176645 | 3/14/2016 | 2/16/2018 |

| | | | |
|---|---|---|---|
| KING, KERRY | 206606 | 7/31/2017 | 10/8/2017 |
| KIRAGU, AUSTINE N. | 2424 | 3/11/2015 | 3/15/2017 |
| KIRKWOOD, KEVIN A. | 148475 | 3/11/2015 | 5/22/2015 |
| KITCHEN, KATHIE ELLEN | 188766 | 9/26/2016 | 2/16/2018 |
| KITTS, ROBERT KEITH | 166073 | 12/29/2015 | 11/20/2016 |
| KOHLER, SCOTT ROBERT | 193627 | 11/20/2017 | 2/6/2018 |
| KOOIKER, JASON WILLIAM | 168607 | 9/15/2015 | 12/1/2015 |
| KUHL, ZACHARY ETHAN | 180881 | 5/23/2016 | 7/22/2016 |
| LADD, KEITH R. JR | 9625 | 3/11/2015 | 9/22/2015 |
| LANDER, GEOFFREY IRA | 195703 | 2/15/2017 | 7/4/2017 |
| LANE, DONALD E. | 197820 | 3/6/2017 | 1/9/2018 |
| LANSAW, STEVEN CHARLES | 59132 | 6/3/2015 | 2/16/2018 |
| LEBOW, ROBERT H.A. | 166348 | 9/21/2015 | 7/19/2016 |
| LEECH, JOSEPH DALE | 175235 | 2/1/2016 | 6/28/2016 |
| LEEZER, MICHELLE MARIE | 3468 | 3/11/2015 | 4/27/2016 |
| LEPHART, BRANDY | 2548 | 3/11/2015 | 11/1/2016 |
| LEWIS, MARK CLIFFORD | 149786 | 3/11/2015 | 8/19/2015 |
| LEWIS, RACHEL MARIE | 7193 | 3/11/2015 | 11/1/2016 |
| LIPSCOMB, JAMES THOMAS | 115685 | 1/29/2018 | 2/16/2018 |
| LOCKHART, BRIAN | 179294 | 4/20/2016 | 2/17/2017 |
| LONG, DANIEL DAVID SR. | 174905 | 1/26/2016 | 8/14/2017 |
| LONGSHORE, TERRY JOE | 6218 | 5/27/2015 | 8/9/2016 |
| LOVE, ZACHARY ROBERT | 149531 | 3/11/2015 | 5/2/2016 |
| LURRY, JOHN THOMAS | 168574 | 10/16/2015 | 10/24/2015 |
| LUTE, MICHAEL IAN | 189245 | 9/28/2016 | 2/20/2017 |
| LYNCH, RICHARD R. JR. | 195875 | 1/23/2017 | 9/29/2017 |
| LYNCH, SHELLEY MARIE | 5684 | 3/11/2015 | 9/22/2015 |
| MAGNUSON, MARK ARTHUR | 189533 | 10/17/2016 | 2/16/2018 |
| MALLEN-SALINAS, JOSE J.. | 151597 | 3/24/2015 | 6/30/2015 |
| MANLEY, MELISSA LYNN | 193887 | 12/19/2016 | 11/21/2017 |
| MARTIN, JUSTIN RAY | 151169 | 3/11/2015 | 4/13/2015 |
| MARTIN, ROBIN RENEE | 179053 | 4/18/2016 | 4/19/2016 |
| MATTHEWS, DEMETRIUS | 202394 | 5/31/2017 | 2/16/2018 |
| MATTINGLY, AARON DANIEL | 166659 | 11/2/2015 | 1/10/2016 |
| MAU, ERIC LEE | 194445 | 1/30/2017 | 4/22/2017 |
| MAZYN, MARIA ELISA | 3606 | 3/11/2015 | 3/27/2016 |
| MCARTHUR, DONALD LEE JR. | 148517 | 6/24/2015 | 10/6/2015 |
| MCCASTER, KEVIN L. JR | 184725 | 7/18/2016 | 4/10/2017 |
| MCCLELLAN, BRYANT | 163323 | 6/1/2015 | 4/30/2017 |
| MCCONVILLE, MICHAEL | 121522 | 10/3/2016 | 5/14/2017 |
| MCDONNELL, MICHAEL A. | 181596 | 6/7/2016 | 9/28/2016 |
| MCGOWAN, CHRIS | 171801 | 11/30/2015 | 12/29/2015 |
| MCINTYRE, SCOTT AARON | 194312 | 1/4/2017 | 5/22/2017 |

| | | | |
|---|---|---|---|
| MCKEE, JIMMY L. | 3196 | 3/11/2015 | 11/15/2016 |
| MCLAWS, WALTER RAY | 2442 | 9/24/2015 | 8/3/2017 |
| MCMULLEN, KELLY JACK | 8480 | 3/11/2015 | 8/26/2015 |
| MCNAMARA, DEREK PAUL | 153055 | 3/11/2015 | 5/12/2015 |
| MEADOWS, ARTHUR LADELL JR. | 161630 | 4/27/2015 | 12/28/2015 |
| MERRYMAN, NICOLE ELIZABETH | 3312 | 9/13/2017 | 10/4/2017 |
| MESSAMORE, COREY, ALLEN | 170006 | 12/29/2015 | 8/29/2016 |
| MIDDLETON III, OSCAR | 185294 | 8/8/2016 | 1/23/2018 |
| MILLER, ANDRE TROY | 173710 | 7/4/2016 | 2/14/2017 |
| MINYARD, STEVEN DREW | 167039 | 8/10/2015 | 5/7/2017 |
| MITTLESTAEDT, KATHY LEA | 168554 | 9/14/2015 | 11/1/2016 |
| MORA, AMBERLYNN | 4671 | 10/1/2016 | 11/1/2016 |
| MORAN, ANDREW JOHN | 127919 | 11/6/2017 | 2/1/2018 |
| MUSKET, CHRISTOPHER | 197950 | 3/13/2017 | 7/11/2017 |
| MUSLEH, WAJDI | 183129 | 6/20/2016 | 11/1/2016 |
| NADEAU, BRAD | 162399 | 5/13/2015 | 5/6/2016 |
| NASCIMENTO, RENATO DO | 204360 | 6/28/2017 | 2/16/2018 |
| NATHAN, ELANGE | 169089 | 12/29/2015 | 7/26/2016 |
| NELSON, DOUGLAS MICHAEL | 4824 | 3/11/2015 | 8/23/2017 |
| NELSON, KENNETH MARLAND | 171862 | 12/1/2015 | 2/16/2018 |
| NEVILS, JAMES BUFORD JR. | 2357 | 3/11/2015 | 9/4/2015 |
| NEWSON JALEESA | 108362 | 9/7/2016 | 7/16/2017 |
| NICHOLSON, CHUCKY DEWAYNE | 191833 | 11/16/2016 | 9/19/2017 |
| NIESE, CHRISTOPHER ROBERT | 4061 | 3/11/2015 | 8/18/2015 |
| OAKES, DANIELLE ELIZABETH | 6904 | 3/11/2015 | 11/1/2016 |
| ORTH, JESSICA LOUISE | 5707 | 4/6/2015 | 3/25/2016 |
| ORUEBOR, FRANCIS | 189667 | 10/17/2016 | 2/16/2018 |
| OSBORNE, SILVIA DIANE | 10224 | 8/22/2016 | 3/19/2017 |
| PARKER, KAREN LYNN | 207005 | 7/26/2017 | 2/5/2018 |
| PARKS, LARRY D. | 179998 | 5/9/2016 | 2/19/2017 |
| PATTERSON, ARTHUR L. | 179224 | 4/25/2016 | 11/1/2016 |
| PEDROSA, MICHAEL | 209708 | 9/6/2017 | 2/16/2018 |
| PEPPER, JAMES DEVIN | 146129 | 6/15/2016 | 11/1/2016 |
| PEREZ, BIANCA | 178134 | 10/1/2016 | 11/1/2016 |
| PERRY, DUSTIN R. | 174925 | 1/28/2016 | 3/2/2016 |
| PETTIGREW, MATTHEW J. | 153158 | 3/11/2015 | 12/1/2015 |
| PHELPS, CHRISTOPHER JUERGEN | 179997 | 5/11/2016 | 1/9/2017 |
| PHILBECK, CHARLES NICHOLAS | 194437 | 1/9/2017 | 2/22/2017 |
| PHIPPS, JAMES WADE JR. | 10335 | 3/11/2015 | 7/3/2017 |
| PICKEL, JOHN JAMES | 8541 | 3/11/2015 | 10/20/2015 |
| PICKETT, RANDALL | 190100 | 10/24/2016 | 1/30/2017 |
| PIPPER, STEVEN BOYD | 10528 | 3/11/2015 | 4/13/2015 |
| POMPEY, LINDSEY L. | 160888 | 4/13/2015 | 8/5/2015 |

| | | | |
|---|---|---|---|
| POPE, BRUCE GILBERT | 176026 | 2/29/2016 | 3/24/2016 |
| PRICE, JONATHAN MURRAY | 2457 | 3/11/2015 | 11/11/2015 |
| PRINCE, JERRETTA E. | 3931 | 3/11/2015 | 6/16/2016 |
| PRINCIPE, SHAWN | 209331 | 9/18/2017 | 12/28/2017 |
| PRITCHETT, MATTHEW | 185939 | 8/9/2016 | 2/16/2018 |
| RANSBERGER, CODY | 185972 | 8/10/2016 | 1/11/2017 |
| REDMAN, JOHN CURTIS | 14018 | 12/29/2015 | 11/1/2016 |
| REYES, LOUISA | 151644 | 3/11/2015 | 1/8/2016 |
| RIDENOUR, ANTHYNEA | 163548 | 6/3/2015 | 8/4/2016 |
| RINAKER, ERIC M. | 189285 | 10/10/2016 | 6/4/2017 |
| ROBB, BRADLEY | 5498 | 3/11/2015 | 9/28/2015 |
| ROBERTS, TISON | 6575 | 8/26/2015 | 11/1/2016 |
| ROBERTSON, MATTHEW J. | 148515 | 3/11/2015 | 7/22/2015 |
| ROBINSON, THOMAS BURTON | 4406 | 8/5/2015 | 5/5/2016 |
| RODRIGUEZ, JOSEPH A. | 166650 | 8/3/2015 | 12/2/2015 |
| ROOS, NICHOLAS R. | 173811 | 12/28/2015 | 12/3/2017 |
| ROSS, CHRISTOPHER | 191294 | 11/28/2016 | 6/5/2017 |
| ROTH, ISAAC | 164137 | 12/29/2015 | 10/6/2016 |
| ROTH, JOHN PATRICK | 4634 | 3/11/2015 | 10/26/2016 |
| ROY, JUSTIN A. | 163752 | 6/8/2015 | 10/19/2015 |
| RUCKER, ELBERT | 196316 | 2/6/2017 | 2/16/2018 |
| RUSH, SCOTT IVAN | 195584 | 1/23/2017 | 4/18/2017 |
| RUTHERFORD, JEFFREY DAVID | 206955 | 8/7/2017 | 12/18/2017 |
| RYAN, JUSTIN MICHAEL | 152658 | 3/11/2015 | 12/9/2016 |
| RYNDERS, CARSON RAY | 173898 | 12/28/2015 | 5/11/2017 |
| SALES, CHRISTOPHER PAUL | 153630 | 3/18/2015 | 7/20/2015 |
| SANTANA, CARLOS FRANCISCO | 7213 | 3/11/2015 | 5/23/2017 |
| SCHROEDER, HOLLY | 180784 | 6/1/2016 | 11/1/2016 |
| SELLERS, ANTONIO DEAN | 179109 | 4/18/2016 | 9/27/2016 |
| SERRA-ARDERI, DANNY | 13200 | 10/28/2015 | 4/24/2016 |
| SHAPIRO, SAM | 163903 | 6/10/2015 | 10/13/2015 |
| SHEETS, JAMES TAYLOR | 2847 | 3/11/2015 | 1/25/2017 |
| SHEPHERD, PHILLIP SCOTT | 205483 | 7/10/2017 | 10/1/2017 |
| SHIN, HYUNIL | 174279 | 1/13/2016 | 2/29/2016 |
| SHINER, DARRELL | 175858 | 2/22/2016 | 5/9/2017 |
| SHIPMAN, RUSSELL | 4468 | 3/11/2015 | 9/29/2015 |
| SHOEMAKER, JOSEPH A. | 1789 | 3/11/2015 | 2/16/2018 |
| SHULTS, SHAWN DALE | 187242 | 8/29/2016 | 2/20/2017 |
| SILVER, ANGELENA NICOLE | 173097 | 12/7/2015 | 1/4/2016 |
| SINGERMAN, DAVID PHILIP | 166674 | 8/3/2015 | 10/14/2015 |
| SKAGGS, AMANDA | 189085 | 9/21/2016 | 2/17/2017 |
| SLAUGHTER, ADAM KEITH | 151397 | 3/11/2015 | 8/1/2015 |
| SMEAD, CHRISTOPHER CHARLES | 215331 | 11/13/2017 | 1/28/2018 |

| | | | |
|---|---|---|---|
| SNYDER, HEATHER ALINA | 187095 | 9/5/2016 | 2/16/2018 |
| SOCIA, LUCAS MATTHEW | 13765 | 10/10/2017 | 2/16/2018 |
| SORG, SCOTT M. | 173414 | 12/29/2015 | 11/1/2016 |
| SPRINKLE, BLAINE | 152332 | 3/11/2015 | 11/16/2015 |
| STEIN, RYAN EUGENE | 206929 | 8/7/2017 | 2/14/2018 |
| STEPHENS, VORICE L. | 9284 | 3/11/2015 | 5/31/2015 |
| STEVENS, CARLON RAY | 170478 | 10/28/2015 | 2/16/2018 |
| STINSON, WILLIAM FRED II | 3994 | 7/29/2015 | 11/1/2016 |
| STOREY, JASON | 163615 | 6/4/2015 | 2/16/2018 |
| SUDZIAK, JAMES ERIC | 164788 | 6/25/2015 | 9/6/2015 |
| TAGLE, ARTURO, JR. | 173778 | 1/4/2016 | 2/16/2016 |
| TALAVERA, PATRICIA ANN | 1301 | 3/11/2015 | 9/13/2016 |
| TANNER DAVID LEE | 204027 | 6/19/2017 | 2/16/2018 |
| TAYLOR, DAVID | 180821 | 6/1/2016 | 6/6/2017 |
| THOMAS, MICHAEL | 174384 | 1/18/2016 | 7/22/2016 |
| THOMPSON, JEREMY GRANT | 192612 | 11/28/2016 | 7/4/2017 |
| TICE, STEPHEN | 149945 | 3/11/2015 | 4/16/2015 |
| TOFT, CHRIS | 168552 | 9/14/2015 | 7/18/2017 |
| TOVES, BRENDA ANN | 2358 | 3/11/2015 | 9/3/2015 |
| TOWNSEND, BRIAN A. | 188242 | 9/9/2016 | 2/16/2018 |
| TROXELL, JUSTIN ALEXANDER | 6433 | 3/11/2015 | 8/26/2015 |
| TURNEY, RICHARD | 169382 | 12/29/2015 | 2/25/2016 |
| URQUHART, MITCHELL AUSTIN | 6422 | 3/11/2015 | 10/29/2015 |
| VALENTINE, HOWARD EUGENE | 153131 | 3/11/2015 | 6/24/2015 |
| WACKER, CHARLS DAVID | 181728 | 6/1/2016 | 11/2/2016 |
| WARD, SCOTT ALLEN | 184116 | 7/18/2016 | 5/30/2017 |
| WARREN, DARRYL DAMONE | 149344 | 3/11/2015 | 5/18/2015 |
| WEINBERG, CARRIE ANN | 2919 | 3/11/2015 | 2/16/2018 |
| WENTWORTH, HAROLD BYRON | 14256 | 3/11/2015 | 4/26/2016 |
| WESLEY, ROGER | 3358 | 3/11/2015 | 4/29/2015 |
| WEYER, JOSEPH ALLEN | 6541 | 3/11/2015 | 10/15/2015 |
| WHEELER, BENJAMIN J. | 152914 | 7/6/2016 | 4/4/2017 |
| WHEELER, MATTHEW JORDAN | 4240 | 5/7/2016 | 11/1/2016 |
| WHITE, HEATHER DIANN | 179969 | 5/9/2016 | 11/13/2017 |
| WHITE-FRENCH, JAMIE | 3428 | 3/11/2015 | 8/16/2016 |
| WIDHALM, KEVIN EDWIN | 1922 | 3/11/2015 | 4/8/2016 |
| WIESE, BRANDON MICHAEL | 7963 | 3/11/2015 | 8/3/2015 |
| WIGHT, JOHN EDWARD | 179484 | 4/22/2016 | 11/30/2016 |
| WILKERSON, JOSHUA WAYNE | 173033 | 12/7/2015 | 7/15/2016 |
| WILLIAMS, BILLIE DEE | 7290 | 3/11/2015 | 2/16/2018 |
| WILLIAMS, CHAD MARTEN | 6822 | 3/11/2015 | 8/13/2015 |
| WILLIAMS, CLARENCE | 167967 | 12/29/2015 | 6/26/2017 |
| WILLIAMS, DARREN KEITH | 162083 | 5/6/2015 | 7/7/2015 |

| | | | |
|---|---|---|---|
| WILLIAMS, ERVING FAST | 9551 | 3/11/2015 | 11/3/2015 |
| WILLIAMS, KENNETH | 12971 | 3/11/2015 | 2/23/2016 |
| WILLIAMSON, ERIC | 162251 | 5/11/2015 | 11/1/2016 |
| WILSON, MICHAEL L. | 210241 | 10/9/2017 | 2/16/2018 |
| WILSON, TIMOTHY P. | 3158 | 3/11/2015 | 2/16/2018 |
| WOODHOUSE, BRANDON RALPH | 162757 | 12/29/2015 | 1/5/2016 |
| WOODRUFF, RICHARD ALLEN | 162011 | 5/25/2016 | 7/28/2016 |
| WOZNIAK, JASON MICHAEL | 160978 | 4/14/2015 | 4/13/2016 |
| WYNIA, DARYL PIER | 170472 | 10/28/2015 | 1/20/2017 |
| XIMENEZ, FELIX MARIANO | 148543 | 12/29/2015 | 3/1/2016 |
| YORK, LEONARD GRANT | 2635 | 3/11/2015 | 8/17/2016 |
| ZABINSKI, PATRICK B. | 183293 | 6/27/2016 | 6/30/2017 |
| ZAVALA, LAURIETTA | 1841 | 12/7/2015 | 11/1/2016 |
| BLACK, SAMUEL LEE | 200027070 | | |
| BREAUX, ZACHARY VICTOR | 24371010 | | |
| CATALAN, BYRON, D. | 34075160 | | |
| COPELAND, DEBORAH DENISE | 57690950 | | |
| FULLER, JOEY DALE | 200033466 | | |
| FULLER, SHANNON DENISE | 200010048 | | |
| GOTREAUX, PATRICK SCOTT | 200011100 | | |
| HARRIS, TAMMY | 43505950 | | |
| HERNANDEZ, JOSE | 41990810 | | |
| HUBER, CARLA MONIQUE | 36331260 | | |
| MAKRIDIS, SAVAS | 200031120 | | |
| MCGEE, YTERRIA ZELMA | 200015411 | | |
| MITCHELL, CEVIN DEAN | 23181670 | | |
| MONTOYA, ANNABELLE | 48549350 | | |
| MORRIS, JESSICA RAYCHELE | 200013261 | | |
| NELSON, JAMES DEREK KENT | 200014025 | | |
| NELSON, KANDY LYNN | 28903580 | | |
| PEAVY, RORY | 200015540 | | |
| RAUCH, TAMIKA LAQUIN | 48352520 | | |
| RIDGELL, JESSICA NICOLE | 27778900 | | |
| SHINE, CAROL ANN | 46290620 | | |
| SIMPSON, NICHOLAS ROBERT | 52257170 | | |
| SMITH, SHAMEKA | 40860440 | | |
| SMOOT JERRY THOMAS | 50515250 | | |
| TEFERTILLER, JAMES ALLAN | 200004067 | | |
| TEMPEL, HAINES ANDREW | 200000323 | | |
| WHITE, SAMANTHA J. | 200009745 | | |
| WILLIAMS, ANTONIO DARRELL | 200028481 | | |
| MCMURRAN, SEAN | | | |
| LAWSON, KRISTOPHER | | | |

MCLEERY, VINCENT
BEASLEY, CALVIN DANIEL
COLLINS, CODY RAY
ERIVES-MALDONADO, MARCO ALEJANDRO
HATELER, TIMOTHY D.
HENRY, KIRSTIE J.
HOENICKA, STACEY LYNN
HOUSTON, SAMUEL DALE
JORDON, SERENA MICHELE
KISINGER, KEITH AARON
MARONEY, MICHAEL T.
MEADOWS JR., GLENN D.
NORTON, SONYA GIVENS
SWEENEY, RYAN PATRICK
VAUGHN, ROBIN MICHAEL
ZAPATA, GERADO

# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| KRISTOPHER LAWSON, VINCENT MCCLEERY, and SEAN MCMURRAN, Individually and on Behalf of All Other Persons Similarly Situated, | : : : : : : | Case No.: 1:17-cv-01266-CCC |
|  Plaintiffs, | : : |  |
|  -against- | : : |  |
| LOVE'S TRAVEL STOPS & COUNTRY STORES, INC., | : : : |  |
|  Defendant. | : |  |

## COURT NOTICE OF SETTLEMENT OF COLLECTIVE ACTION LAWSUIT

To:

[Name]
[Address]
[City, State Zip]

**You joined the lawsuit identified above.  Recently, the United States District Court approved a settlement of the lawsuit and authorized this Notice.**

**You are entitled to a payment from the settlement of this collective action lawsuit.  A Settlement Check is enclosed with this Notice of Settlement [or, if sent via e-mail: A Settlement Check is enclosed with the Notice of Settlement being issued to you via First Class U.S. Mail to the address listed above.]**

- This Notice is directed to you because you previously opted into this lawsuit against Love's Travel Stops & Country Store, Inc. ("Love's") by filing a consent to join the action.

- The Named Plaintiffs identified in the caption sued Love's alleging that they failed to pay them and other Operations Managers ("OMs") for overtime hours they worked.  The Named Plaintiffs filed the lawsuit as a collective action under the federal Fair Labor Standards Act ("FLSA").  You previously agreed for the Named Plaintiffs and their attorneys to act on your behalf in this Lawsuit.

- Love's has denied the allegations in the Complaint and asserts that OMs were compensated correctly under the law.  Nevertheless, the Parties have agreed to settle this Lawsuit for the

purpose of avoiding further disputes and litigation with its attendant risk, expense, and inconvenience.  The Court has not made any ruling on the merits of the claims and no Party has prevailed in this action.  However, the Court has reviewed and approved the Settlement and this Notice.

- Love's will not take an adverse action against any participant in this Lawsuit for accepting a settlement payment.

- Under the allocation formula created by the settlement, you are entitled to a gross (i.e., pre-tax) settlement payment of $_____.  This amount is based on the number of weeks in which you worked as an OM, pursuant to Love's records, which fall within the Federal three-year liability period, which is measured from the longer of three years prior to your having joined this Lawsuit or February 16, 2015, through [date Agreement was executed] (the "Eligibility Period").

- Neither Plaintiffs' Counsel nor Love's make any representations concerning the tax obligations of your settlement payment.

**THE SETTLEMENT BENEFITS – WHAT YOU GET**

| **1.  How much is my payment and how was it calculated?** |
| --- |

You are entitled to a gross settlement payment for $_____, half of which is subject to deductions for applicable taxes and withholding like any other paycheck, and for which you will receive an IRS Form W-2, and half of which will be reported on an IRS Form 1099.

| **2.  Am I giving anything up by accepting the settlement check?** |
| --- |

As a participant in this Lawsuit entitled to a settlement payment, by operation of the Settlement Agreement and the Court's Order approving same, except as to such rights or claims as may be created by the Settlement Agreement or those non-waivable by law, you shall hereby irrevocably and unconditionally forever and fully release and covenant not to sue or otherwise pursue claims against Love's and all Released Parties[1] from any and all claims that were asserted or that could have been asserted in this Lawsuit related to the payment of regular or overtime wages, including but not limited to all claims, demands, and causes of action for unpaid regular and/or overtime wages, penalties, liquidated damages, interest, costs, attorney's fees, and any other relief under the federal FLSA, 29 U.S.C. § 201, *et seq*., as well as any similar state or local law governing the payment of regular or overtime wages, arising out of work performed for Love's as an overtime exempt-classified Operations Manager at any time until and including [date of

---

[1]      "Released Parties" means Love's and its predecessors, successors, present and former affiliates, future affiliates, parents, Advisory Board, subsidiaries, insurers, officers, directors, agents, members, shareholders, unitholders, general partners, limited partners, owners, beneficiaries, representatives, heirs, attorneys, assigns (including without limitation, any investors, trusts, or other similar or affiliated entities) of, and all persons acting by, through, under or in concert with, Love's, including, but not limited to, any person or entity that was or could have been named as a defendant in this Lawsuit.

==execution of Agreement==] (collectively, the "Released Claims").  The Released Claims further include all claims for miscalculated wages, improper deduction(s), late payment of wages, premium pay, commissions, bonuses, improper rounding of time records; and as it applies to any wage and hour claims, breach of contract, implied contract, quantum meruit, unjust enrichment, promissory estoppel, equitable estoppel, fraud, negligent misrepresentation, conversion, failure to keep accurate and complete payroll records, and any other claims or relief of any kind under tort, contract, quasi-contract, injunctive relief theories or claims, any claims related to 401k or pension plans, or under or derived from the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, to the extent such ERISA claims are premised on an alleged failure to credit any pension plan, health plan or other employer sponsored benefit plan account or benefits based upon and within the above defined scope of claims release.  Specifically excluded from Released Claims are all Equal Pay Act, gender discrimination claims, and/or sex or gender-based claims that were asserted or that could have been asserted in the action *Horton v. Love's Travel Stops & Country Stores, Inc.*, No. 19 Civ. 1193 (M.D.N.C.).

The lawyers representing you believe that this settlement is a fair and reasonable resolution of the case, and encourage you to deposit and/or otherwise negotiate your settlement check.

## THE LAWYERS REPRESENTING YOU

| 3.  How will the lawyers be paid? |
| --- |

The Court has approved payment to Plaintiffs' Counsel of $1,450,000.00 to compensate them for their attorneys' fees and out-of-pocket costs.  These fees compensate Plaintiffs' Counsel for investigating the facts, litigating the case and negotiating and finalizing the settlement, and reimburse Plaintiffs' Counsel for their out-of-pocket costs spent in litigating the case, excluding the cost of the Settlement Administrator.  The Court also has approved payment of Plaintiffs' Counsel's out-of-pocket costs, excluding the cost of the Settlement Administrator.  The costs of the Settlement Administrator will be paid by Love's separately.  In addition, the Court has approved payments of a total of $37,500.00 to the six Service Award Recipients to recognize the risks they took and their service to the collective action, including representing you and participating in depositions on behalf of the Collective.

## FOR MORE INFORMATION

| 4.  Are there more details about the Settlement? |
| --- |

This Notice summarizes the settlement.  More details are in a Settlement Agreement.  You are encouraged to read it.  To the extent there is any inconsistency between this Notice and the Settlement Agreement, the provisions in the Settlement Agreement control.  You may obtain a copy of the Settlement Agreement by sending a request, in writing, to the Settlement Administrator at:

Love's Travel Stops & Country Stores Settlement Administrator
[address]
[city state zip]
Phone: (___) ___-____
Facsimile (___) ___-____
E-mail: _____

Otherwise, if you have other questions about the settlement, you can contact the Settlement Administrator at the contact information above, or Plaintiffs' Counsel, your lawyers, at:

Gregg I. Shavitz
Paolo C. Meireles
Logan A. Pardell
**SHAVITZ LAW GROUP, P.A.**
951 Yamato Rd, Suite 285
Boca Raton, Florida 33431
Telephone: (561) 447-8888
Facsimile: (561) 447-8831
E-mail: info@shavitzlaw.com
www.shavitzlaw.com

Rebecca Predovan
Marc S. Hepworth
Charles Gershbaum
David A. Roth
**HEPWORTH, GERSHBAUM & ROTH, PLLC**
192 Lexington Avenue, Suite 802
New York, New York 10016
Telephone: (212) 545-1199
Facsimile: (212) 532-3801
E-mail: info@HGRLawyers.com
www.HGRLawyers.com

DATED: _____, 2020

# EXHIBIT D

## GENERAL RELEASE IN EXCHANGE FOR SERVICE PAYMENT
### ("General Release")

       Plaintiff, Kristopher Lawson, on behalf of himself or herself and his or her heirs, representatives, successors, and assigns (collectively, "EMPLOYEE"), Love's Travel Stops & Country Stores, Inc. (collectively "Love's" and, together with EMPLOYEE, the "Parties"), for good and valuable consideration, the receipt of which is hereby acknowledged, and in order to resolve and settle finally, fully, and completely all matters or disputes that now or may exist between them, including the proceeding before the United States District Court for the Middle District of Pennsylvania, Florida titled *Lawson, et al. v. Love's Travel Stops & Country Stores, Inc.*, Case No. 1:17-cv-01266-CCC, (the "Litigation"), hereby agree as follows:

      1.    **Consideration.** EMPLOYEE understands and agrees that by signing and returning this General Release and, contingent upon the Court's approval of the Settlement Agreement filed in the Litigation ("Settlement Agreement"), and the Court's approval of a Service Payment (as defined in the Settlement Agreement), EMPLOYEE will be eligible to receive a Service Payment of $10,000.00 or such other amount as approved by the Court, consistent with the provisions of Section 1.11(b) of the Settlement Agreement, as well as an individual Settlement Check as may be applicable (as discussed in the Settlement Agreement) consistent with the Settlement Agreement. The Service Payment shall be deemed non-wage compensation and reported to EMPLOYEE on IRS Form 1099.

      2.    **Release and Waiver of Rights and Claims.**

          (a)    In exchange for the Service Payment, and to the full extent permitted by law, EMPLOYEE irrevocably and unconditionally release, acquit, and forever discharge Love's and its the predecessors, successors, present and former affiliates, future affiliates, parents, Advisory Board, subsidiaries, insurers, officers, directors, agents, members, shareholders, unitholders, general partners, limited partners, owners, beneficiaries, representatives, heirs, attorneys, assigns (including without limitation, any investors, trusts, or other similar or affiliated entities) of, and all persons acting by, through, under or in concert with, Love's, including, but not limited to, any person or entity that was or could have been named as a defendant in the Lawsuit (collective, "Released Parties"), of and from:

          (i)    any and all charges, complaints, claims, liabilities, causes of action, damages and expenses (including attorneys' fees, costs actually incurred, and liquidated damages), of any kind, whether known or unknown, which they now have, may have or claim to have, or which they at any prior time had or claimed to have against Love's or any of the Released Parties, arising out of any matter occurring or accruing on or before the date he or she signs this General Release. This release and waiver includes, but is not limited to, any claims arising from their employment and/or contractual relationship, or the termination of their employment and/or contractual relationship, with Love's and/or any of the Released Parties. This release and waiver includes, but is not limited to: claims arising under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Family and Medical Leave Act, the Employee Retirement Income Security Act, and all state and local analogues of such statutes; claims arising under common law, tort, policy or contract; claims for retaliation, defamation, libel, slander, invasion of

1

privacy, or negligence; claims based on theories of strict liability or respondeat superior; claims for costs, fees, interest, expenses, or attorneys' fees; claims that were asserted or that could have been asserted in the Lawsuit; and any other claims of any kind, except as expressly excluded elsewhere in this Agreement; and

(ii)    any and all charges, complaints, claims, liabilities, causes of action, damages and expenses (including attorneys' fees, costs actually incurred, and liquidated damages), of any kind, whether known or unknown, which they now have, may have or claim to have, or which they at any prior time had or claimed to have against Defendant or any of the Released Parties, arising out of any matter occurring or accruing on or before the date he or she signs this General Release, and which arise under the Age Discrimination in Employment Act.  EMPLOYEE retains the right to revoke his or her waiver of rights under the Age Discrimination in Employment Act as set forth herein provided that he or she does so by providing written notice of the revocation via United States registered or certified mail, return receipt requested, to Love's, address as follows:

Matthew Hank
Littler, Mendelson, P.C.
Three Parkway
1601 Cherry Street, Suite 1400
Philadelphia, PA 19102-1321

no later than seven (7) days following the date on which the Court enters the Approval Order as an Order of Court, and as further described in the Settlement Agreement.  Such notice given hereunder shall be in writing and shall be deemed to have been duly given as of the third business day after mailing in accordance with the requirements herein.  If EMPLOYEE revokes his or her waiver of rights under the Age Discrimination in Employment Act, the amount of the Service Payment allocated to that Service Award Recipient shall be reduced by fifty percent (50%), and Love's shall retain the remaining fifty percent (50%).

(b)    EMPLOYEE acknowledges and agrees that in accordance with the requirements of the Older Workers Benefit Protection Act: (i) EMPLOYEE has read and fully understands the terms of this General Release, including the waivers and releases contained herein; (ii) EMPLOYEE was advised and hereby is advised that General Release includes a waiver and release of rights and claims under Chapter 14 (Age Discrimination in Employment) of Title 29 of the Code of the Laws of the United States of America, 29 U.S.C. § 621, et seq.; (iii) is not waiving rights or claims that may arise after the date on which he or she executes this Agreement; (iv) EMPLOYEE's waiver of rights and claims is in exchange for consideration in addition to anything of value to which they already are entitled; (v) EMPLOYEE was advised and hereby is advised in writing to consult with an attorney of their choice prior to signing this Agreement; (vi) EMPLOYEE has been given a period of twenty-one (21) days within which to consider the terms of the Agreement before signing it (and if EMPLOYEE signed this Agreement before the end of this twenty-one (21) day period, it is because they freely chose to do so after carefully considering its terms); (vii) EMPLOYEE has no fewer than seven (7) days following the execution of this Agreement in which to revoke the release and waiver of claims under the Age Discrimination in Employment Act.

(c)    EMPLOYEE affirms that they have not filed any other charges, complaints, lawsuits, claims or actions against Love's or any of the Released Parties, based on any event that took place prior to the date they sign this General Release, except as expressly disclosed in this General Release.  In the event there is outstanding any such charge, complaint, claim or action, EMPLOYEE agrees to execute such papers or documents as Love's Counsel determines may be necessary to attempt to have such charge, complaint, claim or action withdrawn and dismissed with prejudice.

(d)    EMPLOYEE forever waives any and all claim or right to reinstatement, future employment, or any other future association or future contractual relationship with Love's. EMPLOYEE agrees that they shall not at any time seek or accept future employment or any other form of contractual relationship with Love's.  A breach of this paragraph by EMPLOYEE shall constitute lawful and just cause for Love's to refuse to employ and/or contract with EMPLOYEE, and EMPLOYEE shall have no cause of action (for retaliation or otherwise) for such refusal or termination.  For the avoidance of doubt, the terms of this paragraph apply only to future employment with Love's, and not to any current employment with Love's to the extent such relationship exists between the Parties.

3.    **Release Exclusions.**  Notwithstanding the foregoing provisions General Release, EMPLOYEE does not release or waive:  (a) any claim that they could make for unemployment compensation or workers' compensation benefits; (b) any rights or claims that cannot be released as a matter of law pursuant to this General Release ; (c) their right to file an administrative charge with the National Labor Relations Board, Equal Employment Opportunity Commission or similar state agency (although they do waive their right to receive any monetary damages or other relief not explicitly provided for herein as a result of any such charge, to the extent the charge pertains to a claim that was released); and/or (d) any rights or claims that may arise after the date they sign this Agreement.

4.    **Other Agreements.**  EMPLOYEE also understands and agrees as follows:

(a)    EMPLOYEE is entering into this General Release, intending to be bound by its terms, knowingly, voluntarily, and with full knowledge of their significance.  EMPLOYEE has not been coerced, threatened, or intimidated into signing this General Release;

(b)    EMPLOYEE has been advised to consult with a lawyer prior to signing this General Release and agreeing to be bound by its terms and has, in fact, consulted with counsel with the Shavitz Law Group, P.A. and Hepworth, Gershbaum, and Roth, PLLC;

(c)    EMPLOYEE has been given a reasonable amount of time to consider this General Release; and

(d)    EMPLOYEE is not otherwise entitled to the consideration described in this General Release.

**By my signature below, I AFFIRM AND ACKNOWLEDGE that I have read the foregoing General Release, that I have had sufficient time and opportunity to review and discuss it with the attorney of my choice, that I have had any questions answered to my**

3

satisfaction, that I fully understand and appreciate the meaning of each of its terms, and that I am voluntarily signing the General Release on the date indicated below, intending to be fully and legally bound by its terms.

_Kris Lawson_____

EMPLOYEE SIGNATURE

_____Kristopher Lawson_____

EMPLOYEE NAME (print)

Dated: _____

4

## GENERAL RELEASE IN EXCHANGE FOR SERVICE PAYMENT
### ("General Release")

Plaintiff, <u>Vincent McCleery</u>, on behalf of himself or herself and his or her heirs, representatives, successors, and assigns (collectively, "EMPLOYEE"), Love's Travel Stops & Country Stores, Inc. (collectively "<u>Love's</u>" and, together with EMPLOYEE, the "<u>Parties</u>"), for good and valuable consideration, the receipt of which is hereby acknowledged, and in order to resolve and settle finally, fully, and completely all matters or disputes that now or may exist between them, including the proceeding before the United States District Court for the Middle District of Pennsylvania, Florida titled *Lawson, et al. v. Love's Travel Stops & Country Stores, Inc.*, Case No. 1:17-cv-01266-CCC, (the "<u>Litigation</u>"), hereby agree as follows:

1.      **Consideration.**  EMPLOYEE understands and agrees that by signing and returning this General Release and, contingent upon the Court's approval of the Settlement Agreement filed in the Litigation ("<u>Settlement Agreement</u>"), and the Court's approval of a Service Payment (as defined in the Settlement Agreement), EMPLOYEE will be eligible to receive a Service Payment of $10,000.00 or such other amount as approved by the Court, consistent with the provisions of Section 1.11(b) of the Settlement Agreement, as well as an individual Settlement Check as may be applicable (as discussed in the Settlement Agreement) consistent with the Settlement Agreement. The Service Payment shall be deemed non-wage compensation and reported to EMPLOYEE on IRS Form 1099.

2.      <u>Release and Waiver of Rights and Claims.</u>

(a)      In exchange for the Service Payment, and to the full extent permitted by law, EMPLOYEE irrevocably and unconditionally release, acquit, and forever discharge Love's and its the predecessors, successors, present and former affiliates, future affiliates, parents, Advisory Board, subsidiaries, insurers, officers, directors, agents, members, shareholders, unitholders, general partners, limited partners, owners, beneficiaries, representatives, heirs, attorneys, assigns (including without limitation, any investors, trusts, or other similar or affiliated entities) of, and all persons acting by, through, under or in concert with, Love's, including, but not limited to, any person or entity that was or could have been named as a defendant in the Lawsuit (collective, "Released Parties"), of and from:

(i)      any and all charges, complaints, claims, liabilities, causes of action, damages and expenses (including attorneys' fees, costs actually incurred, and liquidated damages), of any kind, whether known or unknown, which they now have, may have or claim to have, or which they at any prior time had or claimed to have against Love's or any of the Released Parties, arising out of any matter occurring or accruing on or before the date he or she signs this General Release. This release and waiver includes, but is not limited to, any claims arising from their employment and/or contractual relationship, or the termination of their employment and/or contractual relationship, with Love's and/or any of the Released Parties. This release and waiver includes, but is not limited to: claims arising under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Family and Medical Leave Act, the Employee Retirement Income Security Act, and all state and local analogues of such statutes; claims arising under common law, tort, policy or contract; claims for retaliation, defamation, libel, slander, invasion of

1

privacy, or negligence; claims based on theories of strict liability or respondeat superior; claims for costs, fees, interest, expenses, or attorneys' fees; claims that were asserted or that could have been asserted in the Lawsuit; and any other claims of any kind, except as expressly excluded elsewhere in this Agreement; and

(ii)     any and all charges, complaints, claims, liabilities, causes of action, damages and expenses (including attorneys' fees, costs actually incurred, and liquidated damages), of any kind, whether known or unknown, which they now have, may have or claim to have, or which they at any prior time had or claimed to have against Defendant or any of the Released Parties, arising out of any matter occurring or accruing on or before the date he or she signs this General Release, and which arise under the Age Discrimination in Employment Act. EMPLOYEE retains the right to revoke his or her waiver of rights under the Age Discrimination in Employment Act as set forth herein provided that he or she does so by providing written notice of the revocation via United States registered or certified mail, return receipt requested, to Love's, address as follows:

Matthew Hank

Littler, Mendelson, P.C.

Three Parkway

1601 Cherry Street, Suite 1400

Philadelphia, PA 19102-1321

no later than seven (7) days following the date on which the Court enters the Approval Order as an Order of Court, and as further described in the Settlement Agreement. Such notice given hereunder shall be in writing and shall be deemed to have been duly given as of the third business day after mailing in accordance with the requirements herein. If EMPLOYEE revokes his or her waiver of rights under the Age Discrimination in Employment Act, the amount of the Service Payment allocated to that Service Award Recipient shall be reduced by fifty percent (50%), and Love's shall retain the remaining fifty percent (50%).

(b)     EMPLOYEE acknowledges and agrees that in accordance with the requirements of the Older Workers Benefit Protection Act: (i) EMPLOYEE has read and fully understands the terms of this General Release, including the waivers and releases contained herein; (ii) EMPLOYEE was advised and hereby is advised that General Release includes a waiver and release of rights and claims under Chapter 14 (Age Discrimination in Employment) of Title 29 of the Code of the Laws of the United States of America, 29 U.S.C. § 621, et seq.; (iii) is not waiving rights or claims that may arise after the date on which he or she executes this Agreement; (iv) EMPLOYEE's waiver of rights and claims is in exchange for consideration in addition to anything of value to which they already are entitled; (v) EMPLOYEE was advised and hereby is advised in writing to consult with an attorney of their choice prior to signing this Agreement; (vi) EMPLOYEE has been given a period of twenty-one (21) days within which to consider the terms of the Agreement before signing it (and if EMPLOYEE signed this Agreement before the end of this twenty-one (21) day period, it is because they freely chose to do so after carefully considering its terms); (vii) EMPLOYEE has no fewer than seven (7) days following the execution of this Agreement in which to revoke the release and waiver of claims under the Age Discrimination in Employment Act.

8780475 v1

(c)    EMPLOYEE affirms that they have not filed any other charges, complaints, lawsuits, claims or actions against Love's or any of the Released Parties, based on any event that took place prior to the date they sign this General Release, except as expressly disclosed in this General Release.  In the event there is outstanding any such charge, complaint, claim or action, EMPLOYEE agrees to execute such papers or documents as Love's Counsel determines may be necessary to attempt to have such charge, complaint, claim or action withdrawn and dismissed with prejudice.

(d)    EMPLOYEE forever waives any and all claim or right to reinstatement, future employment, or any other future association or future contractual relationship with Love's. EMPLOYEE agrees that they shall not at any time seek or accept future employment or any other form of contractual relationship with Love's.  A breach of this paragraph by EMPLOYEE shall constitute lawful and just cause for Love's to refuse to employ and/or contract with EMPLOYEE, and EMPLOYEE shall have no cause of action (for retaliation or otherwise) for such refusal or termination.  For the avoidance of doubt, the terms of this paragraph apply only to future employment with Love's, and not to any current employment with Love's to the extent such relationship exists between the Parties.

3.    **Release Exclusions.**  Notwithstanding the foregoing provisions General Release, EMPLOYEE does not release or waive:  (a) any claim that they could make for unemployment compensation or workers' compensation benefits; (b) any rights or claims that cannot be released as a matter of law pursuant to this General Release ; (c) their right to file an administrative charge with the National Labor Relations Board, Equal Employment Opportunity Commission or similar state agency (although they do waive their right to receive any monetary damages or other relief not explicitly provided for herein as a result of any such charge, to the extent the charge pertains to a claim that was released); and/or (d) any rights or claims that may arise after the date they sign this Agreement.

4.    **Other Agreements.**  EMPLOYEE also understands and agrees as follows:

(a)    EMPLOYEE is entering into this General Release, intending to be bound by its terms, knowingly, voluntarily, and with full knowledge of their significance.  EMPLOYEE has not been coerced, threatened, or intimidated into signing this General Release;

(b)    EMPLOYEE has been advised to consult with a lawyer prior to signing this General Release and agreeing to be bound by its terms and has, in fact, consulted with counsel with the Shavitz Law Group, P.A. and Hepworth, Gershbaum, and Roth, PLLC;

(c)    EMPLOYEE has been given a reasonable amount of time to consider this General Release; and

(d)    EMPLOYEE is not otherwise entitled to the consideration described in this General Release.

**By my signature below, I AFFIRM AND ACKNOWLEDGE that I have read the foregoing General Release, that I have had sufficient time and opportunity to review and discuss it with the attorney of my choice, that I have had any questions answered to my**

3

8780475 v1

satisfaction, that I fully understand and appreciate the meaning of each of its terms, and that I am voluntarily signing the General Release on the date indicated below, intending to be fully and legally bound by its terms.

*Vincent McCleery*

EMPLOYEE SIGNATURE

_____Vincent McCleery_____

EMPLOYEE NAME (print)

Dated: _____

4

## GENERAL RELEASE IN EXCHANGE FOR SERVICE PAYMENT
### ("General Release")

Plaintiff, Sean McMurran, on behalf of himself or herself and his or her heirs, representatives, successors, and assigns (collectively, "EMPLOYEE"), Love's Travel Stops & Country Stores, Inc. (collectively "Love's" and, together with EMPLOYEE, the "Parties"), for good and valuable consideration, the receipt of which is hereby acknowledged, and in order to resolve and settle finally, fully, and completely all matters or disputes that now or may exist between them, including the proceeding before the United States District Court for the Middle District of Pennsylvania, Florida titled *Lawson, et al. v. Love's Travel Stops & Country Stores, Inc.*, Case No. 1:17-cv-01266-CCC, (the "Litigation"), hereby agree as follows:

1.      **Consideration.** EMPLOYEE understands and agrees that by signing and returning this General Release and, contingent upon the Court's approval of the Settlement Agreement filed in the Litigation ("Settlement Agreement"), and the Court's approval of a Service Payment (as defined in the Settlement Agreement), EMPLOYEE will be eligible to receive a Service Payment of $10,000.00 or such other amount as approved by the Court, consistent with the provisions of Section 1.11(b) of the Settlement Agreement, as well as an individual Settlement Check as may be applicable (as discussed in the Settlement Agreement) consistent with the Settlement Agreement. The Service Payment shall be deemed non-wage compensation and reported to EMPLOYEE on IRS Form 1099.

2.      **Release and Waiver of Rights and Claims.**

(a)      In exchange for the Service Payment, and to the full extent permitted by law, EMPLOYEE irrevocably and unconditionally release, acquit, and forever discharge Love's and its the predecessors, successors, present and former affiliates, future affiliates, parents, Advisory Board, subsidiaries, insurers, officers, directors, agents, members, shareholders, unitholders, general partners, limited partners, owners, beneficiaries, representatives, heirs, attorneys, assigns (including without limitation, any investors, trusts, or other similar or affiliated entities) of, and all persons acting by, through, under or in concert with, Love's, including, but not limited to, any person or entity that was or could have been named as a defendant in the Lawsuit (collective, "Released Parties"), of and from:

(i)      any and all charges, complaints, claims, liabilities, causes of action, damages and expenses (including attorneys' fees, costs actually incurred, and liquidated damages), of any kind, whether known or unknown, which they now have, may have or claim to have, or which they at any prior time had or claimed to have against Love's or any of the Released Parties, arising out of any matter occurring or accruing on or before the date he or she signs this General Release. This release and waiver includes, but is not limited to, any claims arising from their employment and/or contractual relationship, or the termination of their employment and/or contractual relationship, with Love's and/or any of the Released Parties. This release and waiver includes, but is not limited to: claims arising under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Family and Medical Leave Act, the Employee Retirement Income Security Act, and all state and local analogues of such statutes; claims arising under common law, tort, policy or contract; claims for retaliation, defamation, libel, slander, invasion of

1

privacy, or negligence; claims based on theories of strict liability or respondeat superior; claims for costs, fees, interest, expenses, or attorneys' fees; claims that were asserted or that could have been asserted in the Lawsuit; and any other claims of any kind, except as expressly excluded elsewhere in this Agreement; and

    (ii) any and all charges, complaints, claims, liabilities, causes of action, damages and expenses (including attorneys' fees, costs actually incurred, and liquidated damages), of any kind, whether known or unknown, which they now have, may have or claim to have, or which they at any prior time had or claimed to have against Defendant or any of the Released Parties, arising out of any matter occurring or accruing on or before the date he or she signs this General Release, and which arise under the Age Discrimination in Employment Act. EMPLOYEE retains the right to revoke his or her waiver of rights under the Age Discrimination in Employment Act as set forth herein provided that he or she does so by providing written notice of the revocation via United States registered or certified mail, return receipt requested, to Love's, address as follows:

Matthew Hank
Littler, Mendelson, P.C.
Three Parkway
1601 Cherry Street, Suite 1400
Philadelphia, PA 19102-1321

no later than seven (7) days following the date on which the Court enters the Approval Order as an Order of Court, and as further described in the Settlement Agreement. Such notice given hereunder shall be in writing and shall be deemed to have been duly given as of the third business day after mailing in accordance with the requirements herein. If EMPLOYEE revokes his or her waiver of rights under the Age Discrimination in Employment Act, the amount of the Service Payment allocated to that Service Award Recipient shall be reduced by fifty percent (50%), and Love's shall retain the remaining fifty percent (50%).

    (b) EMPLOYEE acknowledges and agrees that in accordance with the requirements of the Older Workers Benefit Protection Act: (i) EMPLOYEE has read and fully understands the terms of this General Release, including the waivers and releases contained herein; (ii) EMPLOYEE was advised and hereby is advised that General Release includes a waiver and release of rights and claims under Chapter 14 (Age Discrimination in Employment) of Title 29 of the Code of the Laws of the United States of America, 29 U.S.C. § 621, et seq.; (iii) is not waiving rights or claims that may arise after the date on which he or she executes this Agreement; (iv) EMPLOYEE's waiver of rights and claims is in exchange for consideration in addition to anything of value to which they already are entitled; (v) EMPLOYEE was advised and hereby is advised in writing to consult with an attorney of their choice prior to signing this Agreement; (vi) EMPLOYEE has been given a period of twenty-one (21) days within which to consider the terms of the Agreement before signing it (and if EMPLOYEE signed this Agreement before the end of this twenty-one (21) day period, it is because they freely chose to do so after carefully considering its terms); (vii) EMPLOYEE has no fewer than seven (7) days following the execution of this Agreement in which to revoke the release and waiver of claims under the Age Discrimination in Employment Act.

8780475 v1

(c)     EMPLOYEE affirms that they have not filed any other charges, complaints, lawsuits, claims or actions against Love's or any of the Released Parties, based on any event that took place prior to the date they sign this General Release, except as expressly disclosed in this General Release.  In the event there is outstanding any such charge, complaint, claim or action, EMPLOYEE agrees to execute such papers or documents as Love's Counsel determines may be necessary to attempt to have such charge, complaint, claim or action withdrawn and dismissed with prejudice.

(d)     EMPLOYEE forever waives any and all claim or right to reinstatement, future employment, or any other future association or future contractual relationship with Love's. EMPLOYEE agrees that they shall not at any time seek or accept future employment or any other form of contractual relationship with Love's.  A breach of this paragraph by EMPLOYEE shall constitute lawful and just cause for Love's to refuse to employ and/or contract with EMPLOYEE, and EMPLOYEE shall have no cause of action (for retaliation or otherwise) for such refusal or termination.  For the avoidance of doubt, the terms of this paragraph apply only to future employment with Love's, and not to any current employment with Love's to the extent such relationship exists between the Parties.

3.     **Release Exclusions.**  Notwithstanding the foregoing provisions General Release, EMPLOYEE does not release or waive:  (a) any claim that they could make for unemployment compensation or workers' compensation benefits; (b) any rights or claims that cannot be released as a matter of law pursuant to this General Release ; (c) their right to file an administrative charge with the National Labor Relations Board, Equal Employment Opportunity Commission or similar state agency (although they do waive their right to receive any monetary damages or other relief not explicitly provided for herein as a result of any such charge, to the extent the charge pertains to a claim that was released); and/or (d) any rights or claims that may arise after the date they sign this Agreement.

4.     **Other Agreements.**  EMPLOYEE also understands and agrees as follows:

(a)     EMPLOYEE is entering into this General Release, intending to be bound by its terms, knowingly, voluntarily, and with full knowledge of their significance.  EMPLOYEE has not been coerced, threatened, or intimidated into signing this General Release;

(b)     EMPLOYEE has been advised to consult with a lawyer prior to signing this General Release and agreeing to be bound by its terms and has, in fact, consulted with counsel with the Shavitz Law Group, P.A. and Hepworth, Gershbaum, and Roth, PLLC;

(c)     EMPLOYEE has been given a reasonable amount of time to consider this General Release; and

(d)     EMPLOYEE is not otherwise entitled to the consideration described in this General Release.

**By my signature below, I AFFIRM AND ACKNOWLEDGE that I have read the foregoing General Release, that I have had sufficient time and opportunity to review and discuss it with the attorney of my choice, that I have had any questions answered to my**

8780475 v1

3

satisfaction, that I fully understand and appreciate the meaning of each of its terms, and that I am voluntarily signing the General Release on the date indicated below, intending to be fully and legally bound by its terms.

_____
Sean and Mary McMurran (Oct. 7, 2020 08:23 PDT)
EMPLOYEE SIGNATURE

_____Sean McMurran_____
EMPLOYEE NAME (print)

Dated: _____

4

8780475 v1

## GENERAL RELEASE IN EXCHANGE FOR SERVICE PAYMENT
### ("General Release")

Larry Glen Clifton, on behalf of himself or herself and his or her heirs, representatives, successors, and assigns (collectively, "EMPLOYEE"), Love's Travel Stops & Country Stores, Inc. (collectively "Love's" and, together with EMPLOYEE, the "Parties"), for good and valuable consideration, the receipt of which is hereby acknowledged, and in order to resolve and settle finally, fully, and completely all matters or disputes that now or may exist between them, including the proceeding before the United States District Court for the Middle District of Pennsylvania, Florida titled *Lawson, et al. v. Love's Travel Stops & Country Stores, Inc.*, Case No. 1:17-cv-01266-CCC, (the "Litigation"), hereby agree as follows:

1.    **Consideration.**  EMPLOYEE understands and agrees that by signing and returning this General Release and, contingent upon the Court's approval of the Settlement Agreement filed in the Litigation ("Settlement Agreement"), and the Court's approval of a Service Payment (as defined in the Settlement Agreement), EMPLOYEE will be eligible to receive a Service Payment of $2,500.00, or such other amount as approved by the Court, consistent with the provisions of Section 1.11(b) of the Settlement Agreement, as well as an individual Settlement Check as may be applicable (as discussed in the Settlement Agreement) consistent with the Settlement Agreement. The Service Payment shall be deemed non-wage compensation and reported to EMPLOYEE on IRS Form 1099.

2.    **Release and Waiver of Rights and Claims.**

(a)    In exchange for the Service Payment, and to the full extent permitted by law, EMPLOYEE irrevocably and unconditionally release, acquit, and forever discharge Love's and its the predecessors, successors, present and former affiliates, future affiliates, parents, Advisory Board, subsidiaries, insurers, officers, directors, agents, members, shareholders, unitholders, general partners, limited partners, owners, beneficiaries, representatives, heirs, attorneys, assigns (including without limitation, any investors, trusts, or other similar or affiliated entities) of, and all persons acting by, through, under or in concert with, Love's, including, but not limited to, any person or entity that was or could have been named as a defendant in the Lawsuit (collective, "Released Parties"), of and from:

(i)    any and all charges, complaints, claims, liabilities, causes of action, damages and expenses (including attorneys' fees, costs actually incurred, and liquidated damages), of any kind, whether known or unknown, which they now have, may have or claim to have, or which they at any prior time had or claimed to have against Love's or any of the Released Parties, arising out of any matter occurring or accruing on or before the date he or she signs this General Release. This release and waiver includes, but is not limited to, any claims arising from their employment and/or contractual relationship, or the termination of their employment and/or contractual relationship, with Love's and/or any of the Released Parties. This release and waiver includes, but is not limited to: claims arising under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Family and Medical Leave Act, the Employee Retirement Income Security Act, and all state and local analogues of such statutes; claims arising under common law, tort, policy or contract; claims for retaliation, defamation, libel, slander, invasion of

1

privacy, or negligence; claims based on theories of strict liability or respondeat superior; claims for costs, fees, interest, expenses, or attorneys' fees; claims that were asserted or that could have been asserted in the Lawsuit; and any other claims of any kind, except as expressly excluded elsewhere in this Agreement; and

(ii)     any and all charges, complaints, claims, liabilities, causes of action, damages and expenses (including attorneys' fees, costs actually incurred, and liquidated damages), of any kind, whether known or unknown, which they now have, may have or claim to have, or which they at any prior time had or claimed to have against Defendant or any of the Released Parties, arising out of any matter occurring or accruing on or before the date he or she signs this General Release, and which arise under the Age Discrimination in Employment Act.  EMPLOYEE retains the right to revoke his or her waiver of rights under the Age Discrimination in Employment Act as set forth herein provided that he or she does so by providing written notice of the revocation via United States registered or certified mail, return receipt requested, to Love's, address as follows:

Matthew Hank<br>
Littler, Mendelson, P.C.<br>
Three Parkway<br>
1601 Cherry Street, Suite 1400<br>
Philadelphia, PA 19102-1321

no later than seven (7) days following the date on which the Court enters the Approval Order as an Order of Court, and as further described in the Settlement Agreement.  Such notice given hereunder shall be in writing and shall be deemed to have been duly given as of the third business day after mailing in accordance with the requirements herein.  If EMPLOYEE revokes his or her waiver of rights under the Age Discrimination in Employment Act, the amount of the Service Payment allocated to that Service Award Recipient shall be reduced by fifty percent (50%), and Love's shall retain the remaining fifty percent (50%).

(b)     EMPLOYEE acknowledges and agrees that in accordance with the requirements of the Older Workers Benefit Protection Act: (i) EMPLOYEE has read and fully understands the terms of this General Release, including the waivers and releases contained herein; (ii) EMPLOYEE was advised and hereby is advised that General Release includes a waiver and release of rights and claims under Chapter 14 (Age Discrimination in Employment) of Title 29 of the Code of the Laws of the United States of America, 29 U.S.C. § 621, et seq.; (iii) is not waiving rights or claims that may arise after the date on which he or she executes this Agreement; (iv) EMPLOYEE's waiver of rights and claims is in exchange for consideration in addition to anything of value to which they already are entitled; (v) EMPLOYEE was advised and hereby is advised in writing to consult with an attorney of their choice prior to signing this Agreement; (vi) EMPLOYEE has been given a period of twenty-one (21) days within which to consider the terms of the Agreement before signing it (and if EMPLOYEE signed this Agreement before the end of this twenty-one (21) day period, it is because they freely chose to do so after carefully considering its terms); (vii) EMPLOYEE has no fewer than seven (7) days following the execution of this Agreement in which to revoke the release and waiver of claims under the Age Discrimination in Employment Act.

8780475 v1

(c)     EMPLOYEE affirms that they have not filed any other charges, complaints, lawsuits, claims or actions against Love's or any of the Released Parties, based on any event that took place prior to the date they sign this General Release, except as expressly disclosed in this General Release.  In the event there is outstanding any such charge, complaint, claim or action, EMPLOYEE agrees to execute such papers or documents as Love's Counsel determines may be necessary to attempt to have such charge, complaint, claim or action withdrawn and dismissed with prejudice.

(d)     EMPLOYEE forever waives any and all claim or right to reinstatement, future employment, or any other future association or future contractual relationship with Love's.  EMPLOYEE agrees that they shall not at any time seek or accept future employment or any other form of contractual relationship with Love's.  A breach of this paragraph by EMPLOYEE shall constitute lawful and just cause for Love's to refuse to employ and/or contract with EMPLOYEE, and EMPLOYEE shall have no cause of action (for retaliation or otherwise) for such refusal or termination.  For the avoidance of doubt, the terms of this paragraph apply only to future employment with Love's, and not to any current employment with Love's to the extent such relationship exists between the Parties.

3.     **Release Exclusions.**  Notwithstanding the foregoing provisions General Release, EMPLOYEE does not release or waive:  (a) any claim that they could make for unemployment compensation or workers' compensation benefits; (b) any rights or claims that cannot be released as a matter of law pursuant to this General Release ; (c) their right to file an administrative charge with the National Labor Relations Board, Equal Employment Opportunity Commission or similar state agency (although they do waive their right to receive any monetary damages or other relief not explicitly provided for herein as a result of any such charge, to the extent the charge pertains to a claim that was released); and/or (d) any rights or claims that may arise after the date they sign this Agreement.

4.     **Other Agreements.**  EMPLOYEE also understands and agrees as follows:

(a)     EMPLOYEE is entering into this General Release, intending to be bound by its terms, knowingly, voluntarily, and with full knowledge of their significance.  EMPLOYEE has not been coerced, threatened, or intimidated into signing this General Release;

(b)     EMPLOYEE has been advised to consult with a lawyer prior to signing this General Release and agreeing to be bound by its terms and has, in fact, consulted with counsel with the Shavitz Law Group, P.A. and Hepworth, Gershbaum, and Roth, PLLC;

(c)     EMPLOYEE has been given a reasonable amount of time to consider this General Release; and

(d)     EMPLOYEE is not otherwise entitled to the consideration described in this General Release.

**By my signature below, I AFFIRM AND ACKNOWLEDGE that I have read the foregoing General Release, that I have had sufficient time and opportunity to review and discuss it with the attorney of my choice, that I have had any questions answered to my**

8780475 v1

satisfaction, that I fully understand and appreciate the meaning of each of its terms, and that I am voluntarily signing the General Release on the date indicated below, intending to be fully and legally bound by its terms.

_Larry G Clifton_
Larry G Clifton (Oct 4, 2020 16:33 CDT)
_____
EMPLOYEE SIGNATURE

Larry G Clifton
_____
EMPLOYEE NAME (print)

Dated: Oct 4, 2020
_____

4

## GENERAL RELEASE IN EXCHANGE FOR SERVICE PAYMENT
### ("General Release")

Richard Lynch, Jr., on behalf of himself or herself and his or her heirs, representatives, successors, and assigns (collectively, "EMPLOYEE"), Love's Travel Stops & Country Stores, Inc. (collectively "Love's" and, together with EMPLOYEE, the "Parties"), for good and valuable consideration, the receipt of which is hereby acknowledged, and in order to resolve and settle finally, fully, and completely all matters or disputes that now or may exist between them, including the proceeding before the United States District Court for the Middle District of Pennsylvania, Florida titled *Lawson, et al. v. Love's Travel Stops & Country Stores, Inc.*, Case No. 1:17-cv-01266-CCC, (the "Litigation"), hereby agree as follows:

1.    **Consideration.** EMPLOYEE understands and agrees that by signing and returning this General Release and, contingent upon the Court's approval of the Settlement Agreement filed in the Litigation ("Settlement Agreement"), and the Court's approval of a Service Payment (as defined in the Settlement Agreement), EMPLOYEE will be eligible to receive a Service Payment of $2,500.00, or such other amount as approved by the Court, consistent with the provisions of Section 1.11(b) of the Settlement Agreement, as well as an individual Settlement Check as may be applicable (as discussed in the Settlement Agreement) consistent with the Settlement Agreement. The Service Payment shall be deemed non-wage compensation and reported to EMPLOYEE on IRS Form 1099.

2.    **Release and Waiver of Rights and Claims.**

(a)    In exchange for the Service Payment, and to the full extent permitted by law, EMPLOYEE irrevocably and unconditionally release, acquit, and forever discharge Love's and its the predecessors, successors, present and former affiliates, future affiliates, parents, Advisory Board, subsidiaries, insurers, officers, directors, agents, members, shareholders, unitholders, general partners, limited partners, owners, beneficiaries, representatives, heirs, attorneys, assigns (including without limitation, any investors, trusts, or other similar or affiliated entities) of, and all persons acting by, through, under or in concert with, Love's, including, but not limited to, any person or entity that was or could have been named as a defendant in the Lawsuit (collective, "Released Parties"), of and from:

(i)    any and all charges, complaints, claims, liabilities, causes of action, damages and expenses (including attorneys' fees, costs actually incurred, and liquidated damages), of any kind, whether known or unknown, which they now have, may have or claim to have, or which they at any prior time had or claimed to have against Love's or any of the Released Parties, arising out of any matter occurring or accruing on or before the date he or she signs this General Release. This release and waiver includes, but is not limited to, any claims arising from their employment and/or contractual relationship, or the termination of their employment and/or contractual relationship, with Love's and/or any of the Released Parties. This release and waiver includes, but is not limited to: claims arising under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Family and Medical Leave Act, the Employee Retirement Income Security Act, and all state and local analogues of such statutes; claims arising under common law, tort, policy or contract; claims for retaliation, defamation, libel, slander, invasion of

1

privacy, or negligence; claims based on theories of strict liability or respondeat superior; claims for costs, fees, interest, expenses, or attorneys' fees; claims that were asserted or that could have been asserted in the Lawsuit; and any other claims of any kind, except as expressly excluded elsewhere in this Agreement; and

(ii)    any and all charges, complaints, claims, liabilities, causes of action, damages and expenses (including attorneys' fees, costs actually incurred, and liquidated damages), of any kind, whether known or unknown, which they now have, may have or claim to have, or which they at any prior time had or claimed to have against Defendant or any of the Released Parties, arising out of any matter occurring or accruing on or before the date he or she signs this General Release, and which arise under the Age Discrimination in Employment Act. EMPLOYEE retains the right to revoke his or her waiver of rights under the Age Discrimination in Employment Act as set forth herein provided that he or she does so by providing written notice of the revocation via United States registered or certified mail, return receipt requested, to Love's, address as follows:

Matthew Hank<br>
Littler, Mendelson, P.C.<br>
Three Parkway<br>
1601 Cherry Street, Suite 1400<br>
Philadelphia, PA 19102-1321

no later than seven (7) days following the date on which the Court enters the Approval Order as an Order of Court, and as further described in the Settlement Agreement. Such notice given hereunder shall be in writing and shall be deemed to have been duly given as of the third business day after mailing in accordance with the requirements herein. If EMPLOYEE revokes his or her waiver of rights under the Age Discrimination in Employment Act, the amount of the Service Payment allocated to that Service Award Recipient shall be reduced by fifty percent (50%), and Love's shall retain the remaining fifty percent (50%).

(b)    EMPLOYEE acknowledges and agrees that in accordance with the requirements of the Older Workers Benefit Protection Act: (i) EMPLOYEE has read and fully understands the terms of this General Release, including the waivers and releases contained herein; (ii) EMPLOYEE was advised and hereby is advised that General Release includes a waiver and release of rights and claims under Chapter 14 (Age Discrimination in Employment) of Title 29 of the Code of the Laws of the United States of America, 29 U.S.C. § 621, et seq.; (iii) is not waiving rights or claims that may arise after the date on which he or she executes this Agreement; (iv) EMPLOYEE's waiver of rights and claims is in exchange for consideration in addition to anything of value to which they already are entitled; (v) EMPLOYEE was advised and hereby is advised in writing to consult with an attorney of their choice prior to signing this Agreement; (vi) EMPLOYEE has been given a period of twenty-one (21) days within which to consider the terms of the Agreement before signing it (and if EMPLOYEE signed this Agreement before the end of this twenty-one (21) day period, it is because they freely chose to do so after carefully considering its terms); (vii) EMPLOYEE has no fewer than seven (7) days following the execution of this Agreement in which to revoke the release and waiver of claims under the Age Discrimination in Employment Act.

(c)      EMPLOYEE affirms that they have not filed any other charges, complaints, lawsuits, claims or actions against Love's or any of the Released Parties, based on any event that took place prior to the date they sign this General Release, except as expressly disclosed in this General Release.  In the event there is outstanding any such charge, complaint, claim or action, EMPLOYEE agrees to execute such papers or documents as Love's Counsel determines may be necessary to attempt to have such charge, complaint, claim or action withdrawn and dismissed with prejudice.

(d)      EMPLOYEE forever waives any and all claim or right to reinstatement, future employment, or any other future association or future contractual relationship with Love's. EMPLOYEE agrees that they shall not at any time seek or accept future employment or any other form of contractual relationship with Love's.  A breach of this paragraph by EMPLOYEE shall constitute lawful and just cause for Love's to refuse to employ and/or contract with EMPLOYEE, and EMPLOYEE shall have no cause of action (for retaliation or otherwise) for such refusal or termination.   For the avoidance of doubt, the terms of this paragraph apply only to future employment with Love's, and not to any current employment with Love's to the extent such relationship exists between the Parties.

3.    **Release Exclusions.**  Notwithstanding the foregoing provisions General Release, EMPLOYEE does not release or waive:  (a) any claim that they could make for unemployment compensation or workers' compensation benefits; (b) any rights or claims that cannot be released as a matter of law pursuant to this General Release ; (c) their right to file an administrative charge with the National Labor Relations Board, Equal Employment Opportunity Commission or similar state agency (although they do waive their right to receive any monetary damages or other relief not explicitly provided for herein as a result of any such charge, to the extent the charge pertains to a claim that was released); and/or (d) any rights or claims that may arise after the date they sign this Agreement.

4.    **Other Agreements.**  EMPLOYEE also understands and agrees as follows:

(a)      EMPLOYEE is entering into this General Release, intending to be bound by its terms, knowingly, voluntarily, and with full knowledge of their significance.  EMPLOYEE has not been coerced, threatened, or intimidated into signing this General Release;

(b)      EMPLOYEE has been advised to consult with a lawyer prior to signing this General Release and agreeing to be bound by its terms and has, in fact, consulted with counsel with the Shavitz Law Group, P.A. and Hepworth, Gershbaum, and Roth, PLLC;

(c)      EMPLOYEE has been given a reasonable amount of time to consider this General Release; and

(d)      EMPLOYEE is not otherwise entitled to the consideration described in this General Release.

**By my signature below, I AFFIRM AND ACKNOWLEDGE that I have read the foregoing General Release, that I have had sufficient time and opportunity to review and discuss it with the attorney of my choice, that I have had any questions answered to my**

8780475 v1

satisfaction, that I fully understand and appreciate the meaning of each of its terms, and that I am voluntarily signing the General Release on the date indicated below, intending to be fully and legally bound by its terms.

_Richard R Lynch Jr (Oct 4, 2020 21:20 CDT)_
_____
EMPLOYEE SIGNATURE

Richard R Lynch Jr
_____
EMPLOYEE NAME (print)

Dated: Oct 4, 2020
_____

## GENERAL RELEASE IN EXCHANGE FOR SERVICE PAYMENT
### ("General Release")

Plaintiff, Darryl Warren, on behalf of himself or herself and his or her heirs, representatives, successors, and assigns (collectively, "EMPLOYEE"), Love's Travel Stops & Country Stores, Inc. (collectively "Love's" and, together with EMPLOYEE, the "Parties"), for good and valuable consideration, the receipt of which is hereby acknowledged, and in order to resolve and settle finally, fully, and completely all matters or disputes that now or may exist between them, including the proceeding before the United States District Court for the Middle District of Pennsylvania, Florida titled *Lawson, et al. v. Love's Travel Stops & Country Stores, Inc.*, Case No. 1:17-cv-01266-CCC, (the "Litigation"), hereby agree as follows:

1.     **Consideration.**  EMPLOYEE understands and agrees that by signing and returning this General Release and, contingent upon the Court's approval of the Settlement Agreement filed in the Litigation ("Settlement Agreement"), and the Court's approval of a Service Payment (as defined in the Settlement Agreement), EMPLOYEE will be eligible to receive a Service Payment of $2,500.00 or such other amount as approved by the Court, consistent with the provisions of Section 1.11(b) of the Settlement Agreement, as well as an individual Settlement Check as may be applicable (as discussed in the Settlement Agreement) consistent with the Settlement Agreement. The Service Payment shall be deemed non-wage compensation and reported to EMPLOYEE on IRS Form 1099.

2.     **Release and Waiver of Rights and Claims.**

(a)     In exchange for the Service Payment, and to the full extent permitted by law, EMPLOYEE irrevocably and unconditionally release, acquit, and forever discharge Love's and its the predecessors, successors, present and former affiliates, future affiliates, parents, Advisory Board, subsidiaries, insurers, officers, directors, agents, members, shareholders, unitholders, general partners, limited partners, owners, beneficiaries, representatives, heirs, attorneys, assigns (including without limitation, any investors, trusts, or other similar or affiliated entities) of, and all persons acting by, through, under or in concert with, Love's, including, but not limited to, any person or entity that was or could have been named as a defendant in the Lawsuit (collective, "Released Parties"), of and from:

(i)     any and all charges, complaints, claims, liabilities, causes of action, damages and expenses (including attorneys' fees, costs actually incurred, and liquidated damages), of any kind, whether known or unknown, which they now have, may have or claim to have, or which they at any prior time had or claimed to have against Love's or any of the Released Parties, arising out of any matter occurring or accruing on or before the date he or she signs this General Release. This release and waiver includes, but is not limited to, any claims arising from their employment and/or contractual relationship, or the termination of their employment and/or contractual relationship, with Love's and/or any of the Released Parties. This release and waiver includes, but is not limited to: claims arising under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Family and Medical Leave Act, the Employee Retirement Income Security Act, and all state and local analogues of such statutes; claims arising under common law, tort, policy or contract; claims for retaliation, defamation, libel, slander, invasion of

privacy, or negligence; claims based on theories of strict liability or respondeat superior; claims for costs, fees, interest, expenses, or attorneys' fees; claims that were asserted or that could have been asserted in the Lawsuit; and any other claims of any kind, except as expressly excluded elsewhere in this Agreement; and

(ii) any and all charges, complaints, claims, liabilities, causes of action, damages and expenses (including attorneys' fees, costs actually incurred, and liquidated damages), of any kind, whether known or unknown, which they now have, may have or claim to have, or which they at any prior time had or claimed to have against Defendant or any of the Released Parties, arising out of any matter occurring or accruing on or before the date he or she signs this General Release, and which arise under the Age Discrimination in Employment Act. EMPLOYEE retains the right to revoke his or her waiver of rights under the Age Discrimination in Employment Act as set forth herein provided that he or she does so by providing written notice of the revocation via United States registered or certified mail, return receipt requested, to Love's, address as follows:

Matthew Hank
Littler, Mendelson, P.C.
Three Parkway
1601 Cherry Street, Suite 1400
Philadelphia, PA 19102-1321

no later than seven (7) days following the date on which the Court enters the Approval Order as an Order of Court, and as further described in the Settlement Agreement. Such notice given hereunder shall be in writing and shall be deemed to have been duly given as of the third business day after mailing in accordance with the requirements herein. If EMPLOYEE revokes his or her waiver of rights under the Age Discrimination in Employment Act, the amount of the Service Payment allocated to that Service Award Recipient shall be reduced by fifty percent (50%), and Love's shall retain the remaining fifty percent (50%).

(b) EMPLOYEE acknowledges and agrees that in accordance with the requirements of the Older Workers Benefit Protection Act: (i) EMPLOYEE has read and fully understands the terms of this General Release, including the waivers and releases contained herein; (ii) EMPLOYEE was advised and hereby is advised that General Release includes a waiver and release of rights and claims under Chapter 14 (Age Discrimination in Employment) of Title 29 of the Code of the Laws of the United States of America, 29 U.S.C. § 621, et seq.; (iii) is not waiving rights or claims that may arise after the date on which he or she executes this Agreement; (iv) EMPLOYEE's waiver of rights and claims is in exchange for consideration in addition to anything of value to which they already are entitled; (v) EMPLOYEE was advised and hereby is advised in writing to consult with an attorney of their choice prior to signing this Agreement; (vi) EMPLOYEE has been given a period of twenty-one (21) days within which to consider the terms of the Agreement before signing it (and if EMPLOYEE signed this Agreement before the end of this twenty-one (21) day period, it is because they freely chose to do so after carefully considering its terms); (vii) EMPLOYEE has no fewer than seven (7) days following the execution of this Agreement in which to revoke the release and waiver of claims under the Age Discrimination in Employment Act.

2

(c)     EMPLOYEE affirms that they have not filed any other charges, complaints, lawsuits, claims or actions against Love's or any of the Released Parties, based on any event that took place prior to the date they sign this General Release, except as expressly disclosed in this General Release.  In the event there is outstanding any such charge, complaint, claim or action, EMPLOYEE agrees to execute such papers or documents as Love's Counsel determines may be necessary to attempt to have such charge, complaint, claim or action withdrawn and dismissed with prejudice.

(d)     EMPLOYEE forever waives any and all claim or right to reinstatement, future employment, or any other future association or future contractual relationship with Love's.  EMPLOYEE agrees that they shall not at any time seek or accept future employment or any other form of contractual relationship with Love's.  A breach of this paragraph by EMPLOYEE shall constitute lawful and just cause for Love's to refuse to employ and/or contract with EMPLOYEE, and EMPLOYEE shall have no cause of action (for retaliation or otherwise) for such refusal or termination.  For the avoidance of doubt, the terms of this paragraph apply only to future employment with Love's, and not to any current employment with Love's to the extent such relationship exists between the Parties.

3.     **Release Exclusions.**  Notwithstanding the foregoing provisions General Release, EMPLOYEE does not release or waive:  (a) any claim that they could make for unemployment compensation or workers' compensation benefits; (b) any rights or claims that cannot be released as a matter of law pursuant to this General Release ; (c) their right to file an administrative charge with the National Labor Relations Board, Equal Employment Opportunity Commission or similar state agency (although they do waive their right to receive any monetary damages or other relief not explicitly provided for herein as a result of any such charge, to the extent the charge pertains to a claim that was released); and/or (d) any rights or claims that may arise after the date they sign this Agreement.

4.     **Other Agreements.**  EMPLOYEE also understands and agrees as follows:

(a)     EMPLOYEE is entering into this General Release, intending to be bound by its terms, knowingly, voluntarily, and with full knowledge of their significance.  EMPLOYEE has not been coerced, threatened, or intimidated into signing this General Release;

(b)     EMPLOYEE has been advised to consult with a lawyer prior to signing this General Release and agreeing to be bound by its terms and has, in fact, consulted with counsel with the Shavitz Law Group, P.A. and Hepworth, Gershbaum, and Roth, PLLC;

(c)     EMPLOYEE has been given a reasonable amount of time to consider this General Release; and

(d)     EMPLOYEE is not otherwise entitled to the consideration described in this General Release.

**By my signature below, I AFFIRM AND ACKNOWLEDGE that I have read the foregoing General Release, that I have had sufficient time and opportunity to review and discuss it with the attorney of my choice, that I have had any questions answered to my**

3

satisfaction, that I fully understand and appreciate the meaning of each of its terms, and that I am voluntarily signing the General Release on the date indicated below, intending to be fully and legally bound by its terms.

_Darryl Warren (Oct 2, 2020 09:15 CDT)_

EMPLOYEE SIGNATURE

_____Darryl Warren_____

EMPLOYEE NAME (print)

Dated: _____

8780475 v1